IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| | ) | |
| Doe I and Doe II | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case Number: 07-CV-00909-CFD |
| | ) | |
| John Doe 21, a.k.a. AK47 | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**JOHN DOE 21's MEMORANDUM IN SUPPORT OF MOTION TO QUASH**

**PLAINTIFF'S SUBPOENA**

Pursuant to Federal Rule of Civil Procedure 45(c) and applicable local rules, John Doe 21 moves to quash Plaintiffs' third party subpoena to AT&T, Inc. for information pertaining to his identity. John Doe 21, referred to in the Amended Complaint as Internet pseudonym "AK47," asks this Court to quash Plaintiffs' subpoena because the Subpoena violates his First Amendment right to speak anonymously.

<u>INTRODUCTION</u>

Plaintiffs Doe I's and Doe II's February 15, 2008 Subpoena ordering AT&T Inc. ("AT&T") to produce information relating to the identity of John Doe 21, a.k.a AK47, urges this court to help Plaintiffs trample upon John Doe's constitutionally protected right to speak anonymously. This subpoena, Plaintiffs' Amended Complaint and *Ex Parte* Motion for Expedited Discovery have heretofore gone unopposed by Defendants, like John Doe, who were neither properly noticed of the

1

Dockets.Justia.com

suit nor have the resources or legal know-how to wade through the legal and procedural thicket presented by Plaintiffs, two Yale law students who have enlisted an elite law firm to uncover the identities of certain persons who posted unsavory but legally innocuous comments concerning Plaintiffs on an Internet website. Although the Amended Complaint and Motion For Expedited Discovery, as they relate to John Doe 21, would not withstand even the most cursory challenge, it is extremely important that this Court protect the First Amendment and Due Process rights of John Doe 21 and the other anonymous Defendants drawn into this litigation. Though silly, the statement at issue here, i.e., "Women named Jill and [Doe II's equally common *first* name] should be raped," constitutes constitutionally protected speech. The Subpoena should be quashed.

BACKGROUND

Plaintiffs' Amended Complaint, which includes allegations ranging from intentional infliction of emotional distress and false light, Amended Complaint ("Complaint") at ¶¶ 62-83, appears to center on claims of defamation and copyright infringement. Most of the named Defendants, including John Doe 21, are anonymous, appear to have no relationship to each other, do not appear to know Plaintiffs, and are identified only by their screen names. John Doe 21 has never met Plaintiffs, nor does he reside in Connecticut.

Plaintiffs filed the original Complaint on June 8, 2007, in front of the Honorable Judge Christopher Droney of the Connecticut District Court for the District of Connecticut, alleging that certain posters on Autoadmit.com, a discussion site known for its silly banter and near absolute unreliability as a source of useful information, had posted comments that caused Plaintiffs a smorgasbord of harms, including causing one plaintiff to fail to receive job offers from top-tier law firms. Complaint at 1. After numerous extension requests, see Motions for

2

Extension of Time (totaling 4), Plaintiffs on November 8, 2007, filed an Amended Complaint, dropping several Defendants and naming others, including John Doe 21. Amended Complaint at 1. Plaintiffs continued to file various motions which went unopposed by apparently unaware Defendants (see First MOTION for Extension of Time until July 7, 2008 to Modify the Scheduling Order; Plaintiffs' Motion for Expedited Discovery, Memorandum in Support Plaintiffs' Memorandum of Law in Support of Motion for Expedited Discovery), and sought and were granted leave to issue subpoenas to Internet service providers in order to locate and identify the anonymous Defendants, presumably for the purposes of drawing the actual identities of Defendants into this litigation and attributing to Defendants comments posted anonymously on Autoadmit. One such subpoena reached John Doe 21. The Subpoena was addressed to AT&T, Inc., an Internet service provider, and demanded the identity of the person who posted comments presumably traceable to the IP address 75.18.198.98. See Exhibit 1.

The Subpoena, received by John Doe 21 on or around the 18 of February 2008, originally sought and granted in Connecticut District Court, was apparently filed and issued from the United States District Court for the Central District of California. Exhibit 1. The Subpoena states that John Doe 21 has 10 days in which to prepare a motion to quash, a protective order or other motion to prevent AT&T from divulging information pertaining to his identity to Plaintiffs. This 10 day period was negotiated by Plaintiffs attorneys and AT&T. See Exhibit 1, Subpoena to AT&T at 1. Apparently, 10 days is enough time for John Doe 21 to prepare a motion concerning an area of law with which he has never dealt and concerning a multitude of federal procedural issues that only experienced litigators such as Plaintiffs' attorneys are able to navigate. On the other hand, Plaintiffs, by seeking time extension after extension, have carefully planned their

strategy over a period of nearly *10 months*. It has therefore taken Plaintiffs, with the aid of a cadre of competent attorneys, 10 months to craft their case, yet Plaintiffs think it appropriate to give John Doe 21 ten days to craft his.

Furthermore, the Subpoena fails to mention John Doe 21's pseudonymous identity, "AK47," fails to identify the specific court division within the Central District of California (the Central District of California contains four separate court divisions) that issued the Subpoena, and fails to otherwise identify the purpose for its issuance. Nor, to John Doe 21's knowledge, do any of Plaintiffs' moving documents in the Connecticut litigation contain any evidence linking the IP address sought to any comment posted on Autoadmit. The only piece of information related to this case mentioned in the Subpoena is John Doe 21's IP address, an address presumably linked to a comment that Plaintiffs found objectionable. Yet, this barebones document has the potential to eviscerate John Doe 21's constitutionally guaranteed right to speak anonymously.

## SUMMARY OF ARGUMENT

This Motion presents the Court with the issue of what standard should be applied to determine whether, in this particular case, the right to obtain redress from a silly statement on Autoadmit.com outweighs John Doe 21's First Amendment right to make speak anonymously. Few courts have considered this question, but it is becoming a crucial one, particularly in light of the increasing number of cases where those who have been criticized on the Internet seek to use the machinery of the courts to unmask, intimidate and silence their online critics. Indeed, as a California District Court recently remarked, "[p]eople who have committed no wrong should be able to participate online without fear that someone who wishes to harass or embarrass them can

file a frivolous lawsuit and thereby gain the power of the court's order to discover their identities." Columbia Ins. Co. v. seescandy.com, 185 F.R.D. 573, 578 (N.D. Cal. 1999) (considering the discovery standards applicable to the unveiling of a defendant's identity in a domain name/trademark matter).

In light of the significant privacy and free speech issues involved in unveiling the identities of anonymous speakers, a balancing test has been developed to decide whether to require the identification of anonymous speakers in litigation. Under that test, the Court will balance the harm to John Doe 21 against the Plaintiffs' need for discovery to pursue their claim. On the facts of this case, there can be no doubt that John Doe 21's right to speak anonymously should prevail.

ARGUMENT

## A. THE FIRST AMENDMENT PROTECTS JOHN DOE 21'S RIGHT TO SPEAK ANONYMOUSLY

It hardly bears mention that the First Amendment protects the right to speak anonymously. The Bill of Rights and the Constitution were designed by citizens who publicly debated these documents' virtues anonymously (or pseudonymously) in letters published later as the Federalist Papers. The First and Fourth Amendments are based "at least in part on the colonists' experience with the sedition laws of England which forbade anonymous writing and which allowed warrantless invasion of any home to root out the true identity of anonymous authors." Nelson B. Lasson, The History and Development of the Fourth Amendment to the United States Constitution, 37-50 (1937). The Supreme Court has repeatedly affirmed this right. Buckley v. American Constitutional Law Found. Inc., 525 U.S. 182, 197-200 (1999); McIntyre v.

Ohio Elections Comm'n., 514 U.S. 334 (1995); Talley v. California, 362 U.S. 60 (1960). These cases signify the important role of anonymous speech in the United States' history.

The Supreme Court unequivocally held in Reno v. ACLU, 521 U.S. at 870, that speech on the Internet is entitled to the full spectrum of First Amendment protections. Observing that the World Wide Web is a medium for public argument and discussion that reaches more people than any other known medium, the Court stated that "content on the Internet is as diverse as human thought." Reno, 521 U.S. at 870.

In the online realm, numerous cases have upheld the constitutional right to speak anonymously on the Internet. ACLU v. Johnson, 4 F. Supp. 2d 1029, 1033 (D.N.M. 1998) aff'd, 194 F.3d 1149 (10th Cir. 1999); ACLU of Georgia, 977 F. Supp. at 1232-33; see also ApolloMEDIA Corp. v. Reno, 526 U.S. 1061 (1999), aff'g 19 F. Supp. 2d 1081 (N.D. Cal. 1998) (protecting anonymous speakers on web site at www.annoy.com, a sited "created and designed to annoy" legislators through anonymous communications). The mechanics of the Internet, however, provides numerous ways to track the statements of anonymous speakers, prompting many commentators to argue that the law ought to provide special protections for Internet anonymity. See, e.g., David G. Post, Pooling Intellectual Capital: Thoughts of Anonymity, Pseudonymity, and Limited Liability in Cyberspace, 1996 U. Chi. Legal F. 139; Lee Tien, Innovation and the Information Environment: Who's Afraid of Anonymous Speech? McIntyre and the Internet, 75 Or. L. Rev. 117 (1996).

Because the First Amendment protects the right to speak anonymously, a subpoena for anonymous speakers' names and addresses is subject to a qualified privilege. And, as in other cases in which litigants seek privileged information, courts must consider the privilege

before authorizing discovery. See Sony Music Entmn't v. Does, 326 F.Supp.2d 556, 565 (S.D.N.Y. 2004) ("Against the backdrop of First Amendment protection for anonymous speech, courts have held that civil subpoenas seeking information regarding anonymous individuals raise First Amendment concerns.").

## B. TO PROTECT THE QUALIFIED PRIVILEGE, THE COURT SHOULD REQUIRE NOTICE TO DEFENDANTS, REVIEW OF THE COMPLAINT, AND PRESENTATION OF ARGUMENT AND EVIDENCE BEFORE ISSUING A SUBPOENA TO AN ANONYMOUS DEFENDANT.

The question of whether this qualified privilege to speak anonymously outbalances the interest of a plaintiff in obtaining information from an Internet service provider in order to pursue litigation has been considered by a variety of federal and state courts over the past several years. *See, e.g., Doe v. 2theMart.com*, 140 F.Supp.2d 1088 (W.D. Wash. 2001) (granting, on First Amendment grounds, motion to quash subpoena to Internet service provider seeking identification of anonymous posters of messages critical of defendant); *Dendrite*, 775 A.2d at 771 (requiring strict procedural safeguards be imposed "as a means of ensuring that Plaintiffs do not use discovery procedures to ascertain the identities of unknown defendants in order to harass, intimidate or silence critics in the public forum opportunities presented by the Internet"); *Columbia Ins. Co., v. Seescandy.com*, 185 F.R.D. 573, 578 (N.D.Cal.1999) (balancing plaintiff's desire to seek redress for injury against the legitimate and valuable right to participate in online forums anonymously or pseudonymously).

These courts continue to affirm that, where, at the beginning phase of the litigation, the plaintiff has done no more than merely allege wrongdoing, a privilege cannot be overcome. They

have further recognized that a serious chilling effect on anonymous speech would result if

Internet speakers knew they could be identified by persons who merely allege wrongdoing,

***without necessarily having any intention of carrying through with actual litigation***. *See, e.g.,*

*Seescandy.com*, 185 F.R.D. at 578 ("People who have committed no wrong should be able to

participate online without fear that someone who wishes to harass or embarrass them can file a

frivolous lawsuit and thereby gain the power of the court's order to discover their identity."); *see*

*also 2theMart.com,* 140 F.Supp.2d at 1093 ("If Internet users could be stripped of . . . anonymity

by a civil subpoena enforced under the liberal rules of civil discovery, this would have a

significant chilling effect on Internet communications and thus on basic First Amendment Rights.

Therefore, discovery requests seeking to identify anonymous Internet users must be subject to

careful scrutiny by the courts.").

Courts have adopted multi-part balancing tests to decide whether to compel the

identification of an anonymous Internet speaker. Thus, in *Seescandy.com*, one of the first cases to

address this issue, the court required the plaintiff to (1) identify the missing party with sufficient

specificity that the court could determine whether the defendant could be sued in federal court;

(2) make a good faith effort to communicate with the anonymous defendants and to provide them

with notice of the suit – thus assuring them an opportunity to defend their anonymity; and (3)

demonstrate that it had viable claims against such defendants. 185 F.R.D. at 579.

More recently, in *Doe v. 2theMart.com*, the court found that the Constitution requires a

balancing of four factors before a subpoena can be used to identify anonymous Internet speakers:

[W]hether: (1) the subpoena . . . was issued in good faith and not for any improper purpose, (2)

the information sought relates to a core claim or defense, (3) the identifying information is

directly and materially relevant to that claim or defense, and (4) [adequate] information . . . is unavailable from any other source. 140 F.Supp.2d at 1092.

Since the petitioner had "failed to demonstrate that the identity of these Internet users is directly and materially relevant to a core defense in the underlying securities litigation," the court granted the speakers' motion to quash the subpoena. *Id.* at 1090. The court stated, "[t]he free exchange of ideas on the Internet is driven in large part by the ability of Internet users to communicate anonymously." *Id.* Similarly, all other federal courts to address the issue have held that *the First Amendment demands a heightened evidentiary showing to justify such subpoenas. See, e.g., Sony Entmn't* 326 F. Supp. 2d at 564-65 (denying motion to quash subpoena to Internet service provider seeking identifying information for anonymous defendant; summarizing and applying a five-factor balancing test).

State courts have set forth similar requirements of notice, review of the complaint, and presentation of argument and evidence before an ISP will be compelled to identify an Internet speaker. In Dendrite International, Inc. v. John Doe No. 3, 775 A.2d 756 (N.J. Super. A.D. 2001), the court required the would-be plaintiff to: (1) use the Internet to notify the accused of the pendency of the identification proceeding and to explain how to present a defense; (2) quote verbatim the allegedly actionable online speech; (3) allege all elements of the cause of action; (4) present evidence supporting the claim of violation; and (5) show the court that, on balance and in the particulars of the case, the right to identify the speaker outweighs the First Amendment right of anonymous speech. 775 A.2d at 760-61; *see also La Societe Metro Cash & Carry France v. Time Warner* Cable, 2003 WL 22962857, No. CV030197400S, at *5-6 (Conn. Super. Dec. 2, 2003) (applying a balancing test and considering evidence that allegedly defamatory statements

were false and caused injury before deciding to allow discovery concerning the identity of the speaker); *In Re Subpoena to America Online*, 52 Va. Cir. 26, 34 (Vir. Cir. 2000), *rev'd on other grounds*, 542 S.E.2d 377 (Va. 2001) (requiring the introduction of the allegedly actionable Internet speech and that the court be "satisfied by the pleadings or evidence supplied" that the subpoenaing party had a legitimate basis to contend that it was the victim of actionable conduct, "and . . . the subpoenaed identity information [must be] centrally needed to advance that claim").

## C. PLAINTIFFS CANNOT OVERCOME JOHN DOE 21'S RIGHT TO SPEAK ANONYMOUSLY BECAUSE PLAINTIFFS CANNOT DEMONSTRATE THEY HAVE VIABLE CLAIMS AGAINST JOHN DOE 21.

The Amended Complaint was filed in Connecticut District Court and the Subpoena was issued from a California District Court after Plaintiffs sought and were apparently granted leave to pursue the Subpoena in California. Therefore, in addition to the general discussion of qualified privilege above, it is useful to examine state law, including California law and Connecticut law, as well as federal court decisions that have addressed the pertinent constitutional issues presented in this case.

### Delaware: Doe v. Cahill

Doe v. Cahill, — A.2d —, 2005 WL 2455266 (Del., October 5, 2005), appears to be the seminal case to discuss the First Amendment protections in the context of unmasking anonymous speakers. In September of 2004, an anonymous visitor to a Smyrna, Delaware community weblog, posted comments about city councilman Patrick Cahill, which Cahill believed to be damaging to his reputation. Cahill filed a defamation lawsuit, and because he did not know the identity of the anonymous commenter, he filed suit against "John Doe," and began procedures

under Delaware law to discover Doe's true identity. Cahill learned that Doe used Comcast as an Internet service provider, and obtained a court order requiring Comcast to disclose Doe's real name.

As required by the federal Cable Communications Policy Act of 1984, at 47 U.S.C. §551(c)(2), Comcast notified Doe of the request for information about his identity. In response, Doe sought an emergency protective order to bar Comcast from turning over his information. The trial court denied Doe's request for a protective order, and held that Cahill could obtain Doe's identity from Comcast. Doe appealed directly to the Delaware Supreme Court. On appeal, the Court reversed the lower court's decision.

The Supreme Court determined that the trial court had applied too low a standard in testing whether Comcast should be ordered to turn over Doe's identity. The trial court had applied a "good faith" standard, namely, that disclosure was warranted because Cahill had established through his pleadings that he had a legitimate, good faith basis on which to bring the defamation claim.

The Supreme Court held that such a low standard was not sufficient to protect one's right to speak anonymously. The lower, good faith standard might encourage meritless lawsuits brought merely to uncover the identities of anonymous critics. Accordingly, the Supreme Court adopted a standard "that appropriately balances one person's right to speak anonymously against another person's right to protect his reputation."

The Court held that before a plaintiff can obtain the identity of an anonymous defendant through the compulsory discovery process, he must come forth with facts sufficient to defeat a *summary judgment motion*. In other words, before a court will order an anonymous speaker to be

unmasked, the plaintiff has to present evidence creating a genuine issue of material fact for each element of the claim.

Applying that standard, the court held that "no reasonable person could have interpreted [Doe's] statements to be anything other than opinion." The court observed that its conclusion was supported by the "unreliable nature of assertions posted in chat rooms and on blogs." The case was dismissed. New York upheld the Cahill standard in 2007. See Matter of Greenbaum v Google, Inc., 2007 NY Slip Op 27448 [18 Misc 3d 185].

In another recent case, *Best Western Int'l v. Doe*, (Slip Op.) 2006 WL 2091695 (D.Ariz. July 25, 2006), the U.S. District Court for the District of Arizona also adopted the *Cahill* standard. In the *Best Western* case, the plaintiff sued John Doe defendants alleging several causes of action, including breach of contract, unfair competition and defamation. The alleged offending content was posted on an online message. As happened in the instant case, the plaintiff asked the court to allow it to serve subpoenas on the Internet service providers of the unknown anonymous posters before the required Rule 26(f) conference. The motion was denied.

The court addressed the myriad First Amendment rights at stake. It observed that although the Constitution protects anonymous speech on the Internet, the prospect of a civil subpoena to destroy that anonymity places that right in jeopardy. Discovery, therefore, will be allowed only in the appropriate circumstances. The appropriate circumstances are where a plaintiff can produce sufficient evidence to establish a prima facie case of the claims asserted in the complaint. The court held that it "must examine facts and evidence before concluding that a defendant's constitutional rights must surrender to a plaintiff's discovery needs. The summary judgment standard will ensure that the Court receives such facts and evidence." The court went

on to note that the plaintiff's complaint – devoid of specific facts supporting its claims –

provided an example of why the summary judgment standard is appropriate. *Best Western Int'l v.*

*Doe*, (Slip Op.) 2006 WL 2091695 (D.Ariz. July 25, 2006).

**California**

The facts presented in the Columbia Insurance v. Seescandy.com, 185 F.R.D. 573 (N.D.

Cal. 1999) were as follows. The Columbia Insurance Company owned the trademark rights

associated with See's Candy Shops. Several unknown persons registered the domain names

seescandy.com and seescandys.com with Network Solutions. Columbia Insurance sued these

anonymous persons for a variety of claims, including trademark infringement and unfair

competition. The company requested a temporary restraining order against the defendants'

activities. Because imposing the restraining order would be impossible without knowing the

defendants' identities, the court considered whether to allow "pre-action" discovery to obtain this

information from Network Solutions.

The court enunciated four requirements Plaintiffs must satisfy before allowing such

discovery: (1) the plaintiff should identify the anonymous party specifically enough that the court

can determine that the defendant is a real person or entity that could be sued in federal court; (2)

the plaintiff should identify all steps previously taken to find the defendant; (3) the plaintiff

should establish that their suit could withstand a motion to dismiss; (4) the plaintiff should

inform the court of the reasons for its discovery request and identify parties the parties upon

which it requests the discovery be served.

The court further strengthened the "motion to dismiss" standard by indicating that a

plaintiff "must make some showing that an act giving rise to liability actually occurred." This

suggests that Plaintiffs must produce some kind of evidence proving the harms alleged. Plaintiffs in the instant case have failed in this regard, as will be explained below.

Ordinarily, a plaintiff can survive a motion to dismiss simply by making allegations in the complaint that, if true, would entitle them to a legal remedy. Yet, the statement alleged to have caused Plaintiffs harm in this case – i.e., "Women named Jill and [Doe II's extremely common *first name*]" is not actionable. The statement will be further examined in the following section.

In Highfields Capital Management v. Doe, 385 F.Supp.2d 969 (N.D. Cal. 2005), Highfields Capital Management (HCM) was the largest shareholder of the company Silicon Graphics. In a Yahoo! Finance chat room devoted to Silicon Graphics, an anonymous poster using the pseudonym "highfieldscapital" made statements implying that HCM was profiting at the expense of the company's other investors. HCM sued the anonymous poster in Massachusetts for commercial disparagement and trademark infringement and subpoenaed Yahoo! in the Northern District of California for information regarding the identity of highfieldscapital and another poster. The anonymous defendant moved to quash the subpoena. A federal magistrate judge considered the motion and recommended quashing the subpoena.

The magistrate used a high-burden test similar to the "summary judgment plus balancing" test applied in Dendrite v. Doe, 775 A.2d 756 (N.J. App. Div. 2001) and Mobilisa v. Doe, 170 P.3d 712 (Ariz. Ct. App. 2007). Under this test, first the plaintiff is required put forward substantial evidence that, "if unrebutted, tend[s] to support a finding of each fact that is essential to a given cause of action." Second, if the plaintiff passes this hurdle, the court is required balance the competing potential harms to the plaintiff versus to the defendant. The plaintiff must succeed on both counts in order to obtain disclosure.

The magistrate found that the plaintiff had not put forward enough evidence to pass the first hurdle, and so recommended quashing the subpoena. Further, although the plaintiff did not reach the second hurdle, the Court stated that the plaintiff would not satisfy it because of the strong First Amendment interests of the defendant and minimal threat to the plaintiff.

The district court accepted the magistrate's reasoning over HCM's objection and granted the anonymous defendant's motion to quash.

In Krinsky v. Doe 6, H030767 (Cal. Ct. App. Feb. 6, 2008), Lisa Krinsky, a former officer of SFBC International, Inc., sued ten anonymous defendants over comments about her posted to a Yahoo! message board. According to court papers, the anonymous forum posters made "scathing verbal attacks" against SFBC, Krinsky, and fellow corporate officers. Krinsky filed a lawsuit in Florida state court in January 2006, alleging defamation and intentional interference with contractual relations. She served a subpoena on Yahoo! in California, seeking the identities of the anonymous forum posters.

After Yahoo! notified the posters, one of them filed a motion to quash the subpoena in California state court. On appeal, a California appellate court reversed the lower court's ruling. In doing so, it applied a test that requires a plaintiff to make a "prima facie showing" that he or she has a valid legal claim against the anonymous speaker before allowing disclosure of the speaker's identity. The court made it clear that a prima facie showing required Krinsky to bring forward *evidence* (not just allegations) to support each element of her defamation and interference with contract claims.

Applying this standard, the court held that Krinsky had not made a prima facie showing on her defamation claim because the message board comments, viewed in context, constituted

opinion protected by the First Amendment rather than statements of fact about Krinsky. The court further held that Krinsky could not make a prima facie showing on her interference with contract claim because this claim was based on the same constitutionally protected opinion.

**Connecticut**

In La Societe Metro Cash & Carry France v. Time Warner Cable, 2003 WL 22962857 (Conn. Super. Ct. 2003), La Societe Metro Cash & Carry France operated warehouse distribution centers in France. An anonymous Internet user sent an email to several of its regional directors accusing the company of deceptive and unethical business practices. La Societe Metro traced the email account back to Time Warner Cable, and sought and obtained an order from a French court compelling Time Warner to turn over identifying information about the anonymous emailer. Time Warner notified its subscriber, and counsel for the subscriber then contacted Time Warner, disputing the validity of the French judgment and demanding that Time Warner not turn over any identifying information. Next, La Soceite Metro brought a "bill of discovery" action in Connecticut, naming Time Warner as the defendant. The "bill of discovery" is a procedural device under Connecticut law; it enables a plaintiff to bring an independent action to obtain evidence to be used in another lawsuit (in this case, a lawsuit against the anonymous emailer). Time Warner notified its subscriber of the Connecticut action, and she intervened through counsel to oppose the bill.

The court applied the standard that Connecticut courts traditionally have used in bills of discovery. This standard has two requirements. First, the plaintiff must show that what it seeks is necessary to mount a claim or defense in another action, and that it has no other way of obtaining the desired material. The court wrote that a plaintiff "must be able to demonstrate good faith as

well as probable cause that the information sought is both material and necessary to [its] action." Second, the court indicated that a plaintiff must "demonstrate by detailed facts that there is probable cause to bring a potential cause of action." It defined "probable cause" as "knowledge of facts sufficient to justify a reasonable man in the belief that he has reasonable grounds for presenting an action . . . Its existence or nonexistence is determined by the court on the facts found."

The court required evidence -- not just allegations or subjective good faith -- in order to establish "probable cause." The court held an evidentiary hearing and relied on testimony from one of La Societe Metro's officers, as well as copies of the offending email itself. The test applied was not significantly different from a "summary judgment" standard like that in Doe v. Cahill, 884 A.2d 451 (Del. 2005).

Based on these cases, the AT&T Subpoena cannot be granted without seriously, irreparably and unjustifiably damaging John Doe 21's First Amendment right to speak anonymously on the Internet. John Doe 21's comments on Autoadmit are presumptively protected by the Constitution, and the attempt to discover John Doe's identity on the strength of Plaintiffs' baseless amended complaint must be denied. Indeed, as will be explained further below, Plaintiffs' case as it relates to John Doe fails every single element of every single test or standard enunciated in any of the cases mentioned above.

A subpoena is a court order and its issuance and enforcement constitute state action. A subpoena is therefore subject to federal constitutional limitations, including the First Amendment. New York Times v. Sullivan, 376 U.S. 254, 265 (1964); Shelley v. Kraemer, 334 U.S. 1 (1948). And a court order to compel production of an individual's identity when that

identification would threaten the exercise of fundamental rights "is subject to the closest scrutiny." NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 461 (1958); Bates v. City of Little Rock, 361 U.S. 516, 524 (1960). In fact, if those rights are harmed by means of private retribution following such court-ordered disclosures, the state action must still be analyzed in the same terms. Bates, 361 U.S. at 524; NAACP, 357 U.S. at 461-63. Accordingly, a plaintiff must show a "subordinating interest which is compelling" where, as here, enforcing the subpoena sacrifices a fundamental right. Bates, 361 U.S. at 524; NAACP, 357 U.S. at 463.

## D. THE COURT MUST REVIEW JOHN DOE 21'S STATEMENT TO DETERMINE WHETHER IT IS ACTIONABLE.

Notably, Plaintiff's Memorandum of Law in Support of Motion for Expedited Discovery and Amended Complaint each mention John Doe 21's pseudonym, "AK47," only twice: once in the caption and once when describing the comment. Further, although the Amended Complaint brings forth a multitude of claims, the Amended Complaint does not indicate which claim is directed at John Doe 21 or which harm John Doe 21 caused Plaintiffs. The Amended Complaint merely groups John Doe 21's comment with other comments, and summarily alleges that everything from copyright violations to false light offenses have been caused by "Defendants." Under The Amended Complaint does not state the "relief" sought against John Doe 21, but rather merely claims that Plaintiffs are entitled to relief due to the comments made by Autoadmit.com posters, one of whom was John Doe 21. The comment at issue is legally protected speech, and would clearly not satisfy any cause of action alleged. Nor would these allegations against John Doe 21, whatever they may be, satisfy any of the standards enunciated in any of the above described cases concerning whether to allow Plaintiffs to unmask anonymous critics in litigation

through the use of a subpoena.

Although Plaintiffs' Complaint, Amended Complaint and other moving documents valiantly attempt to combine John Doe 21's comment with other allegedly (and likely) actionable statements in order to make out otherwise frivolous claims for defamation, negligent and intentional infliction of emotional distress, copyright violations and other claims, John Doe 21's statement must be reviewed individually to determine whether it is actionable. John Doe's statement, however, does not meet *any* of the numerous elements that form the core of Plaintiffs' numerous causes of action. As will be explained, it is abundantly clear that John Doe 21's statement does not amount to a copyright violation (Amended Complaint at Claim I, ¶¶67), appropriation of another's name or likeness (Amended Complaint at Claim II, ¶¶70), unreasonable publicity given to another's life (Amended Complaint at Claim 3, ¶¶75), false light (Amended Complaint at Claim IV, ¶¶79), negligent or intentional infliction of emotional distress (Amended Complaint at Claim V-VI), or libel (Amended Complaint at Claim VII).

An examination of John Doe 21's statement will demonstrate the frivolity of this case and the constitutional invalidity of the subpoena that threatens to trample upon John Doe's constitutionally protected right to speak anonymously. On June 17, 2007, John Doe 21 posted on Autoadmit.com the following comment:

"Women named Jill and [***Doe II's first name***] should be raped." See Exhibit 2.

Plaintiffs' Amended Complaint at ¶¶ 49, however, paints a very different picture than what was actually posted by John Doe 21. The Amended Complaint and Memorandum in Support of

Motion for Expedited Discovery conveniently states that John Doe 21 posted the following comment:

"Women named . . . [Doe II] should be raped."

The effect of omitting the name "Jill" by replacing it with ellipses and the reference to "Doe II" instead of "Doe II's first name" is obvious: Jill, like the first name of Doe II, are *extremely* common first names, and, accordingly, it would be impossible to make out even a remotely actionable claim for intentional infliction of emotional distress if the ***actual*** text and context of the comment were alleged to be actionable in a pleading. Indeed, even as described by Plaintiffs, the comment still does not rise to the level of actionable conduct.

The comment is a general, aimless and inane suggestion posted on a message board known for its aimless inanity, not an actionable or assertive statement of fact or prediction concerning Plaintiffs. Whether viewed individually *or* in context, the statement is clearly not actionable, and it is a shame that John Doe 21 and the other Defendants have had to expend or will have to expend a great amount of money and time to defend such legally harmless comments from attack.

Indeed, a Google.com search for "Jill" produces more than 74,000,000 results, and a search for Doe II's first name produces more than 46,000,000. If John Doe 21's words are indeed actionable, then John Doe 21 – along with any other person that mentions "Jill" or Doe II's innumerably common first name on the Internet in the context of an unsavory, if silly, *suggestion or opinion* – may have opened himself to nearly 120,000,000 lawsuits.

Plaintiffs' Amended Complaint alleges that John Doe 21's comment constitutes a description of "sexual violence" against the plaintiff whose first name was mentioned in the comment. Amended Complaint at §§ 43-i; 49. As explained above, however, John Doe's comment was not a "description" of anything. He was not "describing" an event he had perceived, nor was he "describing" an event that had transpired or was to transpire. In any event, if "descriptions of sexual violence" were sufficient, in whole or in part, to bring an action for intentional infliction of emotional distress, then hundreds of thousands of police officers and crisis counselors across the country would be open to lawsuits alleging intentional infliction of emotional distress since they routinely articulate "descriptions of sexual violence" against persons. Courts should not countenance such a blatant abuse of the legal system to unveil and intimidate anonymous speakers, and it is rather offensive that Plaintiffs are attempting to appeal to this Courts' sympathies by misquoting John Doe 21's comment and lumping it with other more offensive comments, thereby attributing those other comments to John Doe 21.

Plaintiffs' Memorandum of Law in Support of Motion for Expedited Discovery at page 6 includes John Doe 21's innocuous statement among a list of "threatening and false comments" posted on Autoadmit. Of course, suggestions and opinions, by definition, cannot be true or "false." Further, "should be raped" does not constitute a "threat" (see also Amended Complaint at ¶¶5): the word "should," as used here, performs an auxiliary function and clearly implies that the comment constitutes a mere suggestion or opinion, not a command, prediction, statement of fact, or expression of intent or indication of a pending action. To label this statement as a "threat" is to not only completely misunderstand the very basic definition of "threat" – which, according to Merriam Webster's online dictionary, is an indication of something impending or an

expression of intention to cause harm – but also evidences the astonishing frivolity of this case as it relates to John Doe 21 and the lengths to which Plaintiffs are ready to go in order to silence and intimidate their critics. Suggestions and opinions never have, *and hopefully never will*, be actionable. As in Doe v. Cahill, "no reasonable person could have interpreted [John Doe 21's] statements to be anything other than opinion." This is further bolstered by the "unreliable nature of assertions posted in chat rooms and on blogs." Doe v. Cahill at 32.

## E. PLAINTIFFS ARE NOT ABLE TO SUCCEED ON THEIR INTENTIONAL OR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIMS.

Not surprisingly, Plaintiffs' Memorandum of Law in Support of Motion for Expedited Discovery does not mention John Doe 21's statement during its discussion of intentional or negligent infliction of emotional distress. Intentional infliction of emotional distress requires that 1) the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; 2) the conduct was extreme and outrageous; 3) the defendant's conduct was the cause of plaintiff's distress; and 4) the emotional distress sustained by plaintiff was severe. Rest (2d) Torts § 652E. See also Goodrich v. Waterbury Republican American, Inc., 188 Conn 107, 131-133 (1982). These elements are viewed from a "reasonable person" standard, however, see Angiolillo v. Buckmiller, 102 Conn. App. 697, 706 (Conn. App. 2007). This "reasonable person" limitation appears to be why Plaintiffs decided not to mention John Doe 21's statement during their discussion of negligent or intentional infliction of emotional distress. As stated above, John Doe 21's statement clearly does not constitute a threat or description of sexual violence against Doe II. Rather, it is a silly opinion or suggestion. The words "Women named Jill should be raped" cannot be "outrageously"

offensive to the average person since it is not directed at any person in particular, and likewise with the phrase "Women named [Doe II's exceedingly common first name]." The court would be endlessly clogged with lawsuits if such a general, inane and clearly nonsensical statement were sufficient to sustain an "intentional infliction of emotional distress" claim. Plaintiffs may have suffered some emotional harm as a result of other Defendants' comments and activities on Autoadmit, but that does not mean John Doe 21's statement caused any of that harm simply because it mentioned plaintiff's *very, very common first name*.

As mentioned above, Plaintiffs' discussion of negligent infliction of emotional distress also fails to mention John Doe 21's statement, likely because the statement clearly does not rise to the level of negligent infliction of emotional distress. Negligent infliction of emotional distress requires that 1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; 2) the plaintiff's distress was foreseeable; 3) the emotional distress was severe enough that it might result in illness or bodily harm; and 4) the defendant's conduct was the cause of the plaintiff's distress. Plaintiffs' Memorandum of Law in Support of Motion for Expedited Discovery at 23 states that "defendants' extreme and outrageous conduct in the form of rape threats, racist attacks, libelous statements concerning Plaintiffs' sexual activity . . . defamatory statements, among other egregious conduct, created an unreasonable and foreseeable risk of causing plaintiff's emotional distress."

As noted, John Doe 21's statement is not a threat – simple opinions and suggestions cannot constitute threatening conduct. Clearly, it is not "racist," it had no libelous or defamatory meaning, it does not concern plaintiff's sexual activity, nor is it "egregious" in any sense of the word. That a statement is silly or even offensive does not make it "egregious" enough to be

tortious.

The Memorandum further states that "by posting their attacks against [Plaintiffs] on a website frequented by law students and lawyers, defendants knew or should have known that their comments would have been read by Plaintiffs' peers, colleagues, potential employers . . ." It is unbelievable that such a nonsensical allegation can suffice, in this day and age, to completely annihilate another person's First Amendment rights. Does every single one of the millions of "Jills" on the planet now have a claim for negligent infliction of emotional distress against John Doe 21 because John Doe mentioned their first name in the context of an unsavory opinion on the Internet? How would a colleague, law firm, peer, potential employer or *even Plaintiffs themselves* know that, out of the millions upon millions of "Jills" on the planet, the statement "Women named Jill should be raped" concerns a specific Jill? Or the statement that "Women named Jill and [Doe II's equally common first name]" concerns a two people out of the nearly 120,000,000 with the same first names?

In addition to the numerous problems with the Amended Complaint and Memorandum in Support of Motion for Expedited Discovery described above (and the Subpoena), these document have the following fatal problems:

1)    They do not describe or show or demonstrate any causative link between John Doe 21's statement and their "distress"

2)    They do not describe or show or demonstrate how John Doe 21's comment satisfies *any* element of *any* claim set forth

3)    They do not describe or show or demonstrate how Plaintiffs linked the comment to John Doe 21's IP address

4) They are conclusory, not only with respect to John Doe 21's comment, but also with respect with other Defendants' comments, and do not even attempt to explain why John Doe 21's comment is sufficient to warrant the Subpoena

5) They do not demonstrate or even attempt to demonstrate how John Doe 21's statement specifically caused them to lose their employment, or embarrass or humiliate them in front of their acquaintances

6) They are mere allegations. Even the affidavits provided by Plaintiffs do not even attempt to mention how they were harmed by John Doe 21's comment specifically.

Yet another absurd consequence here is that Plaintiffs' suit forces this court to expend its resources to consider a rather foolish question: to what extent is the mere mention of a person's exceedingly common first name actionable in law? Or, is an opinion or suggestion actionable if it mentions the word "rape" along with an exceedingly common first name? These questions, unfortunately, are no less silly than the lawsuit and subpoena that prompted them.

**F. PLAINTIFF HAS NOT MET THE HEIGHTENED STANDARD REQUIRED BY THE FIRST AMENDMENT.**

As stated above, Plaintiffs' underlying Complaint is full of extraordinary claims, from false light to defamation. Even taken together, Plaintiffs' Complaint, Amended Complaint and Motion for Expedited Discovery fall far short of meeting the heightened standards for discovery of the identity of John Doe 21.

Plaintiffs cannot meet the balancing test set forth in *Columbia v. Seescandy.com*. Specifically, Plaintiffs have not shown that this suit, as it relates to John Doe 21, could withstand

a motion to dismiss. This factor is critical because it helps prevent Plaintiffs from filing frivolous lawsuits solely in order to obtain information about personal enemies. Here, plaintiff submits little more than bare allegations and affidavits describing how Plaintiffs were "harmed" by "Defendants." The Amended Complaint and Motion for Expedited Discovery merely misquote John Doe 21's actual statement. Plaintiffs have not alleged that the John Doe 21 had anything to do with their anguish. Indeed, to the extent that John Doe 21 caused Plaintiffs any anguish at all, such anguish is clearly not actionable since John Doe 21's statement constitutes protected speech.

Neither can Plaintiffs satisfy the *2themart.com* factors. First, they have not demonstrated that the subpoena was made in good faith. In *2theMart.com*, the court found that the party seeking the information could reasonably believe that some of the information sought was relevant to one of its defenses, but noted that the subpoena also sought entirely irrelevant private information. That overbreadth indicated an indifference to the privacy and First Amendment rights of online users that, the court held, "while not demonstrating bad faith per se, weighs against [the subpoenaing party] in balancing the interests here." 140 F.Supp.2d at 1096. The information Plaintiffs seek is not relevant any part of their Complaint or Amended Complaint – the statement is not a threat, not a libelous attack, not an assertion of promiscuity, not "extreme and outrageous" and has nothing to do with copyright They have not alleged that John Doe 21 had anything to do with their emotional or economic difficulties. Any subpoena request that seeks John Doe 21's identity information is overbroad and indicates a complete disregard for his privacy and free speech rights.

Further, Plaintiff have not shown that the information sought relates to a core claim or

defense. In *2theMart.com*, this factor weighed against the subpoenaing party where the requested information related to just one of twenty-seven affirmative defenses, a generalized assertion of lack of causation. Here, the bulk of Plaintiff's Complaint concerns allegations of online threats, violent language, identity theft, intentional infliction of emotional distress, and defamation. They do not specifically discuss or examine John Doe 21's statement in the context of any of these claims, yet these claims appear to be the entire basis of the Motion for Expedited Discovery and the Amended Complaint. Moreover, Plaintiffs have not attempted to explain the material relevance of John Doe 21's identity. Given the fundamental importance of the free speech rights at stake, they should be required to do so before the factor be given any weight.

Finally, Plaintiff has not shown that the information they seek is unavailable from any other source. For example, they have not offered a shred of evidence of any attempt to locate John Doe 21 specifically.

Plaintiffs cannot meet any of the leading federal or state balancing tests. Their wild accusations and shoddy investigation cannot justify burdening the John Doe 21's *fundamental right* to anonymous speech. The Court should not authorize this subpoena.

## G. THE COURT MUST BALANCE THE HARM OF DISCLOSURE AGAINST ITS VALUE.

Even if the Court has satisfied itself that John Doe 21's statement is potentially actionable, which, in view of the foregoing, is a near impossibility, "the final factor to consider in balancing the need for confidentiality verses discovery is the strength of the [Plaintiffs'] case . . . . If the case is weak, the little purpose will be served by allowing such discovery, yet great harm will be done by revelation of privileged information. In fact, there is a danger in such a case that

it was brought just to obtain the names [of Plaintiffs' online critics]. . . . On the other hand, if a case is strong and the information sought goes to the heart of it and is not available from other sources, then the balance may swing in favor of discovery if the harm from such discovery is not too severe." Missouri ex rel. Classic III, Inc. v. Ely, 954 S.W. 2d 650, 659 (Mo. Ct. App. 1997).

It bears repeating that the statement that has wasted the resources of this court and John Doe 21 is "Women named Jill and [Doe II's equally exceedingly common first name] should be raped." Because the injury that disclosure would inflict would be an irreparable violation of John Doe 21's fundamental rights, this balancing of the harms is necessary to determine whether the equitable relief should be awarded to plaintiff at the outset of the case. Plaintiffs, as demonstrated in the Amended Complaint cannot come forward with particular evidence sufficient to convince this Court that it is likely to prevail on all elements of at least one of their numerous exotic claims, and it would thus be premature to deprive John Doe 21 of his constitutional right to speak anonymously. Bruno & Stillman, Inc. v. Global Newspaper Co., 633 F.2d 583, 597 (1st Cir. 1980); Southwell v. Southern Poverty Law Center, 949 F. Supp. 1303, 1311 (W.D. Mich. 1996). This balancing is part of the requirement that disclosure be "necessary" to the prosecution of the case, and that the identification "goes to the heart" of Plaintiffs' case. Since this case, at least insofar as it involves John Doe 21, can be dismissed on factual *and* legal grounds without revealing John Doe 21's identity, Plaintiffs cannot be allowed to move forward with their subpoena.

## H. PLAINTIFFS ARE USING THIS SUBPOENA, NOT FOR LEGITIMATE DISCOVERY PURPOSES, BUT RATHER TO INTIMIDATE JOHN DOE 21 IN THE SAME MANNER THAT THEY INTIMIDATED OTHER DEFENDANTS IN THIS

**CASE.**

Plaintiffs are attempting to intimidate John Doe 21 in much the same way that Plaintiffs intimidated and the original principal defendant in this case, Anthony Ciolli, into providing Does with the internet protocol ("IP") addresses of John Doe 21 and the other Defendants. Defendant Ciolli provided Plaintiffs with John Doe 21's IP address despite the lack of any legal duty or mandate to do so. Defendant Ciolli is immune from liability under Section 230 of the Communications Decency Act, which states that "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider," and effectively immunizes ISPs, Internet discussion board operators such as Mr. Ciolli, and other service providers from torts committed by users over their systems. However, Defendant Ciolli acquiesced to the demands of Plaintiffs, no doubt because of the prospect of litigating an expensive suit in federal court.

CONCLUSION

Even though it is impossible to ascertain from the numerous moving documents in this case which precise claim is being alleged against John Doe 21, none of Plaintiffs' frivolous claims against *any* Defendant have any possibility to prevail against John Doe 21. The fact that Plaintiffs gratuitously mentioned one "Ryan Mariner" in their moving documents (see, e.g., Plaintiffs' Memorandum of Law in Support of Motion for Expedited Discovery at 11) suggests that Plaintiffs' true goal in filing the complaint and this subpoena is simply to expose the identity of the Defendants in this case, humiliate them by attributing to them the comments made on the site, coerce them into silence, and then abandon the case due to its frivolity. Indeed, Ryan Mariner has already been parodied, insulted and attacked on the Autoadmit site due to his name

appearing in Plaintiffs' moving papers. A Google.com search for "Ryan Mariner" produces, *as the first four results*, four Autoadmit threads in which Ryan Mariner is alleged to be a "dirty snitching nigger" due to his connection with this case. See Exhibit 3. Plaintiffs' *failure* to mention John Doe 21's statement during their discussion of any of the substantive aspects of their claims strengthens the suggestion that the primary and perhaps sole motivation for the subpoena is not the vindication of certain rights, but rather pure vengeance since *no claim* against John Doe 21 can, as a matter of law, prevail. The Court in *Seescandy.com* warned us of this very tactic. Even if the subpoena is granted, the suit as it pertains to John Doe 21 will likely be dropped – but only after John Doe 21 is identified and humiliated on the Internet and elsewhere due to his being implicated in this case. The federal courts are courts of law, not revenge; and this Court should not countenance the unabashed abuse of its powers to trammel the right of John Doe 21 to remain anonymous.

For the foregoing reasons, plaintiff's subpoena of February 15, 2008, to AT&T concerning the identity of the person who posted comments presumably traceable to the IP address 75.18.198.98, i.e., John Doe 21, should be quashed.

Respectfully Submitted,

Dated: February 22, 2008

JD

John Doe 21.

## CERTIFICATE OF SERVICE

I hereby certify that, on this 22nd day of February, 2008, I caused a copy of the foregoing motion and memorandum to be served by facsimile and first class mail, postage prepaid, upon the following:

Steve Mitra, Esq.
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111

Rhonda K. Compton
Legal Compliance Manager
AT&T Internet Services
130 E. Travis St., Rm. 3-P-01
San Antonio, TX 78205

Mark Lemley, Esq.
Keker Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111

Dorothy Mclaughlin, Esq.
Keker Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111

David Rosen, Esq.
400 Orange Street
New Haven, CT 06511

Rose Darling, Esq.
Keker Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111

Ashok Ramani, Esq.
Keker Van Nest, LLP
710 Sansome Street

San Francisco, CA 94111

Benjamin Berkowitz, Esq.
Keker Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111


$\overline{\mathcal{J} \mathcal{D}\phantom{xxxxxxxxxxxx}}$
Signature