EXHIBIT 4

**[DOE II]**
c/o Yale Law School
127 Wall Street
New Haven, CT 06511

**[DOE I]**
c/o Yale Law School
127 Wall Street
New Haven, CT 06511

Steve Mitra, Esq.
Keker Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111

Mark Lemley, Esq.
Keker Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111

Dorothy Mclaughlin, Esq.
Keker Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111

Rose Darling, Esq.
Keker Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111

Ashok Ramani, Esq.
Keker Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111

Benjamin Berkowitz, Esq.
Keker Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111

David Rosen, Esq.
400 Orange Street
New Haven, CT 06511

To the above named individuals:

As a preliminary matter, be advised that a Motion to Quash Subpoena Civil Subpoena re: IP 75.18.198.98 has been filed in Doe I and Doe II vs. Individuals Whose True Names Are Unknown, Et. Al. in the U.S. District Court for the District of Connecticut/Case Number 07-CV-00909-CFD. A copy of this motion has also been served upon AT&T Internet Services, the Internet provider that assigned IP address 75.18.198.98. A copy of this motion and other materials is now hereby served upon you.

1

# Doe Litigation & Autoadmit.com

I recently received a subpoena from AT&T services, apparently in connection with the lawsuit brought by [DOE I] and [DOE II] against certain posters on the Autoadmit website. The subpoena threatens to disclose all information pertaining to my identity unless a motion or other measure is filed before February 25, 2008. At considerable expense to myself and family, a motion to quash has been prepared. For the reasons mentioned below, I am begging you to release me from this unfortunate case.

First, I'd like to express my deepest regret for being associated with Autoadmit.com, a site which has apparently recently caused [DOE II] and [DOE I] much stress. Autoadmit is a fantastic waste of time, and indeed ought to be shut down, lest this sort of thing happen again.

That said, I cannot and will not be dragged into this huge mess simply because I made an inane, non-threatening and certainly non-actionable comment on the site. The comment is "Women named Jill and [DOE II] should be raped." No one, least of all lawyers and persons like [DOE II] and [DOE I], who are versed in the basic fundamentals of tort law, would ever consider this an injurious or actionable comment. It's a suggestion, not a threat; it's a stupid opinion, not a harmful assertion of fact or "description of sexual violence," whatever that means. Worse yet, it's the only thing I've *ever* said on the site that includes [DOE II] 's name. I simply find it amazing that this nonsensical comment could ever be lumped together and equated with the "T14 contest" site or the barrage of horrible emails sent to YLS faculty and students by certain other posters. I did not take part in any of that nonsense. I never insulted [DOE II] or [DOE I]. I never attacked [DOE II] or [DOE I]. I never threatened [DOE II] or [DOE I]. Indeed, under my other monikers, I actually *defended* [DOE II] and [DOE I] and severely berated and attacked the YLS email idiots as well as the "T14" site morons for their conduct. All this prompts me to ask: Why am I a defendant in this suit?

Unfortunately, I will not be able to keep my current job if it is revealed that I once posted on, or am in any way affiliated or associated with, Autoadmit.com. As I've revealed on the Autoadmit.com site, I'm not a lawyer. Obviously I cannot give you the precise details of my job duties, but I do support many, many people in numerous ways. Therefore, if I lose my job, many people, including my family, will suffer personally for it.

I've been advised to protect myself from [DOE II], [DOE I], and their cadre of elite lawyers by using the Internet. Thus, I am currently in the process of creating a website that I will use to track the litigation, step by step, until its resolution. The website will detail all the allegations and allegedly harmful comments in the case, and will feature the actual names of [DOE II] and [DOE I] · as well as information pertaining to why they are suing me, and so on. Since none of the allegations, accusations, or allegedly harmful comments have been tested yet in court or otherwise proven false, I will ask for comments on whether such allegedly harmful comments are true or have any merit. The website will be publicly viewable, obviously, and in order to reach a maximally large audience, I will send a link to Yale students as well as other university students. A link to

the site will also be posted on Autoadmit.com, the site that started this whole mess. A mirror site will be created, too, as is customary when a site achieves too much traffic. (Autoadmit's mirror site is Xoxohth.com.) A blog will also be established for the site. As any person familiar with the operation and creation of websites will attest, blogs are very easy to create and maintain, and there are hundreds of free blog providers and free website providers for persons interested in airing their views to the public. Two obvious provides are Google, which provides GooglePages (which, incidentally, is where certain posters attacked [DOE II] and [DOE I] on the "T14 contest" site, which led [DOE II] and [DOE I] to file this suit – note that the website I intend to create will not intentionally disparage [DOE II] or [DOE I] in any way, but will rather ask the public for comment into whether any of the comments posted by the anonymous defendants are true or have any merit, as well as accept general comments and opinions of the girls from classmates, friends, and other observers in an effort to build any possible defense to [DOE II]'s and [DOE I] 's claims), and blogger.com, which provides a free blog-creation service. Again, I was not involved in any way with the websites or emails created or sent by the anonymous defendants.

**Efforts to Intimidate or Silence Me**

Creating and managing the site is well within my First Amendment rights. Any action to silence, harass or coerce me into taking the site down will be met by an appropriate anti-SLAPP motion which, as I'm sure you know, protects speakers from "strategic" suits designed to silence criticism and/or public speech. The protections provided by the anti-SLAPP laws are especially strong where the speech pertains to a matter currently under review in a judicial proceeding, and thus applies to speech pertaining to suit brought by [DOE II] and [DOE I]. Such a motion also entitles me to attorney's fees incurred in the process. An anti-SLAPP suit may also be pursued to recover attorney's fees already incurred as a result of this suit. As you know, Connecticut doesn't currently have Anti-SLAPP legislation, but California – i.e., where the Subpoena was executed – does, as do many other states. To date, this horrible case has cost me several thousand dollars in legal fees and related costs.

My intent is not to further harm [DOE II] and [DOE I]. As I stated above, I recognize that these women have experienced some emotional difficulty as a result of their lives being publicly scrutinized and criticized on Autoadmit.com and other websites. However, if I am going to be sued by these young women for making a frivolous, non-threatening, non-actionable, innocuous and *constitutionally protected* comment on a website -- i.e., "Women named Jill and [DOE II] should be raped," then I think it fair to create a site that details all the claims put forth against me and my co-defendants. I have no way of knowing whether the anonymous defendants' comments concerning [DOE II]'s and [DOE I].'s criminality and sexual deviancy are accurate, and a site that details all the allegations and accepts comments from persons that know [DOE II] or [DOE I] would be a good place to examine those comments.

There is also another reason for the site. Since [DOE II]'s and [DOE I] 's suit puts forth all sorts of extraordinary claims, and since I have no idea whether [DOE II] and [DOE I] are as sexually loose or bigoted as the anonymous Defendants' claimed on the site, I will need

3

evidence to support a "truth" defense to [DOE III]'s and [DOE I]'s allegations. And since, apparently, it is extraordinarily easy to obtain a subpoena, I will be pursuing the following subpoenas (note that one or more of the following items can easily be obtained through an alternative discovery tool):

1) A subpoena for information pertaining to the size of [DOE III] 's breasts and whether such breasts, as alleged by one Defendant, are "fake"
2) Information pertaining to whether [DOE III] or [DOE I] are indeed "universally hated" by their peers
3) Information pertaining to whether [DOE III] or [DOE I] have any sexually transmitted diseases, including Herpes
4) Information pertaining to the law firms that interviewed [DOE III] and [DOE I], and why such firms decided not to hire [DOE III] or [DOE I]
5) Information pertaining to whether [DOE I] did indeed achieve a score of 159 on the LSAT
6) Information pertaining to [DOE III] 's religion – i.e., Islam – and information from any Muslim peers that may be able to shed any light on this case (this information may be a bit difficult to get, but local mosques would be a good place to send information requests or, if necessary, subpoenas)

The above information requests and subpoenas will be sent to YLS students, faculty, friends and family of [DOE III] and [DOE I] to the extent they are able to be located, as well as anyone else who knows [DOE III] and [DOE I] and would be able to provide such information. Whenever I make an information request, I will state exactly what the request is for, whom it concerns, and why I am seeking it. I will use [DOE III]'s and [DOE I]'s true names, for without their true names, the information requests will be completely useless. As I stated above, my purpose here is not to hurt [DOE III] or [DOE I]; my purpose is to defend myself. However, I think it safe to say some of the information would be harmful to [DOE III] and [DOE I]. This brings to mind the unfortunate situation that Robert Steinbuch found himself in – i.e., having to deal with numerous embarrassing revelations – when he brought a defamation lawsuit against one Jessica Cutler not too long ago.

The critical question, I think, for [DOE III] and [DOE I] to consider is whether having to deal with such a site and blog is worth "uncovering" the identity of a person who merely said that he thinks "Women named Jill and [DOE III] should be raped." It is especially unfortunate that these words were the only negative words I ever wrote concerning either [DOE III] or [DOE I]. Again, I am not a lawyer, and due to my lack of legal expertise, these subpoenas and other discovery tools are the only things I believe I can do to defend myself against this lawsuit.

Alternatives

[DOE III] and [DOE I], I beg you to release me from this lawsuit. If this matter to the extent that it involves myself or moniker, "AK47," is not resolved very soon, then I will *have absolutely no choice* but to move forward with the site, blogs and my defense. Please

4

amend the complaint to properly reflect that "AK47" is no longer a part of this litigation, or rescind or retract the AT&T subpoena, or take other measures, as appropriate, in order to release myself and my moniker from this lawsuit. I am willing to provide any help I can to aid you in finding and holding responsible any Defendant that actually harmed you.

**Malicious Prosecution**

There is also the issue of malicious prosecution. The lawsuit was filed by your lawyers in Connecticut. After they obtained my IP address from Anthony Ciolli, an IP address that registered to the bay area of California, they executed the Subpoena in the Central District of California, which encompasses Los Angeles and nearby areas. Upon receiving this Subpoena, I had absolutely no idea how to defend against it, and thus had to seek legal help, as well as lose a lot of sleep, time, and money, to figure out a way to stop the revelation of my identity from occurring. I did in fact experience a lot of emotional distress over the prospect of losing my job, a job that, as I said above, I use to support many, many people. I've also experienced severe emotional distress due to numerous other consequences of this case. I've been advised that I may have a claim for the emotional distress inflicted by this litigation.

The comment at issue here is "Women named Jill and [DOE II] should be raped." There is clearly no probable cause to proceed with this suit against "AK47" or myself. Indeed, I suspect that, thus far, [DOE II]'s and [DOE I] 's desire to pursue this litigation against myself has been energized by the efforts of their lawyers. It appears, however, that [DOE II]'s and [DOE I] 's overall objectives may be different than the aims of her lawyers. If I or any other defendant chooses to defend ourselves to the full extent allowable under the law, I am fearful that more harm will visit [DOE II] and [DOE I] . That, of course, would be a rather perverse consequence of this litigation.

The lawyers in this case, and [DOE II] and [DOE I] , have a duty of good faith independent factual investigation and legal research sufficient to support a finding of probable cause to sue. In Williams v. Coombs (1986) 179 Cal. App. 3d 626, the California Court of Appeal held that attorneys who participate in the filing or maintenance of litigation without probable cause are personally liable for malicious prosecution of a civil action. Since "Women named Jill and [DOE II] should be raped" *clearly* does not constitute actionable speech, an action lies against the team of aggressive Keker lawyers that have orchestrated this lawsuit, as well as against [DOE II] and [DOE I] , personally.

In Sheldon Appel Co. v. Albert & Oliker (1989) 47 Cal. 3d 863, the California Supreme Court narrowed Williams, holding that a trial court may not delegate the ultimate determination of probable cause to the jury; it held that the question was one of law which must be resolved by the Court. Id. at 876. The Sheldon decision specifically disapproved of dicta from Tool Research & Engineering Corp. v. Henigson (1975) 46 Cal. App. 3d 675, at 683, that the attorney must have a "subjective belief" in the tenability of his or her client's claim in order to avoid malicious prosecution liability. Sheldon Appel Co. v. Albert & Oliker, supra, 47 Cal. 3d at 881. Nonetheless, it "strongly

5

emphasized" that its conclusion "does not by any means suggest that an attorney who institutes an action which he does not believe is legally tenable is free from the risk of liability" because the lawyer's subjective belief "would clearly be relevant to the question of malice." Id. (emphasis supplied); see also Slater v. Durchfort (1995) 35 Cal. App. 4th 1718, 1724.

The Shelton Court also disapproved of Tool Research dicta suggesting that lack of probable cause may be proven "simply by showing that [the attorney] failed to perform reasonable legal research or factual investigation before filing a claim." Id. at 882. Rather, the Shelton Court held that such lack of diligence is relevant on the issue of malice. Id. The Shelton Court specifically disapproved of the Williams decision's apparent use of lack of investigation to prove lack of probable cause, although it fully endorsed the Williams analysis of the tort of malicious prosecution itself. Id. at 882-883 (footnote 9).

There is no possible way elite and extremely-well-educated lawyers such as the Keker lawyers here would think that "Women named Jill and [DOE II] should be raped" is an actionable tort. Even the slightest bit of legal research would reveal that this opinion is not in any way actionable (Doe v. Cahill, holding that mere opinions aren't actionable, is one obvious example) Malice, therefore, is clear here.

The facts in [DOE II]'s and [DOE I]'s case against me clearly do not show that any actionable harm was done. They, and their lawyers, therefore, will have to answer for the horrible predicament they've put me in. Yes, I've spent a lot of money on this case. Yes, I've experienced emotional distress as a result of realizing that I may lose my job. That is the result of your unfounded suit against me.

**Closing**

Thank you for your attention in this matter. It is no fun being a litigant in any case, especially one in which you have to defend yourself against completely unfounded attacks. Please respond to                                with an answer to my pleas. If I am dropped from this suit, I *will not* take any of the actions mentioned above. Like I've repeated numerous times already, I feel sorry for [DOE II] and [DOE I] .. But I simply do not understand why they want to hurt me so much for something as frivolous as the aimless, stupid suggestion I posted on Autoadmit. I honestly hope that we can put this behind us, and that you eventually hold accountable the defendants that actually harmed you.

Thank you,

John Doe 21, a.k.a. "AK47."