# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

DOE I, and DOE II,

      Plaintiffs,

v.

Individuals, whose true names are unknown,

      Defendants.

Case No. 3:07CV00909 (CFD)

Date:  March 17, 2007

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF OPPOSITION TO JOHN DOE 21'S MOTION TO QUASH PLAINTIFF'S SUBPOENA

Oral argument requested
pursuant to Local Rule 7(a).

412372.03

Dockets.Justia.com

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ....................................................................1

II.    FACTUAL BACKGROUND ....................................................2

    A.    AutoAdmit.com is where Doe 21 posted disgusting and threatening statements about DOE II. ....................................................2

    B.    Plaintiff DOE II becomes the victim of harassment, threats, and defamation on AutoAdmit.com. ....................................................3

    C.    The harassment ultimately makes its way to DOE II's home and school. ....................................................5

    D.    AK47 joins in the attacks against DOE II. ....................................................6

    E.    The harassment and defamation aimed at DOE II continues to proliferate on AutoAdmit and ultimately reaches her former employer ............6

    F.    DOE II sues several anonymous AutoAdmit users for, *inter alia*, emotional distress and harm to her reputation. ....................................................7

    G.    After learning that DOE II filed a complaint, AK47 posts additional harmful messages about DOE II on AutoAdmit. ....................................................7

    H.    DOE II suffers extreme emotional distress as a result of the harassment, threats and defamation aimed at her on AutoAdmit, including that inflicted by AK47. ....................................................8

    I.    Plaintiffs subpoena AT&T for information relating to AK47's identity. ...........9

    J.    John Doe 21 *a.ka.* "AK47" contacts Plaintiffs' counsel and threatens to create a new public forum that could be used to further harass and defame DOE II. ....................................................10

III.    ARGUMENT ....................................................11

    A.    Doe 21's motion is moot because AT&T complied with the subpoena after Doe 21 failed to timely file an objection. ....................................................11

    B.    Even if Doe 21's motion is not moot, it fails on the merits because AK47's identity is not protected from disclosure by the First Amendment. ....................................................12

    C.    Plaintiff DOE II has sufficient evidence to sustain a *prima facie* case for each of her claims against AK47 and, accordingly, discovery of his identity is warranted. ....................................................15

        1.    DOE II has established a *prima facie* case of libel. ............................15

i

Oral argument requested
pursuant to Local Rule 7(a).

412372.03

2.  Plaintiff DOE II has established a *prima facie* case of Invasion of Privacy. ..............................................................................................16

3.  DOE II has established a *prima facie* case of Intentional Infliction of Emotional Distress. ..............................................................17

4.  DOE II has established a *prima facie* case of Negligent Infliction of Emotional Distress. ..............................................................20

D.  DOE II satisfies the remaining applicable evidentiary requirements for disclosing AK47's identity. ..............................................................21

IV.  CONCLUSION ..............................................................................................23

Oral argument requested
pursuant to Local Rule 7(a).

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Buckley v. America Constitutional Law Foundation*,
    525 U.S. 182 (1999)..................................................................................................12

*Columbia Insurance v. SeesCandy.com*,
    185 F.R.D. 573 (N.D. Cal. 1999)............................................................................14

*Crooker v. United States State Department*,
    628 F.2d 9 (D.C. Cir. 1980).....................................................................................11

*Doe v. 2The Mart.com, Inc.*,
    140 F. Supp. 2d 1088 (W.D. Wash. 2001)..............................................................14

*Sony Music Entertainment v. Does 1-40*,
    326 F. Supp. 2d 556 (S.D.N.Y. 2004)............................................12, 13, 21, 22

## STATE CASES

*Angiolillo v. Buckmiller*,
    102 Conn. App. 697 (2007) ..............................................................................17, 18

*Carrol v. Allstate Insurance Co.*,
    262 Conn. 433 (2003) .............................................................................................20

*Charles Parker Co. v. Silver City Crystal Co.*,
    142 Conn. 605 (1955).............................................................................................15

*DeVito v. Schwartz*,
    66 Conn. App. 228 (2001) ......................................................................................15

*Dendrite Intern, Inc. v. Doe No. 3*,
    342 N.J. Super. 134 (App. Div. 2001) ..............................................................13, 21

*Doe v. Cahill*,
    884 A.2d 451 (Del. 2005) .......................................................................................14

*Flanagan v. McLane*,
    87 Conn. 220 (1913) ...............................................................................................16

*Goodrich v. Waterbury Republican-American, Inc.*,
    188 Conn. 107 (1982) .............................................................................................16

*Krinsky v. Doe 6*,
    H030767 (Cal. Ct. App. Feb. 6, 2008)....................................................................13

*La Societe Metropolitan Cash & Carry France v. Time Warner Cable*,
    2003  WL. 22962857 (Conn. Super. 2003)........................................................14, 22

Oral argument requested
pursuant to Local Rule 7(a).

# TABLE OF AUTHORITIES
## (cont'd)

Page(s)

*Leone v. New England Commc'ns*,
   32 Conn. L. Rptr. 72 (2002)........................................................................................17

*Monczport v. Csongradi*,
   102 Conn. 448 (1925) ...............................................................................................16

*Olson v. Bristol-Burlington Health District*,
   87 Conn. App. 1 *cert. granted*, 273 Conn. 914 (2005) (appeal withdrawn,
   May 25, 2005)...........................................................................................................20

*Petyan v. Ellis*,
   200 Conn. 243 (1986) ...............................................................................................17

*In re Subpoena Duces Tecum to America Online, Inc.*,
   2000 WL 1210372 (Va. Cir. Ct. Jan. 31, 2000)......................................................14

*Torosyan v. Boehringer Ingelheim Pharmaceuticals*,
   234 Conn. 1 (1995) ...................................................................................................15

Oral argument requested
pursuant to Local Rule 7(a).

# I.      INTRODUCTION

Remarkably, John Doe 21 ("Doe 21") admits to posting an incitement to rape one of the plaintiffs in this case, but ignores the key context:  that the incitement came on the heels of *hundreds* of threatening, defamatory and sexually-explicit comments that had been posted about that plaintiff on the same Internet message board, and one week after that plaintiff (DOE II) filed her highly-publicized complaint in this case.  Doe 21 further admits that he[1] posted this message under the pseudonym "AK47," who Plaintiffs have named as a defendant in this case.  Yet despite this Court's order permitting Plaintiffs to engage in expedited discovery to uncover the identities of the anonymous defendants in this case—including AK47—Doe 21 *a.k.a.* AK47 seeks to quash Plaintiffs' subpoena to AT&T (Doe 21's internet service provider) to prevent the disclosure of his identity on the grounds that his statement and identity are protected by the First Amendment.  Doe 21 is wrong, and the motion should be denied.

*First*, Doe 21's motion to quash is moot because AT&T has already complied with the subpoena.  AT&T did so only after it (1) provided Doe 21 with notice and (2) told Doe 21 that it would comply with the subpoena (and thus disclose Doe 21's identity to Plaintiffs) unless an objection to the subpoena was *filed before* February 25, 2008.  Doe 21, however, waited until February 25 to file a motion to quash, missing AT&T's deadline.  Because Doe 21's motion to quash was untimely, AT&T complied with the subpoena.  (Respecting this Court's authority, Plaintiffs have *not* served a subpoena on Doe 21 for documents and deposition testimony, which is what they will do immediately after the Court denies the motion to quash, or otherwise used it.

---

[1] In this memorandum, Plaintiffs refer to Doe 21 using masculine pronouns solely because the motion to quash was filed and signed by "John Doe 21."

Oral argument requested
pursuant to Local Rule 7(a).

412372.03

*Second*, even if Doe 21's motion were not moot—it is—the Court should deny it on the merits because Doe 21's identity is not protected from disclosure by the First Amendment or any other constitutional or statutory privilege. It is true that courts recognize a limited right to speak anonymously on the Internet. What Doe 21 fails to recognize is that the identity of an anonymous speaker is properly disclosed where, as here, the victim establishes a *prima facie* case of actionable harm against the speaker. As discussed in detail below, Plaintiff DOE II has sufficient evidence to sustain a *prima face* case against Doe 21 for four causes of action: (1) libel; (2) invasion of privacy; (3) intentional infliction of emotional distress; and (2) negligent infliction of emotional distress. In addition, DOE II meets the other evidentiary requirements for disclosing the identity of an anonymous Internet poster: Plaintiffs' subpoena seeks information about AK47's identity for a proper purpose—to serve him with the complaint and proceed with this litigation; the subpoena is specific and directly related to DOE II's claims; there are no other adequate means of obtaining the information called for in the subpoena; and Doe 21's identity is centrally needed in order to proceed with this litigation.

For these reasons and others set forth below, the Court should deny Doe 21's motion.

## II.    FACTUAL BACKGROUND[2]

**A.    AutoAdmit.com is where Doe 21 posted disgusting and threatening statements about DOE II.**

AutoAdmit.com ("AutoAdmit") is an Internet discussion board on which participants post and review comments and information about undergraduate colleges, graduate schools, and law schools.[3] The web site, which describes itself as "[t]he most prestigious law school

---

[2] In this memorandum, Plaintiffs limit the factual discussion to the issues relevant to Doe 21's motion, which relates to conduct aimed solely at Plaintiff DOE II. For a complete factual background relating to this case, Plaintiffs refer the Court to their motion for expedited discovery, filed on January 24, 2008 (Docket No. 21).

[3] *See* http://www.autoadmit.com.

Oral argument requested
pursuant to Local Rule 7(a).

discussion board in the world," draws between 800,000 and one million visitors per month.[4] Anyone who uses the Internet and visits the AutoAdmit site, either directly or via an Internet search engine such as Google, may view the messages posted to the discussion board.

Individuals who register with the AutoAdmit site may, but are not required to, provide their real names.[5]  Registered AutoAdmit users may post new messages and respond to the messages of other registered users.[6]  After a participant posts a new message, any further comments or responses to the subject area of that message are collected as a "thread."[7]  The threads on the AutoAdmit site can be found by searching on the site or through search engines such as Google.  By entering a person's name as a search term, a search engine will list various threads in which that name appears in search results.[8]

**B.**     **Plaintiff DOE II becomes the victim of persistent harassment, threats, and defamation on AutoAdmit.com.**

In early February 2007, DOE II, then a first-year law student at Yale Law School, learned from one of her friends that she was the subject of a message thread on AutoAdmit.[9]  Thereafter, DOE II visited the website and found the first of hundreds of messages about her, many of which contained sexual and vulgar comments, and others that included threats of violence or rape and/or made false statements about her that harmed her reputation.[10]

---

[4] *See* Declaration of Steve Mitra in Support of Plaintiffs' Motion for Expedited Discovery, filed on January 24, 2008 (Docket No. 21), (hereinafter "Mitra 1/24 Decl.") Ex. C.

[5] *Id.* ¶ 6.

[6] *Id*. ¶ 6, Ex. D.

[7] *Id.* ¶ 5.

[8] *Id*. Ex. E.

[9] *See* Declaration of DOE II in Support of Plaintiffs' Motion for Expedited Discovery, filed on January 24, 2008, (Docket No. 21), (hereinafter "DOE II 1/24 Decl.") ¶ 2.

[10] *Id*.

Oral argument requested
pursuant to Local Rule 7(a).

412372.03

The first message about DOE II that appeared on AutoAdmit was posted on January 31, 2007, by an anonymous poster using DOE II's initials as a pseudonym.[11] In that message, the poster linked to a photo of DOE II and encouraged others to "Rate this HUGE breasted cheerful big tit girl from YLS."[12] Within a week, dozens of additional messages about DOE II appeared in this thread.[13] Many of the messages commented crudely on DOE II's breasts; others described in graphic detail the poster's desire to have sexual relations with her.[14] Even more disturbing, certain anonymous posters appeared to be among DOE II's classmates at Yale Law School. In particular, one poster wrote a message describing DOE II's attire while she exercised at the law school gym,[15] which prompted another user to post a message suggesting that someone should follow DOE II to the gym, take her picture, and then post it on AutoAdmit.[16]

In March 2007, the attacks against DOE II on AutoAdmit escalated. On March 6, one poster falsely stated that DOE II fantasized about being raped by her father;[17] another falsely claimed that she enjoyed having sex while her family members watched;[18] and another encouraged others to "punch [her] in the stomach" when seven-months pregnant.[19] On March 7, a poster falsely alleged that DOE II had the "clap."[20] That same day, another poster falsely

---

[11] *Id.* Ex. 1 (first message thread started by "HI"). This message thread, as with the other messages quoted in this memorandum, has been redacted to protect plaintiffs' identities. Plaintiffs will provide unredacted copies to the Court to review *in camera*, upon the Court's request.

[12] *Id.*

[13] *Id.*

[14] *See id.*

[15] *Id.* Ex. 18 at 7 (message posted by "Vincimus").

[16] *Id.* (message posted by "Cheese Eating Surrender Monkey").

[17] *Id.* Ex. 5 at 4 (message posted by "Ugly Women").

[18] *Id.* Ex. 6 at 3 (message posted by "DRACULA").

[19] *Id.* Ex. 5 at 2 (message posted by "Sleazy Z").

[20] *Id.* Ex. 8 at 18 (message posted by "Whamo").

Oral argument requested
pursuant to Local Rule 7(a).

stated that DOE II had checked into a rehabilitation program for heroin use.[21] And yet another message appeared falsely stating "[DOE II] found dead in apartment!"[22] Even more horrifying, two days later another poster wrote, "[DOE II] (YLS 09) IS AN ANNOYING, SELFISH CUNT. I HOPE SHE GETS RAPED AND DIES.[23]

**C.    The harassment ultimately makes its way to DOE II's home and school.**

The harassment aimed at DOE II was not confined to the AutoAdmit website; ultimately, it made its way directly to the email inboxes of DOE II and the Yale Law School faculty. Specifically, on March 9, 2007, an AutoAdmit poster using the moniker "Patrick Bateman" emailed DOE II and at least one member of the Yale Law School faculty the following message:

> **From:** Patrick Bateman <batemanhls08@hotmail.com>
> **Date:** Mar 9, 2007 2:08 PM
> **Subject:** Yale Law School faculty: Notice
> **To:** [Member of the Yale Law School Faculty]@yale.edu
> **Cc:** [DOE II]@yale.edu
>
> Dear Yale Law faculty,
>
> I write to you now about a very important issue that affects a non-trivial number of you. Although you undoubtedly deal with self-entitled, spoiled students on a regular basis, there's one person in particular whose history I feel you must be made aware of before problems arise. [DOE II], a student in your 09 class, has a felon as a father who stole money . . . . Best of luck to you in managing this liability, it is regretful that the admissions process can't encapsulate the entire person.
>
> XOXO
> HTH
> Patrick Bateman (Harvard Law School 08)
> References:
> [Hyperlinks to articles about DOE II and her father's decade-old conviction].[24]

This message was posted as a thread on AutoAdmit.com the same day it was sent to the Yale Law School faculty.[25]

---

[21] *Id.* Ex. 10 (message posted by "who is").

[22] *Id.* Ex. 13 (message posted by "r@ygold").

[23] *Id.* Ex. 2 (message posted by "Ugly Women") (original in all caps).

[24] *Id.* Ex. 35.

Oral argument requested
pursuant to Local Rule 7(a).

412372.03

**D.    AK47 joins in the attacks against DOE II.**

By the end of March 2007, DOE II's name—and the attacks against her—had become well-known on AutoAdmit.  On March 30, 2007, after nearly 200 threads had been posted about DOE II on AutoAdmit, an anonymous poster using the moniker "AK47" posted a message falsely stating, "Alex Atkind, Stephen Reynolds, [DOE II], and me:  GAY LOVERS."[26]  This message was particularly disturbing:  "AK47" was well-known on AutoAdmit for frequently posting threatening and derogatory comments about minority groups,[27] and thus a statement suggesting a sexual liaison between DOE II and AK47 was harmful to DOE II's reputation.[28]  In addition, of course, the message was then and remains now false.[29]

**E.    The harassment and defamation aimed at DOE II continues to proliferate on AutoAdmit and ultimately reaches her former employer.**

The harassment and defamation aimed at DOE II on AutoAdmit.com continued to proliferate throughout the Spring of 2007.  In early April 2007, one user falsely claimed that DOE II posed in *Playboy*,[30] and another falsely alleged that she performed fellatio on the dean of Yale Law School for a passing grade.[31]  Eventually, the defamation and harassment made its way to DOE II's former employer:  on April 28, 2007, an anonymous AutoAdmit user posted the following message—which he claimed to have sent to the law firm where DOE II was formerly a summer associate—on AutoAdmit.com:

---

[25] *Id.* Ex. 36.

[26] Declaration of DOE II in Support of Opposition to Doe 21's Motion to Quash Plaintiffs' Subpoena, filed herewith, ("DOE II Decl.") Ex. A.

[27] *Id.* Exs. B-E.  Indeed, AK47 admits that his pseudonym "has been linked to many, many comments of the AutoAdmit website, the majority of which is offensive and negative."  *See* Defendant John Doe 21's Motion to Proceed Anonymously, filed on March 31, 2008, (Docket No. 28) ¶ 4.

[28] *Id.* ¶¶ 2-5.

[29] *Id.*

[30] DOE II 1/24 Decl. Ex. 12 (message posted by "playboytroll").

[31] *Id.* Ex. 11 (message posted by "Dean_Harold_Koh").

Oral argument requested
pursuant to Local Rule 7(a).

Greetings,

I want to bring your attention to some information potentially harmful to your firm's reputation. Obviously your clients do not want to be represented by someone who is not of the highest character value, which is why I believe you should know a bit more about an employee of yours. I've recently discovered [DOE II] of Yale Law School is one of your summer hires. It is true that she does have a fine academic pedigree, but there is some distressing information about her readily available online. Some of what is written about her is of dubious value. Regardless, there is good reason to believe some of your clients may not be so careful in how they interpret what has been written—especially as to how it relates to the quality of your firm. Included below is a sample, but a simple Google search will return an even more extensive record.[32]

## F. DOE II sues several anonymous AutoAdmit users for, *inter alia*, emotional distress and harm to her reputation.

On June 8, 2007, DOE II filed a complaint against several anonymous AutoAdmit posters, alleging, *inter alia*, libel, invasion of privacy, and negligent and intentional infliction of emotional distress. In the complaint, DOE II described the harm she had experienced because of the harassing, threatening and defamatory postings on AutoAdmit, including the fact that she had been forced to seek therapy.[33] In addition, DOE II alleged that defendants' conduct caused her physical illness and severe emotional distress, interfered with her educational progress, damaged her reputation, and caused her pecuniary harm.[34]

## G. After learning that DOE II filed a complaint, AK47 posts additional harmful messages about DOE II on AutoAdmit.

News that DOE II had sued several anonymous AutoAdmit posters quickly made its way into discussion threads on AutoAdmit.com. Notably, AK47 started several of these threads, suggesting that he had reviewed the complaint in detail. For example, on June 12, 2007, AK47 posted a message on AutoAdmit opining on the merits of Plaintiffs' claims.[35] That same day, he

---

[32] *Id.* ¶ 19, Ex. 37 (message posted by "t14 gunner").

[33] *See* Complaint, filed on June 8, 2007, ¶ 42.

[34] *Id.* ¶¶ 61, 90.

[35] DOE II Decl. Ex. F at 2.

Oral argument requested
pursuant to Local Rule 7(a).

412372.03

posted a message asking "So are we allowed to use [DOE II]'s name in threads anymore?"[36]  In

that message, AK47 used DOE II's first and last name.[37]  Days later, on June 17, 2007, AK47

wrote:  "Women named Jill and [DOE II] should be raped."[38]  Finally, in an apparent attempt to

encourage others to post harmful messages about DOE II, on June 24, 2007, AK47 started a

topical thread titled "Inflicting emotional distress on cheerful girls named [DOE II]."[39]

## H.    DOE II suffers extreme emotional distress as a result of the harassment, threats and defamation aimed at her on AutoAdmit, including that inflicted by AK47.

After DOE II learned that AK47 had posted messages about her on AutoAdmit

suggesting that she "should be raped" and that she and AK47 were "gay lovers" she was

understandably upset and humiliated.[40]  But more importantly, after already enduring months of

harassment, threats and defamatory attacks on AutoAdmit, she was scared for her safety.  DOE II

knew that AK47 was a notorious poster on AutoAdmit.com, that he often use racial slurs on the

message board, and that he had developed a following of other AutoAdmit posters who seemed

to enjoy and encourage his vitriolic rants.[41]  Knowing that AK47 had publicly suggested that she

should be raped made DOE II feel frightened and ill.  As a result of the threats and harassment

that DOE II experienced on AutoAdmit, including the statements posted by AK47, it became

increasingly difficult for her to sleep at night, and she often stayed with friends or had friends

---

[36] *Id.* Ex. G.

[37] *Id.*

[38] *Id.* Ex. H.  In this message, AK47 referred only to DOE II's first name, which he spelled as ending with an "i."  DOE II's first name, which ends in an "e", was often misspelled in the same way in many other posts about her on AutoAdmit.  *See, e.g.*, *id.* Exs. I –L.  It is absurd to suggest—as Doe 21 does in his motion—that it was unclear who AK47 was talking about when he stated that "[DOE II] should be raped."  Based on the context of the posts, and the thousands of posts about DOE II that preceded AK47's statement, it was obvious that AK47 was talking about DOE II, regardless of whether he used her last name or spelled her first name with an "i" or an "e."  *See, e.g., id.* Ex. M (June 24, 2007 message posted by "norporth").

[39] *Id.* Ex. M.

[40] *Id.* ¶ 2.

[41] *Id.*

Oral argument requested
pursuant to Local Rule 7(a).

escort her home because she did not feel comfortable being alone in her apartment.[42]  In addition, DOE II became anxious, fearful and depressed.  She also developed insomnia, loss of appetite and stomach problems.[43]  Ultimately, she was forced to take medication to treat the anxiety and depression from which she still suffers.[44]  Finally, the stress and anxiety that DOE II experienced as a result of the threats and harassment she experienced on AutoAdmit, including that inflicted by AK47, negatively affected her relationships with her family, friends, classmates, and colleagues.[45]

## I.     Plaintiffs subpoena AT&T for information relating to AK47's identity.

On January 29, 2008, this Court granted Plaintiffs' request to engage in limited, expedited discovery  to uncover the identities of the defendants in this case, including AK47 (*see* Docket No. 23).  Plaintiffs included as an exhibit to their application for expedited discovery a subpoena to AT&T, which sought information that Plaintiffs believed would help them discover the identity of one or more defendants.[46]  Notice of Plaintiffs' application was posted on AutoAdmit on January 25, 2008.[47]

In accordance with this Court's January 29 Order, on February 1, 2008, Plaintiffs issued a subpoena *duces tecum* to SBC Internet Services, Inc. (now known as AT&T Internet Services ("AT&T")) for information relating to the identity of the person(s) assigned to the Internet Protocol ("IP") address 75.18.198.98 on July 18, 2007 at 2:54 a.m. Eastern Time.[48]  Plaintiffs granted AT&T a 10-day extension to respond to the subpoena, or until February 25, 2008, in

---

[42] *Id.* ¶ 2.

[43] *Id.* ¶ 3.

[44] *Id.* ¶ 4.

[45] *Id.* ¶ 5-8.

[46] *See* Mitra 1/24 Decl. Ex. K.

[47] *See* Declaration of Steve Mitra in Support of Plaintiffs Opposition to John Doe 21's Motion to Quash Plaintiffs' Subpoena, ("Mitra Decl."), filed herewith, ¶ 2, Ex. 1.

[48] *See id.* ¶ 3, Ex. 2.

Oral argument requested
pursuant to Local Rule 7(a).

order to allow AT&T to provide notice of the subpoena to the customer(s) whose records were responsive to the subpoena's request for production.[49]

On February 7, 2008, AT&T sent a letter to Doe 21, stating that it had received a subpoena ordering it to produce certain information relating to Doe 21's internet account.[50] That letter—which Doe 21 attached in redacted form as Exhibit 1 to his Motion to Quash—further stated:

> The enclosed or attached document means that the attorney for Doe I and Doe II has served a subpoena on AT&T Internet Services requiring production. Unless a motion to quash, motion for a protective order, or other motion is filed in accordance with applicable law, AT&T Internet Services will be required by law to disclose the required information. If you choose to file such a motion, you must file it before the date of production (which had been extended to **February 25, 2008**—please note that this extension date was mutually agreed upon by both AT&T Internet Services and the attorney for Doe I and Doe II) and serve a copy of it upon both AT&T . . . and the attorney for Doe I and Doe II. AT&T Internet Services *must receive a copy of any such motion or objection at the address and fax number above prior to the extended response date of **February 25, 2008***.[51]

(Emphasis in original.) The Court's docket reveals that Doe 21 filed a motion to quash on February 25, 2008, *after* AT&T's deadline. Thus, on February 26, 2008, AT&T complied with the subpoena.[52]

**J.      John Doe 21 *a.ka.* "AK47" contacts Plaintiffs' counsel and threatens to create a new public forum that could be used to further harass and defame DOE II.**

On the afternoon of February 25, 2008, Plaintiffs' counsel received by U.S. mail a letter signed by "John Doe 21, a.k.a. 'AK47'" and a Motion to Quash signed by "John Doe 21."[53] In the letter, John Doe 21, a.k.a. "AK47" admitted to posting the statement "Women named Jill and [Doe II] should be raped" on AutoAdmit using the moniker

---

[49] *Id.* ¶ 4, Ex. 3.

[50] *See* John Doe 21's Motion to Quash Plaintiffs' Subpoena, Ex. 1.

[51] *Id.*

[52] Mitra Decl. ¶ 5, Ex. 4.

[53] *See id.* ¶ 5.

Oral argument requested
pursuant to Local Rule 7(a).

"AK47."[54]  AK47 further threatened that, if his identity were disclosed, he would create a

new public forum to further harass and defame plaintiffs:

> I am currently in the process of creating a website that I will use to track the litigation, step by step, until its resolution.  The website will detail all the allegations and allegedly harmful comments in the case, and will feature the actual names of [DOE II] and [DOE I] as well as information pertaining to why they are suing me, and so on. . . .  I will ask for comments on whether such allegedly harmful comments are true or have any merit.  The website will be publicly viewable, obviously, and in order to reach a maximally large audience, I will send a link to Yale students as well as other university students.  A link to the site will also be posted on AutoAdmit.com. . . .  [M]y purpose here is not to hurt [DOE II] or [DOE I]; my purpose is to defend myself.  *However, I think it safe to say that some of the information would be harmful to [DOE II] and [DOE I].*[55]

(Emphasis added.)  John Doe 21, a.k.a. "AK47" claimed that he would not take the above-

described actions if he were dropped from the lawsuit.[56]  AK47 concluded the letter by urging

Plaintiffs' counsel to email him at an anonymous email address to discuss his letter and motion

to quash.[57]  On February 26, 2008, Plaintiffs' counsel emailed John Doe 21, a.k.a. "AK47,"

inviting him to telephone them to discuss his letter and motion.[58]  AK47 never did so.[59]

## III.    ARGUMENT

### A.    Doe 21's motion is moot because AT&T complied with the subpoena after Doe 21 failed to timely file an objection.

The Court need not address any of the issues raised in John Doe 21's motion to quash

because the motion is moot:  AT&T, quite properly, has already complied with the subpoena.

*See, e.g., Crooker v. United States State Dept.*, 628 F.2d 9, 10 (D.C. Cir. 1980) ("Once the

records are produced [in a FOIA case] the substance of the controversy disappears and becomes

moot since the disclosure which the suit seeks has already been made.").

---

[54] *Id.* Ex. 4 at 2.

[55] *Id.* at 2-4.

[56] *Id.* at 6.

[57] *Id.*

[58] *Id.* Ex. 5.

[59] *Id.* ¶ 6.

Oral argument requested
pursuant to Local Rule 7(a).

412372.03

AT&T properly complied with Plaintiffs' subpoena only after it had (1) notified Doe 21 that the subpoena had been served; and (2) told Doe 21—on February 7, 2008—that it would comply with the subpoena on February 25, 2008 unless he filed a motion to quash, motion for protective order or other proper motion *before* that day. Doe 21, however, waited until February 25 to file a motion to quash, missing AT&T's deadline. Thus, on February 26, 2008, AT&T complied with the subpoena, just as it had told Doe 21 it would do. Doe 21's motion, therefore, is moot.

**B.     Even if Doe 21's motion is not moot, it fails on the merits because AK47's identity is not protected from disclosure by the First Amendment.**

Contrary to Doe 21's all-encompassing view of the First Amendment, the constitutional right to speak anonymously is far from absolute.[60] In certain circumstances where parties have sought discovery regarding the identity of anonymous posters on the Internet, courts have balanced plaintiffs' rights to conduct discovery against the First Amendment right to "anonymous speech" and have adopted varying standards for uncovering anonymous posters. In his motion, Doe 21 does not argue for the application of any one standard. Instead, Doe 21 haphazardly discusses several different standards, some of which do not apply in this case. Doe 21 also omits standards that do apply. But the discussion of standards, while interesting, is also in the end unimportant—Plaintiff DOE II meets all of the applicable standards for disclosing AK47's identity.

For example, in *Sony Music Entertainment v. Does 1-40*, 326 F. Supp. 2d 556 (S.D.N.Y. 2004)—a case which Doe 21 ignores—the Southern District of New York held that disclosure of Doe defendants' identities was warranted where (1) plaintiff made a concrete showing of a *prima facie* claim of actionable harm; (2) plaintiff's discovery request was specific; (3) there were no

---

[60] *See Buckley v. Am. Constitutional Law Found.*, 525 U.S. 182, 200 (1999) (recognizing that the First Amendment protects the right to speak anonymously).

Oral argument requested
pursuant to Local Rule 7(a).

alternative means to obtain the subpoenaed information; (4) there was a central need for the subpoenaed information to advance plaintiff's claim; and (5) defendant had a minimal expectation of privacy.[61]  The court found that each factor supported disclosing the Doe defendants' identities where the plaintiff sought subscriber information from an internet service provider in order to pursue copyright infringement claims against the Does.[62]

In articulating the applicable standards for disclosing the identity of Doe defendants, the court in *Sony Music* relied in part on a test functionally similar to that put forth in *Dendrite Intern, Inc. v. Doe No. 3*, 342 N.J. Super. 134, 141 (App. Div. 2001).  In *Dendrite*, the New Jersey superior held that a defamation plaintiff seeking the identities of anonymous Internet posters must (1) demonstrate that he or she has undertaken efforts to notify the posters that they are subject to an application for an order of disclosure; (2) identify to the court the statements made by the posters; and (3) establish a *prima facie* cause of action for defamation by producing evidence sufficient to support each element of the claim.[63]

This *prima facie* test was later applied by the California Court of Appeal in *Krinsky v. Doe 6*, H030767 (Cal. Ct. App. Feb. 6, 2008).  In that case, the court held that the identity of an anonymous Internet poster was properly disclosed where a plaintiff, among other things, made a *prima facie* showing of a valid claim against the poster.

The other cases that Doe 21 cites either articulate lower standards than the *prima facie* test articulated in *Sony Music*, *Dendrite*, and *Krinsky*, or they do not apply in this case.  For

---

[61] *Id.* at 564-67.

[62] *Id.* at 567.

[63] In *Dendrite*, the court ultimately declined to order disclosure of a Doe defendant's identity because the plaintiff failed to "demonstrate the statements posted by . . . [the Doe] caused it any harm."  42 N.J. Super. at 158.  In particular, the plaintiff alleged conclusorily—without offering any evidence—that the Doe defendant's postings "*may* . . .  have a significant deleterious effect on [plaintiff's] ability to hire and keep employees."  *Id.*  (emphasis in original).  By contrast, as discussed in section II.C, Plaintiff DOE II has presented ample evidence to show that AK47's statements inflicted actionable harm.

example, in *Columbia Ins. v. SeesCandy.com*, 185 F.R.D. 573 (N.D. Cal. 1999), the court held that the identity of an anonymous Internet poster may be disclosed where the plaintiff proved that her allegations against the poster could withstand a motion to dismiss.  This pleadings-based standard was later replicated in *In re Subpoena Duces Tecum to America Online*, Inc., 2000 WL 1210372 (Va. Cir. Ct. Jan. 31, 2000).  There, the court held that "a court should only order a non-party, Internet service provider to provide information concerning the identity of a subscriber (1) when the court is satisfied by the pleadings or evidence supplied to that court (2) that the party requesting the subpoena has a legitimate, good faith basis to contend that it may be the victim of conduct actionable in the jurisdiction where suit was filed . . . ."[64]  Building on this pleadings-based test, the court in *La Societe Metro Cash & Carry France v. Time Warner Cable*, 2003 WL 22962857, *7 (Conn. Super. 2003),[65] held that disclosing the identity of a Doe defendant was warranted where the plaintiff introduced evidence sufficient to establish probable cause for a claim against the Doe.  The holdings in *SeesCandy.com*, *America Online*, and *La Societe Metro* make plain that a plaintiff who establishes a *prima facie* case of actionable harm against a Doe defendant exceeds the showing required for disclosing that Doe's identity under the tests set forth in those cases.  Thus, as discussed below, because Plaintiff DOE II can sustain a *prima facie* case for her claims against AK47, she exceeds the showing required for disclosing AK47's identity under the tests articulated in *SeesCandy.com*, *America Online*, and *La Societe Metro*.[66]

---

[64] 2000 WL 1210372, *8.

[65] Not designated for publication.

[66] Doe 21's reliance on *Doe v. Cahill*, 884 A.2d 451 (Del. 2005) and *Doe v. 2The Mart.com*, Inc., 140 F. Supp.2d 1088 (W.D. Wash. 2001) is misplaced.  *Cahill* involved a defamation action by a public figure and political criticism made by anonymous posters on an Internet blog.  Here, Plaintiffs are Yale Law School students, not public figures, and AK47's incitement to rape DOE II is not political criticism.  In *Doe v. 2theMart*, the court set forth a "standard for evaluating a civil subpoena that seeks the identity of an anonymous Internet user who is *not a party to the underlying litigation*."  140 F. Supp.2d at 1095 (emphasis added).  By contrast, Plaintiffs' subpoena seeks the identity of Doe 21 a.k.a. "AK47", a defendant in this case.  Accordingly, the tests set forth by *Cahill* and *2theMart* do not apply here.  But even if those tests did apply, as discussed in sections II.C and D, Plaintiff DOE II would meet them.

**C.    Plaintiff DOE II has sufficient evidence to sustain a *prima facie* case for each of her claims against AK47 and, accordingly, discovery of his identity is warranted.**

Plaintiff DOE II has sufficient evidence to sustain a *prima face* case against Doe 21 for four causes of action:  (1) libel; (2)  invasion of privacy; (3) intentional infliction of emotional distress; and (4)  negligent infliction of emotional distress.  Accordingly, the Court should order disclosure of AK47's identity.

**1.    DOE II has established a *prima facie* case of libel.**

Libel is written defamation.[67]  A defamatory statement is "that which tends to injure reputation in the popular sense; to diminish the esteem, respect, goodwill or confidence in which the plaintiff is held, or to excite adverse, derogatory, or unpleasant feelings or opinions against."[68]  For liability to attach, the Court must find that a defendant "published false statements that harmed the plaintiff, and that the defendants were not privileged to do so."[69]

Doe 21's statement that AK47 and DOE II were "gay lovers" is a false statement that harmed DOE II's reputation and caused her emotional distress.[70]  As discussed above, because AK47 was well-known on AutoAdmit for frequently posting offensive, threatening and derogatory comments about minority groups, a statement suggesting a sexual liaison between DOE II and AK47 was harmful to DOE II's reputation.[71]  Moreover, because this statement— along with the hundreds of other threatening and offensive statements that were posted about DOE II on AutoAdmit—was easily located on the Internet by performing a Google search for DOE II's name, it was easily viewable by her peers, colleagues and potential employers.[72]

---

[67] *Charles Parker Co. v. Silver City Crystal Co.*, 142 Conn. 605, 611 (1955).

[68] *DeVito v. Schwartz*, 66 Conn. App. 228, 234 (2001).

[69] *Torosyan v. Boehringer Ingelheim Pharmaceuticals*, 234 Conn. 1, 27 (1995) (citation omitted).

[70] *See* DOE II Decl. ¶¶ 4-6, 8.

[71] *See id.*

[72] *See id.*

Oral argument requested
pursuant to Local Rule 7(a).

412372.03

Indeed, during the fall 2007 interview season at Yale Law School, DOE II feared that potential employers would read disparaging comments about her on AutoAdmit, including the messages posted by AK47 that she "should be raped" and that she was AK47's "gay lover."[73]  In three interviews, she found it necessary to disclose the fact that she had been targeted by pseudonymous posters online, and she only received a call-back for further interviews from one of those firms.[74]  Furthermore, this statement—which was piled on top of many other defamatory statements—has contributed to causing DOE II emotional distress, including depression and anxiety, which has negatively affected her relationships with her family, friends, and classmates.[75]  Finally, AK47's statement is not privileged because he has neither pleaded privilege as an affirmative defense nor alleged that he was acting "in the bona fide discharge of a public or private duty."[76]  Accordingly, DOE II has established a *prima facie* case of libel and has proved—based on the evidence in her control—that there in a genuine issue of material fact for all elements of this claim.

### 2.    Plaintiff DOE II has established a *prima facie* case of Invasion of Privacy.

The Restatement provides that "[o]ne who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."[77]

---

[73] *Id.* ¶ 8.

[74] *Id.*

[75]  *See* DOE II Decl. ¶¶ 2-7.

[76] *Flanagan v. McLane*, 87 Conn. 220, 221-22 (1913); *Monczport v. Csongradi*, 102 Conn. 448, 450-51 (1925).

[77] Rest. (2d) Torts § 652E.  *See also Goodrich v. Waterbury Republican-American, Inc.*, 188 Conn. 107, 131-133 (1982).

Oral argument requested
pursuant to Local Rule 7(a).

412372.03

By publicizing false and vulgar information about DOE II, AK47 has placed DOE II in a false light that would be highly offensive to a reasonable person. As discussed above and in the following section, AK47 (1) publicized false and vulgar information that AK47 and DOE II were "gay lovers," and (2) created this publicity with knowledge of or reckless disregard for the falsity of the matters publicized. Accordingly, DOE II has established a *prima facie* case of invasion of privacy and has proved—based on the evidence in her control—that there in a genuine issue of material fact for all elements of this claim.

### 3. DOE II has established a *prima facie* case of Intentional Infliction of Emotional Distress.

To prevail on a claim for intentional infliction of emotional distress, a plaintiff must show that (1) the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was extreme and outrageous; (3) the defendant's conduct was the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was severe.[78] "Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous!"[79] "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine."[80]

In this case, AK47's statement that "[DOE II] should be raped" was extreme and outrageous. Such "sexually offensive" comments are the type of extreme and outrageous conduct for which the tort of intentional infliction of emotional distress provides redress.[81] Even

---

[78] *See Petyan v. Ellis,* 200 Conn. 243, 253 (1986).

[79] *Angiolillo v. Buckmiller*, 102 Conn. App. 697, 706 (2007).

[80] *Id.*

[81] *See, e.g.*, *Leone v. New England Commc'ns*, 32 Conn. L. Rptr. 72 (2002) (finding that defendant's conduct in placing "sexually offensive comments and pictures on his computer" and making sexual comments was extreme and outrageous).

Oral argument requested
pursuant to Local Rule 7(a).

412372.03

if this statement could be construed as a suggestion or opinion, as Doe 21 argues in his motion, a statement that a young, innocent woman "should be raped" is sufficiently "extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."[82]  This statement was posted on an Internet message board frequented by DOE II's peers and publicly viewable to her family, friends and colleagues.  In addition, at the time AK47's comment appeared on AutoAdmit in June 2007, DOE II had already endured months of threats, harassment and sexually-explicit taunting on the same message board.  Furthermore, the harassment and defamation had already made its way to DOE II's home, school and former employer.[83]  By that time, AutoAdmit users knew DOE II's full name, her email address, and where she went to school.  Photos of her had been posted on the site; posters frequently talked about wanting to rape her; and others encouraged people to stalk her.[84]  And even worse, *all* of these messages could be easily found on the Internet by doing a basic Google search for DOE II's name.

Furthermore, it is absurd to suggest—as Doe 21 does in his motion—that it was unclear who AK47 was talking about when he stated that "[DOE II] should be raped."  Doe 21 claims that because DOE II had an "exceedingly common first name," a statement that "[DOE II] should be raped" is not actionable.  But Doe 21 ignores the unique context in which this statement was made.  As discussed above, Doe 21 made this statement on AutoAdmit after *hundreds* of threatening and offensive messages had already been posted about DOE II on the same website, and after she had filed her complaint—a complaint that was much discussed on AutoAdmit.  Indeed, the only woman with DOE II's first name who was regularly discussed on the site was DOE II.  Tellingly, on one occasion where AK47 misspelled DOE II's first name in

---

[82] *Angiolillo*, 102 Conn. App. at 706.

[83] DOE II 1/24 Decl. Exs. 35 and 37.

[84] *See, e.g.*, *id.* Exs. 1, 4, 18.

Oral argument requested
pursuant to Local Rule 7(a).

a message, another AutoAdmit user responded to his message to correct his error.[85] Thus, it was or should have been apparent to anyone reading AK47's message that he was referring to DOE II.[86]

Moreover, AK47 posted the statement "[DOE II] should be raped" on AutoAdmit one week after Plaintiffs filed their complaint in this case, in which they described in detail the numerous threats and sexually-explicit comments that had been posted about DOE II on AutoAdmit and the extreme emotional distress that she suffered as a result.[87] And, as mentioned above, Plaintiffs' complaint was well publicized on AutoAdmit. Thus, AK47 knew or should have known that his statement that "[DOE II] should be raped" would cause her further emotional distress.[88] Indeed, as Doe 21 concedes in his Motion to Proceed Anonymously, the effects of being the victim of negative comments on AutoAdmit may be "particularly severe."[89]

Finally, as a result of AK47's statement, which came after DOE II had already endured months of harassment on AutoAdmit, DOE II suffered severe emotional distress, including insomnia, anxiety and depression, for which she continues to take medication.[90] In particular, because DOE II knew that AK47 was a notorious poster on AutoAdmit who often posted

---

[85] *See* DOE II Decl. Ex. M (message posted by norporth).

[86] In addition, contrary to Doe 21's assertion, his statement that "[DOE II] should be raped" is not the type of therapeutic, non-actionable "description of violence" made by police officers and counselors. Unlike police officers and counselors who make statements intended to help victims, AK47 posted his message intending to harm DOE II, or with reckless disregard for the probability that his message—piled atop a heap of other threatening and sexually-explicit comments—would harm DOE II.

[87] *See* Complaint, filed June 8, 2007, ¶¶ 40-61.

[88] In addition, Doe 21's February 25 letter to DOE II's counsel suggests that Doe 21 intends to cause DOE II further emotional distress. *See generally* Mitra Decl. Ex. 4.

[89] *See* Docket No. 28, filed on March 31, 2008, ¶¶ 3-6. Doe 21 requests to proceed anonymously because he fears that if his identity is disclosed in this case, "his name and identity would be subject to much more pronounced attacks on AutoAdmit and elsewhere." ¶ 3. Thus, by his own logic, his harmful statements that "[DOE II] should be raped" and that AK47 and DOE II are "gay lovers" are likely to subject DOE II to further harassment and harm on AutoAdmit and elsewhere.

[90] DOE II Decl. ¶¶ 2-10.

Oral argument requested
pursuant to Local Rule 7(a).

sexually-explicit and racially-hostile messages, the fact that someone like AK47 suggested that DOE II should be raped terrified her.[91]  As a result of the threats and harassment that DOE II experienced—including that inflicted on her by AK47—it became increasingly difficult for DOE II to sleep at night, and she often stayed with friends or had friends escort her home because she did not feel comfortable being alone in her apartment.[92]  Accordingly, DOE II has established a *prima facie* case of intentional infliction of emotional distress, and has proved—based on the evidence in her control—that there is a genuine issue of material fact for all elements of this claim.

### 4.    DOE II has established a *prima facie* case of Negligent Infliction of Emotional Distress.

Unlike a claim for intentional infliction of emotional distress, in order to state a claim for negligent infliction of emotional distress, a plaintiff need not allege extreme and outrageous conduct on the part of the defendant.  Rather, "[a] claim based on the negligent infliction of emotional distress requires only that the actor's conduct be unreasonable and create an unreasonable risk of foreseeable emotional harm."[93]  Thus, in order to prevail on a claim of negligent infliction of emotional distress, the plaintiff must prove that (1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress."[94]

---

[91] *Id.* ¶ 2.

[92] *Id.*

[93] *Olson v. Bristol-Burlington Health District*, 87 Conn. App. 1, 7, *cert. granted*, 273 Conn. 914 (2005) (appeal withdrawn, May 25, 2005).

[94] *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 446-47 (2003).

Oral argument requested pursuant to Local Rule 7(a).

412372.03

As discussed above, AK47's conduct in the form of a statement that "[DOE II] should be raped" created an unreasonable and foreseeable risk of causing DOE II emotional distress. In addition, AK47's statement that AK47 and DOE II were "gay lovers"—which was posted on AutoAdmit after DOE II had already endured months of harassment on the website—created an unreasonable and foreseeable risk of causing DOE II emotional distress. In particular, AK47 should have known that these statements, piled on top of hundreds of other harmful statements, would cause DOE II emotional distress. Finally, these statements contributed to causing DOE II anxiety, depression and insomnia.[95] Thus, DOE II has established a *prima facie* case of negligent infliction of emotional distress, and has proved—based on the evidence in her control—that there in a genuine issue of material fact for all elements of this claim.

**D.    DOE II satisfies the remaining applicable evidentiary requirements for disclosing AK47's identity.**

In addition to making a *prima facie* showing of actionable harm for each of her claims against Doe 21, DOE II satisfies the remaining evidentiary requirements articulated by *Sony Music* and other courts for permitting disclosure of AK47's identity.

*First*, as discussed in Plaintiffs' Motion for Expedited Discovery, DOE II has demonstrated that she has undertaken efforts to notify AK47 that he is subject to an application for an order of disclosure.[96] In particular, in November 2007, Plaintiffs, through their counsel, posted two separate notices (which included counsel's contact information) on AutoAdmit.com requesting that defendants come forward for the purpose of being served with the complaint and conducting a meet and confer.[97] In addition, on January 25, 2008, Plaintiffs' counsel posted a

[95] *See* DOE II Decl. ¶¶ 2-4.

[96] *See* Plaintiffs' Motion for Expedited Discovery, filed on January 24, 2008 (Docket No. 21) at 11-12; *see also Dendrite*, 342 N.J. Super. 141 (describing evidentiary requirements for disclosing Doe defendants' identities).

[97] Mitra 1/24 Decl. ¶ 15, Ex. I.

Oral argument requested
pursuant to Local Rule 7(a).

notice (including counsel's contact information) on AutoAdmit, stating that Plaintiffs were seeking expedited discovery that would lead to the identification of the defendants in this case.[98]

*Second*, contrary to Doe 21's claim that Plaintiffs seek his identity solely to intimidate and harass him, Plaintiffs issued their subpoena in good faith and for a proper purpose: to unmask the anonymous tortfeasors in this case, serve them with process, conduct a Rule 26 meet and confer, and proceed with litigating Plaintiffs' valid claims.[99]

*Third,* Plaintiffs' subpoena to AT&T is specific, limited in scope and directly related to Plaintiffs' causes of action because it seeks the name, address, telephone number, and email address of the person believed to have posted defamatory and otherwise tortious content about DOE II on AutoAdmit, and nothing more.[100] Indeed, in complying with the subpoena, AT&T disclosed precisely that: the subscriber's full name, billing address, service address, telephone number, and email address.[101]

*Fourth*, there are no other adequate means of obtaining the information called for in the subpoena because AT&T's subscriber data is Plaintiffs' only lead at present regarding the identity of AK47. *Fifth*, Doe 21's identity is centrally needed in order for DOE II to advance her claims for libel, invasion of privacy, and negligent and intentional infliction of emotional distress. *Sixth* and finally, Plaintiffs are entitled to the information called for in the subpoena to AT&T in light of AK47's minimal expectation of privacy. AT&T's Internet Services Privacy Policy states that "We may, where permitted or required by law, provide personal identifying information to third parties . . . without your consent: . . . To comply with court orders,

---

[98] Mitra Decl. Ex. 1.

[99] *See La Societe Metro*, 2003 WL 22962857, at *7; *Sony Music*, 326 F. Supp.2d at 565-66.

[100] *See Sony Music*, 326 F. Supp.2d at 565-66.

[101] *See* Mitra Decl. Ex. 6.

Oral argument requested
pursuant to Local Rule 7(a).

subpoenas, or other legal or regulatory requirements."[102]  Accordingly, AK47 has little

expectation of privacy in using AT&T's service to engage in tortious conduct that would subject

him to proper discovery under the federal rules.

### IV.    CONCLUSION

The Court should deny Doe 21's Motion to Quash Plaintiffs' Subpoena.  First, the motion

is moot because the subpoenaed entity, AT&T, has already complied with the subpoena after

Doe 21 failed to file a timely motion to quash.  Second, even if the motion were not moot, it

should be denied on the merits because Plaintiff DOE II meets the evidentiary requirements for

disclosing the identity of an anonymous Internet poster such as AK47.  Accordingly, the Court

should enter an order permitting Plaintiffs to use the information that AT&T disclosed to them

regarding AK47's identity, so that Plaintiffs may subpoena AK47 for documents and deposition

testimony and proceed with this litigation.

Dated: March 17, 2008                      PLAINTIFFS DOE I AND DOE II

By:  _____/s/ Ashok Ramani_____
       Mark Lemley (*pro hac vice*)
       Ashok Ramani (*pro hac vice*)
       KEKER & VAN NEST, LLP
       710 Sansome Street
       San Francisco, CA 94111
       Telephone: (415) 391-5400
       Facsimile:  (415) 397-7188
       Email:    MLemley@kvn.com
                     ARamani@kvn.com

       David N. Rosen
       David Rosen & Associates PC
       400 Orange Street
       New Haven, CT 06511
       Telephone: (203) 787-3513
       Facsimile: (203) 789-1605
       Email:    DRosen@davidrosenlaw.com

---

[102] *See* http://www.att.com/gen/privacy-policy?pid=7666#3.

Oral argument requested
pursuant to Local Rule 7(a).

412372.03

## CERTIFICATION OF SERVICE

The addresses of all the defendants are unknown. This is to certify that a copy of this motion has been sent to the following on March 17, 2008, to:

by regular **UNITED STATES MAIL**

| | |
|---|---|
| Marc Randazza, Esq.<br>Weston, Garrou, DeWitt & Walters<br>781 Douglas Ave.<br>Altamonte Springs, FL 32714 | *Attorney for Anthony Ciolli* |
| Leighton Cohen, Esq.<br>465 West Linden Street<br>Allentown, PA 18102 | *Attorney for Jarret Cohen* |

by **HAND DELIVERY**

| | |
|---|---|
| AT&T Subscriber [Redacted] | *Believed to be Defendant AK47* |

_____*/s/ Ashok Ramani*_____

1