UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DOE I, and DOE II, : | |
|       Plaintiffs, : | |
| : | Civil Action No. 3:07 CV 909 (CFD) |
| v. : | |
| : | |
| Individuals, whose true names are unknown,: | |
|       Defendants. : | |

## RULING ON DEFENDANT JOHN DOE 21's MOTION TO QUASH PLAINTIFF'S SUBPOENA AND JOHN DOE 21'S MOTION TO PROCEED ANONYMOUSLY

On February 1, 2008, the plaintiffs, Jane Doe I and Jane Doe II (the "Does") issued a subpoena *duces tecum* to SBC Internet Services, Inc., now known as AT&T Internet Services ("AT&T"), the internet service provider, for information relating to the identity of the person assigned to the Internet Protocol ("IP") address from which an individual using the pseudonym "AK47" posted comments on a website. The individual whose internet account is associated with the IP address at issue, referring to himself as John Doe 21,[1] has moved to quash that subpoena. John Doe 21 has also moved for permission to proceed anonymously in this matter.

### I.     Background[2]

This action was brought by Doe I and Doe II, both female students at Yale Law School, against unknown individuals using thirty-nine different pseudonymous names to post on a law

---

[1] Because John Doe 21 chose a male pseudonymous name to proceed under, the Court will refer to John Doe 21 using male pronouns. This does not reflect a finding by the Court that John Doe 21 is indeed male.

[2] The following facts are taken from the complaint and the exhibits submitted by the parties.

-1-

school admissions website named AutoAdmit.com ("AutoAdmit"). The plaintiffs allege that they were the targets of defamatory, threatening, and harassing statements posted on AutoAdmit from 2005 to 2007.

AutoAdmit is an internet discussion board on which participants post and review comments and information about undergraduate colleges, graduate schools, and law schools. It draws between 800,000 and one million visitors per month. Anyone who can access the internet can access AutoAdmit and view the messages posted on its discussion boards. Individuals who register with AutoAdmit, which can be done under real or assumed names, may post new messages and respond to the messages of other registered users. When a participant posts a new message, any further comments or responses to that message are collected as a "thread." Messages and threads containing certain words or subject matter can be found by searching for those words using an internet search engine.

The first message about Doe II that appeared on AutoAdmit was posted on January 31, 2007, by an anonymous poster. The message linked to a photograph of Doe II and encouraged others to "Rate this HUGE breasted cheerful big tit girl from YLS." After this message was posted, dozens of additional messages about Doe II appeared in the thread. These messages contained comments on Doe II's breasts and the posters' desire to engage in sexual relations with her. Certain of the posters appeared to be Doe II's classmates at Yale Law School because of personal information they revealed. The posts regarding Doe II continued throughout the winter and spring of 2007, and included statements, for example, that she fantasized about being raped by her father, that she enjoyed having sex while family members watched, that she encouraged others to punch her in the stomach while seven months pregnant, that she had a sexually

transmitted disease, that she had abused heroin, and that a poster "hope[s] she gets raped and dies." On March 9, 2007, a poster sent an email directly to Doe II and at least one member of the Yale Law School faculty describing the alleged criminal history of Doe II's father. This message was also posted on AutoAdmit.

By March, nearly two hundred threads had been posted about Doe II on AutoAdmit. It is in this context that an anonymous poster under the moniker "AK47," known on AutoAdmit for posting threatening and derogatory comments about minority groups, posted a message falsely stating "Alex Atkind, Stephen Reynolds, [Doe II], and me: GAY LOVERS."

The posting of comments regarding Doe II continued into April and May of 2007, including one message which the poster claimed had also been sent to Doe II's future employer which recounted some of the claims made about Doe II on AutoAdmit. On June 8, 2007, Doe II, along with Doe I, filed the complaint in the instant action, alleging libel, invasion of privacy, negligent and intentional infliction of emotional distress, and copyright violations. Doe II's complaint described the harm and results she experienced because of the comments about her on AutoAdmit, including treatment for severe emotional distress, interference with her educational progress, reputational harm, and pecuniary harm.

The news of the filing of the Does' complaint quickly became a subject of discussion on AutoAdmit. AK47, for example, wrote a post concerning his opinion on the merits of the plaintiffs' case, and wondered whether posters were "allowed to use [Doe II's] name in thread's anymore." Subsequently, on June 17, 2007, AK47 posted the statement "Women named Jill and Doe II should be raped." On June 24, 2007, AK47 started a thread entitled "Inflicting emotional distress on cheerful girls named [Doe II]."

On February 1, 2008, the plaintiffs issued a subpoena *duces tecum* to AT&T for information relating to the identity of the person assigned to the IP address from which an individual using the pseudonym "AK47" posted comments on AutoAdmit about Doe II. This subpoena was issued in accordance with this Court's order of January 29, 2008, which granted the Does' motion to engage in limited, expedited discovery to uncover the identities of the defendants in this case.[3] On February 7, 2008, AT&T sent a letter to the person whose internet account corresponded with the IP address at issue, John Doe 21 ("Doe 21"), notifying Doe 21 that it had received a subpoena ordering it to produce certain information relating to Doe 21's internet account. The letter stated that Doe 21 could file a motion to quash or for a protective order before the date of production, which was February 25, 2008, and that AT&T must receive a copy of such a motion prior to that date. Doe 21 filed the instant motion to quash on February 25, 2008, and on February 26, 2008, A&T complied with the subpoena.[4] On March 12, 2008, Doe 21 filed his motion to proceed anonymously.

Because Doe 21 does not have counsel and his true identity is yet unknown to the Court, the Court appointed pro bono counsel to represent the interests of Doe 21 at oral argument on the

---

[3]Notice of the application for the subpoena was posted on AutoAdmit on January 25, 2008.

[4]On February 25, 2008, the plaintiffs' counsel received a letter and a motion to quash signed by "John Doe 21, a.k.a. 'AK47.'" In the letter, Doe 21 admitted to posting the statement "Women named Jill and [Doe II] should be raped." Doe 21 also threatened to create a website on which he would track the pending litigation, detail the allegations, feature the actual names of the plaintiffs, and also solicit comments on whether the alleged comments on AutoAdmit were true. He also stated he would send links to this website to Yale and other university students, as well as posting a link on AutoAdmit. The ostensible purpose of such a website was to formulate his defense to this action, although he also admitted it would likely be harmful to the plaintiffs. Doe 21's letter stated he would not take such actions if he were dropped from the lawsuit.

instant motions, which took place on May 5, 2008.

## II.     Motion to Quash

### A.     Threshold Issues

#### 1.     Subject Matter Jurisdiction

The basis for the plaintiffs' copyright claim, which is the only federal claim in the plaintiffs' complaint, is that one of the plaintiffs owns copyrights in her photographs, which are registered with the United States Copyright Office, and that these photographs were published without her permission on AutoAdmit.[5]

Pro bono counsel for Doe 21 suggested at oral argument and in supplemental papers that the Court lacks subject matter jurisdiction over the claims because the jurisdictional basis for a copyright claim is weak and "manufactured" for the purposes of this litigation. However, this Court has original jurisdiction over "all civil actions arising under the. . .laws. . . of the United States;" 28 U.S.C. § 1331; and may exercise supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).  Thus, since the Court properly has jurisdiction over the copyright claim, which arises from the same case or controversy as the various state law tort and statutory claims, the Court also has subject matter jurisdiction as these state law claims, which arise from a "common nucleus of operative fact"- namely, the alleged harassment of Doe I and Doe II on

---

[5]In its complaint, the copyright claim is said to be by Doe I, but the plaintiffs' counsel has since indicated this was done in error, and the copyright claim is actually as to Doe II. Although the plaintiffs not yet amended their complaint, and the Court deems the complaint amended with the correct name for purposes of the current motions.

AutoAdmit.com and other web sites.[6]  See Promisel v. First Am. Artificial Flowers, Inc., 943 F.2d 251, 254 (2d Cir. 1991).

        2.      Mootness

Doe II argues that the motion to quash is moot because the information sought has already been turned over to the plaintiffs by AT&T. However, the Court rejects this argument because the plaintiffs can be ordered to return the information and be prohibited from using it. See Sony Music Entertainment Inc. v. Does 1-40, 326 F. Supp. 2d 556, 561 (S.D.N.Y. 2004).

      **B.**      **Merits of the Motion to Quash**

A subpoena shall be quashed if it "requires disclosure of privileged or other protected matter and no exception or waiver applies." Fed. R. Civ. P. 45(c)(3)(A)(iii). Doe 21 moves to quash the subpoena because he claims disclosure of his identity would be a violation of his First Amendment right to engage in anonymous speech.

The First Amendment generally protects anonymous speech. Buckley v. American Constitutional Law Found., 525 U.S. 182, 199-200 (1999) (invalidating statute requiring initiative petitioners to wear identification badges as violation First Amendment); McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 357 (1995) (overturning state statute that prohibited dissemination of campaign literature that did not list name and address of person issuing literature on First Amendment grounds); Talley v. California, 362 U.S. 60, 65 (invalidating statute that prohibited distribution of handbills without the name and address of preparer). The United States Supreme Court has also made clear that the First Amendment's protection extends

---

[6]The merits of the copyright claims have not been briefed, and the Court declines to dismiss the entire case because the federal claim might be "weak." The defendants, if they choose to appear, remain free to address the merits of the federal claims.

to speech on the internet. See Reno v. ACLU, 521 U.S. 844, 870-71 (1997) (applying First Amendment analysis to online speech, noting "[t]hrough the use of chat rooms, any person with a phone line can become a town crier with a voice that resonates farther than it could from any soapbox. Through the use of Web pages, mail exploders and newsgroups, the same individual can become a pamphleteer."). Courts also recognize that anonymity is a particularly important component of Internet speech. "Internet anonymity facilitates the rich, diverse, and far ranging exchange of ideas [;] ... the constitutional rights of Internet users, including the First Amendment right to speak anonymously, must be carefully safeguarded." Doe v. 2 The Mart.com, Inc., 140 F. Supp. 2d 1088, 1092, 1097 (W.D. Wash. 2001). However, the right to speak anonymously, on the internet or otherwise, is not absolute and does not protect speech that otherwise would be unprotected. See, e.g., McIntyre, 514 U.S. at 353 ("We recognize that a State's enforcement interest might justify a more limited identification requirement."); Harper & Row Publishers, Inc. v. Nation Enters., 471 U.S. 59, 555-56 (1985) (First Amendment does not protect copyright infringement); In re Subpoena Duces Tecum to America On-Line, Inc., No. 40570, 2000 WL1210372, at *6 (Va. Cir. Ct. 2000) ("Those who suffer damages as a result of tortious or other actionable communications on the Internet should be able to seek appropriate redress by preventing the wrongdoers from hiding behind an illusory shield of purported First Amendment rights.").

Courts have held that subpoenas seeking information regarding anonymous individuals raise First Amendment concerns; see NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 462 (1958) (holding that discovery order requiring NAACP to disclose its membership list violated First Amendment); and have addressed motions to quash subpoenas that, like the one at issue

here, seek identifying subscriber information from ISPs. See, e.g., Sony Music, 326 F. Supp. 2d at 567 ("[D]efendants' First Amendment right to remain anonymous must give way to plaintiffs' right to use the judicial process to pursue what appear to be meritorious copyright infringement claims").

The forgoing principles and decisions make clear that Doe 21 has a First Amendment right to anonymous Internet speech, but that the right is not absolute and must be weighed against Doe II's need for discovery to redress alleged wrongs. Courts have considered a number of factors in balancing these two competing interests. This balancing analysis ensures that the First Amendment rights of anonymous Internet speakers are not lost unnecessarily, and that plaintiffs do not use discovery to "harass, intimidate or silence critics in the public forum opportunities presented by the Internet." Dendrite Intern. Inc. v. Doe No. 3, 775 A.2d 756, 771 (N.J. Super. 2001). The Court will address each factor in turn.

First, the Court should consider whether the plaintiff has undertaken efforts to notify the anonymous posters that they are the subject of a subpoena and withheld action to afford the fictitiously named defendants a reasonable opportunity to file and serve opposition to the application. See Krinsky v. Doe 6, 159 Cal Rptr. 3d 231 (Cal. App. 2008); Dendrite Intern. Inc. v. Doe No. 3, 775 A.2d 756, 760 (N.J. Super. 2001). In this case, the plaintiffs have satisfied this factor by posting notice regarding the subpoenas on AutoAdmit in January of 2008, which allowed the posters ample time to respond, as evidenced by Doe 21's activity in this action.

Second, the Court should consider whether the plaintiff has identified and set forth the exact statements purportedly made by each anonymous poster that the plaintiff alleges constitutes actionable speech. Dendrite, 775 A.2d at 760. Doe II has identified the allegedly actionable

statements by AK47/Doe 21: the first such statement is "Alex Atkind, Stephen Reynolds, [Doe II], and me: GAY LOVERS;" and the second such statement is ""Women named Jill and Doe II should be raped." The potential liability for at least the first statement is more fully discussed below.

The Court should also consider the specificity of the discovery request and whether there is an alternative means of obtaining the information called for in the subpoena. Sony Music, 326 F. Supp at 565; Columbia Inc. v. SeesCandy.com, 185 F.R.D. 573, 578, 580 (N.D. Cal. 1999). Here, the subpoena sought, and AT&T provided, only the name, address, telephone number, and email address of the person believed to have posted defamatory or otherwise tortious content about Doe II on AutoAdmit, and is thus sufficiently specific. Furthermore, there are no other adequate means of obtaining the information because AT&T's subscriber data is the plaintiffs' only source regarding the identity of AK47.

Similarly, the Court should consider whether there is a central need for the subpoenaed information to advance the plaintiffs' claims. America Online, Inc., 2000 WL 1210372 at *7; Dendrite, 775 A.2d at 760-61. Here, clearly the defendant's identity is central to Doe II's pursuit of her claims against him.

Next, the Court should consider the subpoenaed party's expectation of privacy at the time the online material was posted. Sony Music, 326 F. Supp. 2d at 566-67; Verizon Internet Services, 257 F. Supp. 2d 244, 267-68 (D.D.C. 2003), rev'd on other grounds, 351 F.3d 1229 (D.C. Cir. 2003). Doe 21's expectation of privacy here was minimal because AT&T's Internet Services Privacy Policy states, in pertinent part: "We may, where permitted or required by law, provide personal identifying information to third parties. . . without your consent. . . To comply

with court orders, subpoenas, or other legal or regulatory requirements." Thus, Doe 21 has little expectation of privacy in using AT&T's service to engage in tortious conduct that would subject him to discovery under the federal rules.

Finally, and most importantly, the Court must consider whether the plaintiffs have made an adequate showing as to their claims against the anonymous defendant. Courts have differed on what constitutes such an adequate showing. Several courts have employed standards fairly deferential to the plaintiff, requiring that the plaintiff show a "good faith basis" to contend it may be the victim of conduct actionable in the jurisdiction where the suit was filed; America Online, 2000 WL 1213072, at *8; or to show that there is probable cause for a claim against the anonymous defendant; La Societe Metro Cash & Carry France v. Time Warner Cable, No. 030197400, 2003 WL 22962857, *7 (Conn. Super. 2003). The Court finds these standards set the threshold for disclosure too low to adequately protect the First Amendment rights of anonymous defendants, and thus declines to follow these approaches.

Other courts have required that a plaintiff show its claims can withstand a motion to dismiss. SeesCandy.com, 185 F.R.D. at 579; Lassa v. Rongstad, 718 N.W. 2d 673, 687 (Wis. 2006). However, other courts have rejected this procedural label as potentially confusing because of the variations in the motion to dismiss standard in different jurisdictions. See Krinsky, 72 Cal Rptr. at 244. Similarly, but more burdensome, some courts have used a standard which required plaintiffs to show their claims could withstand a motion for summary judgment. Best Western Intern., Inc. v. Doe, No. CV-06-1537, 2006 WL 2091695, *4 (D. Ariz. 2006); Doe v. Cahill, 884 A.2d 451, 461 (Del. Supr. 2005). The Court finds this standard to be both potentially confusing and also difficult for a plaintiff to satisfy when she has been unable to

conduct any discovery at this juncture. Indeed, it would be impossible to meet this standard for any cause of action which required evidence within the control of the defendant.

Several courts have required that a plaintiff make a concrete showing as to each element of a prima facie case against the defendant. Highfields Capital Management L.P. v. Doe, 385 F. Supp. 2d 969, 976 (N.D. Cal. 2005); Sony Music, 326 F. Supp. 2d at 565; Krinksy v. Doe 6, 72 Cal. Rptr. 3d at 245; Dendrite, 775 A.2d at 760-61. Under such a standard, "[w]hen there is a factual and legal basis for believing [actionable speech] has occurred, the writer's message will not be protected by the First Amendment." " Krinsky, 72 Cal Rptr. at 245. The Court finds such a standard strikes the most appropriate balance between the First Amendment rights of the defendant and the interest in the plaintiffs of pursuing their claims, ensuring that the plaintiff "is not merely seeking to harass or embarrass the speaker or stifle legitimate criticism." Id. at 244.

Doe II has presented evidence constituting a concrete showing as to each element of a prima facie case of libel against Doe 21. Libel is written defamation. To establish a prima facie case of defamation under Connecticut law, the Doe II must demonstrate that: (1) Doe 21 published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement. Cweklinsky v. Mobil Chem. Co., 837 A.2d 759, 763-64 (Conn. 2004), citing QSP, Inc. v. Aetna Casualty & Surety Co., 773 A.2d 906, 916 (Conn. 2001); 3 Restatement (Second), Torts § 558, 580B, at 155, 221-22 (1977); W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 113, at 802.

A defamatory statement is defined as a communication that tends to "harm the reputation of another as to lower him in the reputation of the community or to deter third persons from

associating or dealing with him. . ." QSP, Inc, 773 A.2d at 916 (internal quotation marks omitted). Doe II alleges, and has presented evidence tending to show that, AK47's statement, "Alex Atkind, Stephen Reynolds, [Doe II], and me: GAY LOVERS," is defamatory, because any discussion of Doe II's sexual behavior on the internet tends to lower her reputation in the community, particular in the case of any potential employers who might search for her name online.[7] In fact, in the similar context of slander (spoken defamation), any statement that imputes "serious sexual misconduct" to a person subjects the publisher to liability, without any need to prove the special harms required for other slanderous speech. See 3 Restatement (Second), Torts § 574, at 195-96.

Doe II has also alleged and presented evidence that Doe 21's statement clearly identified Doe II by name and was available to a large number of third persons (peers, colleagues, potential employers), whether they were on Autoadmit for their own purposes, or searched for Doe II via a search engine. Finally, Doe II has alleged and provided evidence that her reputation did suffer injury because of this comment. In her interviews with potential employers in the Fall of 2007, Doe II felt she needed to disclose that existence of this and other such comments on AutoAdmit and explain that she had been targeted by pseudonymous online posters. In addition, this statement has contributed to difficulties in Doe II's relationships with her family, friends, and classmates at Yale Law School.

---

[7] Context is relevant in determining the meaning of a statement. See 3 Restatement (Second), Torts § 563, at 163. Doe 21 suggests that the context in which the statements were made also shows that they were not defamatory, because AutoAdmit is well-known as a place for inane discussion and meaningless derogatory postings, such that one would not take such a statement seriously. However, not everyone who searched for Doe II's name on the internet, or who came across the postings on AutoAdmit, would be aware of the site's alleged reputation. Thus, Doe II has put forth sufficient evidence for a prima facie case of defamation.

Thus, the plaintiff has shown sufficient evidence supporting a prima facie case for libel, and thus the balancing test of the plaintiff's interest in pursuing discovery in this case outweighs the defendant's First Amendment right to speak anonymously.[8] The defendant's motion to quash is denied.

## III.    Defendant's Motion to Proceed Anonymously

Parties to a lawsuit must generally identify themselves. Fed. R. Civ. P. 10(a) (complaint must "include the names of all the parties"). This rule protects the public's legitimate interest in knowing all of the facts involved, including the identities of the parties. K.D. v. City of Norwalk, No. 3:06cv406, 2006 WL 1662905, at *1 (D. Conn. 2006). Thus, "[c]ourts should not permit parties to proceed pseudonymously just to protect the parties' professional or economic life." Doe v. United Services Life Ins. Co., 123 F.R.D. 437, 439 n.1 (S.D.N.Y. 1988). A party may proceed anonymously only after demonstrating "a substantial privacy right which outweighs the customary and constitutionally embedded presumption of openness in judicial proceedings." K.D. v. City of Norwalk, 2006 WL 1662905, at *1 (citing Fed. R. Civ. P. 10(a); Doe v. Stegall, 653 F.2d 180 (5th Cir. 1981)).

Doe 21 has not made a showing of any substantial privacy right or of any potential physical or mental harm as a result of being a named party to this litigation. He argues that other named defendants have been subjected to ridicule on AutoAdmit or lost employment. However, even if Doe 21 could show he was likely to receive the same alleged treatment, which he has not,

---

[8]It is likely that Doe II has also presented a prima facie case for negligent or intentional infliction of emotional distress against Doe 21. However, because, unlike defamation, speech which inflicts emotional distress has not been specifically designated as unprotected by the First Amendment, the Court declines to use these causes of action as a basis for disclosure of Doe 21's identity.

these harms are not the special harms required in order to proceed anonymously, but rather social stigma, embarrassment, and economic harm, none of which are grounds for proceeding anonymously.  See James v. Jacobson, 6. F.3d 233, 238-39 (4th Cir. 1993) (citing cases); Frank, 251 F.2d at 324; Guerrilla Girls Inc. v. Kaz, 224 F.R.D. 571, 573 (S.D.N.Y. 2004).  In addition, Doe 21's argument that he should be allowed to proceed anonymously because the plaintiffs have been allowed to do so is also without merit and irrelevant to the defendant's status.

Thus, the defendant's motion to proceed anonymously is denied.

### IV.     Conclusion

The motion of the defendant, identifying himself as Doe 21, to quash plaintiff's subpoena [Dkt. # 25] is DENIED.  The defendant's motion to proceed anonymously [Dkt. # 28] is DENIED.

SO ORDERED this   13th    day of June 2008, at Hartford, Connecticut.


 /s/ Christopher F. Droney
**CHRISTOPHER F. DRONEY
UNITED STATES DISTRICT JUDGE**