UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DOE I, AND DOE II, | ) |
| | ) |
| Plaintiffs, | ) Case No. 307CV00909 CFD |
| | ) |
| v. | ) |
| | ) |
| MATTHEW C. RYAN, a.k.a. ":D"; and individuals using the following pseudonyms: paulie walnuts; neoprag; STANFORDtroll; lkjhgf; yalelaw; Spanky; ylsdooder; HI; David Carr; Vincimus; Cheese Eating Surrender Monkey; A horse walks into a bar, a.k.a. RYAN MARINER; The Ayatollah of Rock-n-Rollah; DRACULA; Sleazy Z; Whamo; Ari Gold; Ugly Women; playboytroll; Dean_Harold_Koh; kr0nz; reminderdood; r@ygold; who is; Joel schellhammer; Prof. Brian Leiter; hitlerhitlerhitler; lonelyvirgin; Patrick Zeke <patrick8765@hotmail.com; Patrick Bateman <batemanhls08@hotmail.com>; [DOE I] got a 157 LSAT; azn; azn; azn; Dirty Nigger; leaf; t14 gunner; kibitzer; Yalels2009; AK47, | ) ) ) ) ) ) ) ) ) ) ) AUGUST 13, 2008 ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |

### MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(B)(6) OR IN THE ALTERNATIVE MOTION TO DISMISS FOR FAILURE TO PROSECUTE PURSUANT TO RULES 4 AND 41

NOW COMES Defendant, A horse walks into a bar, a.k.a., Ryan Mariner ("Mariner"), and specially appears, without having been properly served and without waiving his right to proper service, and files this Brief in Support of his Motion to Dismiss Plaintiffs' Second Amended Complaint against him.

**I.     INTRODUCTION- PLAINTIFFS' HAVE REFUSED TO PROSECUTE THEIR PURPORTED CLAIMS AGAINST MARINER AND HAVE FAILED TO STATE A CLAIM AGAINST MARINER**

Plaintiffs have filed a large and complicated lawsuit naming dozens of anonymous parties that has spawned litigation in at least three different jurisdictions across the country. This has been done for good reason as there are allegations in the Complaint that are truly heinous. There may be defendants in this case who have defamed and harassed Plaintiffs. Mariner, however, is not one of them. There are also defendants who have gone to great lengths to obfuscate their identity in order to avoid the consequences of their actions. Again, Mariner has made no such attempts. Quite to the contrary, Mariner has made his identity known and has been actively requesting that Plaintiffs serve him since at least June. This is because Mariner has committed no wrong and is eager to clear his name.

As noted above, this case is large and complex and deals with a number of unique legal issues. Nonetheless, there are three things which are clear:

(1) Plaintiffs have failed to state a claim against Mariner;

(2) Plaintiffs have refused to serve Mariner; and

(3) Plaintiffs' only motive as to Mariner seems to be to threaten and harass him by abusing the legal system.

Plaintiffs admit as much in Paragraph 4 of their Second Amended Complaint in which they attempt to explain their "tactics" by claiming that they are doing Mariner some kind of favor by failing to prosecute their claims. Specifically, Plaintiffs state:

> Through the discovery process ordered by the Court in January 2008, Plaintiffs learned the real identities of several additional defendants in this case. Plaintiffs are seeking to resolve their claims against these defendants. Therefore, at this time, Plaintiffs continue to identify these defendants by their AutoAdmit pseudonyms.

Plaintiffs' Second Amended Compl., ¶ 4. In other words, "pay me or I will tell people who you are." Mariner is not concerned with keeping his identity secret, since he has done nothing wrong. On the contrary, Mariner has been trying to proceed with this litigation for months. However, in an attempt to execute a strategy so Byzantine that Kafka himself would be dumbfounded, Plaintiffs' counsel has failed to include any allegations that would support a cause of action, refused Mariner's counsel's offer to accept service and refused to simply dismiss Mariner. It appears Plaintiffs' plan is to keep a lawsuit pending for as long as possible without actually prosecuting it.

Opposing counsel has failed to include any allegations that would support a cause of action against Mariner, refused Mariner's counsel's offer to accept service and refused to dismiss Mariner. Thus, this Court should grant Mariner's Motion to Dismiss pursuant to either Federal Rule of Civil Procedure 12(b)(6) or Federal Rule of Civil Procedure 4(m).

## II. PROCEDURAL AND FACTUAL BACKGROUND

### A. Relevant Procedural Background

Plaintiffs filed this action well over one year ago in June, 2007. *See* Plaintiffs' Complaint [Doc. No. 1]. Since that time, Plaintiffs amended their Complaint twice, each time to alter legal or factual arguments. *See* Plaintiffs' First Amended Compl. [Doc. No. 19], Plaintiffs' Second Amended Compl. [Doc. No. 51]. Additionally, Plaintiffs have moved this Court on several different occasions to allow additional time to serve Defendants, including one on June 18, 2008. *See* Plaintiffs' Motions for Extension of Time to Serve Complaint [Doc. No. 45]. This came as a surprise to Mariner, who, through counsel, specifically contacted Plaintiffs on June 11 and indicated that counsel would accept service on Mariner. *See* Email of W. Anthony Collins, Jr., attached as Exhibit 1. Shockingly, Plaintiffs refused this offer and failed to serve Mariner,

willfully refusing to prosecute their case against him. *See* Affidavit of W. Anthony Collins, Jr., ¶ 3. Then, without disclosing these facts to the Court, Plaintiffs filed yet another Motion for Extension of Time to Serve Complaint. *See* [Doc. No. 49]

Later, counsel for Mariner had a phone conversation with Plaintiffs' counsel and again indicated he would accept service, again this offer was refused. *See* Affidavit of W. Anthony Collins, Jr., ¶ 3-4. Counsel for Mariner also noted that no cause of action arose from the allegations in the First Amended Complaint and that Mariner should be dropped from this case. *See id*., ¶ 3-4. Nonetheless, when Plaintiffs filed their Second Amended Complaint, Mariner was not dropped despite Plaintiffs' failure to come up with a single actionable allegation against Mariner.

**B.     Allegations in the Second Amended Complaint**

At no point does the Second Amended Complaint state any facts which could give rise to a claim against Mariner. It references Mariner only twice, in the form of two statements at issue allegedly from Mariner, occurring at 11:47 and 11:49 on February 21, 2007. Plaintiffs' Second Amended Compl., ¶ 42. First, after a separate poster commented that he would like to engage in a sexual act with Doe II, Mariner indicated that he also would like to do so by "get[ting] in line." Plaintiffs' Second Amended Compl., ¶ 42. Mariner, in the same thread also indicated his desire to have relations with Doe II, with the comment, "I would make a sundae (including (but not limited to) whip cream, chocolate sauce, sprinkles, and a cherry." *Id*.

Plaintiffs' Second Amended Complaint, refers to this as a thread "crudely commenting on the individual women designated, including Doe II," but never alleges how these crude comments give rise to any of their seven causes of action. Plaintiffs' Second Amended Compl.,

¶ 42. No other allegations are made regarding Mariner, and no allegations are made at all by Doe I. *See generally* Plaintiffs' Second Amended Compl.

The Second Amended Complaint lists seven alleged causes of action: Claim I: Copyright Infringement, Claim II: Appropriation of another's name or likeness, Claim III: Unreasonable publicity given to another's life, Claim IV: Publicity that places another in a false light before the public, Claim V: Intentional infliction of emotional distress, Claim VI: Negligent infliction of Emotional Distress, Claim VII: Libel. *See* Plaintiffs' Second Amended Compl., ¶¶ 72-104.

Six of Plaintiffs' claims do not identify any of the defendants by name. Instead, Plaintiffs' only state that "one or more defendants" have engaged in unspecified actions. *See* Plaintiffs' Second Amended Compl., ¶¶ 72-104. Plaintiffs' Claim II – the only claim to actually name a specific defendant – does not name Mariner. *See id.*, ¶¶ 75-79. This is wholly insufficient under any standard to properly notify Mariner of what claims he purportedly faces. Additionally, there is no set of facts alleged that makes a cognizable legal cause of action against Mariner.

### III. ARGUMENT AND CITATION TO AUTHORITY

#### A. Plaintiffs' Claims Should Be Dismissed Pursuant to Fed.R.Civ.P. 12(b)(6)

##### 1. Motion to Dismiss – Standard.

It is clear that Plaintiffs' Second Amended Complaint is ripe for a Motion to Dismiss. A motion to dismiss under Rule 12(b)(6) should be granted where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). The function of a motion to dismiss "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980).

The United States Supreme Court recently held that a motion to dismiss pursuant to Rule 12(b)(6) should be granted if the factual allegations do not "raise a right to relief above a speculative level." *Bell Atl. Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955, 1965 (2007). *See also* [2d Cir. Case citing *Twombly*] (citing same). To avoid dismissal, a claim must allege "enough fact to raise a reasonable expectation that discovery will reveal evidence of the necessary elements." *Twombly*, 127 S. Ct. at 1965. It is well accepted that "a formulaic recitation of the elements of a cause of action will not do." *Id*.

Additionally, even assuming that Plaintiffs' allegations were sufficient, and that all of the statements attributed to Mariner were made, Plaintiffs have still failed to allege that Mariner engaged in any <u>actionable</u> conduct.

### 2. Plaintiffs' Have Failed to Provide Notice of a Specific Claim Against Mariner.

Plaintiffs are required to set forth "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Conley v. Gibson*, 355 U.S. 41, 47 (1957); *see also Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002). After three attempts, Plaintiffs have failed even this most basic requirement with respect to Mr. Mariner. Six claims assert that "one or more defendants" have taken some tortious action and a seventh specifically excludes Mariner. Federal law does not require Mariner to merely guess which claims may or may not apply to him based on the vagaries of Plaintiffs' seven "claims." Plaintiffs have had over a year in time and have filed three separate complaints, yet have still failed to abide by the most basic standards of federal pleading. Plaintiffs' abject failure to provide even the most basic notice of their alleged claims against Mariner necessitates dismissal.

### 3. Plaintiffs Did Not Plead Facts Sufficient to Support Any of Their Seven Claims Against Mariner.

Even if Plaintiffs were permitted under Federal law to force Mariner to guess which claims may or may not apply to him - **which they are not** - they have not alleged sufficient facts to allow recovery against Mariner on any of their seven claims. Therefore, as discussed in more detail below, Mariner should be dismissed from this suit.

#### a. Copyright

Plaintiffs have not made any *prima facie* copyright allegations against Mariner. To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *see also Phillips v. Audio Active, Ltd.*, 494 F.3d 378, 390 (2d Cir. 2007). There are no allegations that Mariner copied any constituent elements of Plaintiffs' alleged copyright. This alone necessitates dismissal of Claim I as to Mariner.

#### b. Appropriation of another's name or likeness

Plaintiffs named two defendants in Claim II for Appropriation of another's name or likeness. Neither of them is Mariner. Therefore, as above, Plaintiffs' failure to name Mariner, or even allege he appropriated either Plaintiffs' name or likeness, requires that any such claim purportedly raised against him must be dismissed.

#### c. Unreasonable publicity given to another's life

Plaintiffs did not allege that Mariner publicly disclosed any facts about either of them and therefore cannot prevail on an action against Mariner for unreasonable publicity given to another's life. Under Connecticut law, a tort action for the invasion of personal privacy is only "triggered by public disclosure of any matter that '(a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public….'" § 652D Comment (c) of § 652D

recognizes, however, that not all personal and private information is protected from public disclosure: "'The rule stated in § 652D gives protection only against unreasonable publicity, of a kind highly offensive to the ordinary reasonable [person].'"

Plaintiffs' only allegations were that Mariner made two comments at 11:47 and 11:49 on February 21, 2007. *See* Plaintiffs' Second Amended Compl., ¶ 42. There are no allegations that Mariner disclosed any factual matter regarding either Plaintiff. Absent any such allegations of a public disclosure of a highly offensive private fact not of concern to the public, there can be no recovery under this cause of action. Since Plaintiffs have clearly failed to allege that Mariner disclosed any sort of fact at all, this claim must be dismissed as to Mariner.

### d. False Light

Plaintiffs have not alleged any facts to show that Mariner could possibly be liable for publicity that places another in a false light before the public. The gravamen of the tort was outlined in *Grossman v. Computer Curriculum Corp.*, 131 F. Supp. 2d 299, 311 (D. Conn. 2000) (citations omitted):

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed. An essential element of a false light invasion of privacy claim is that the defendant gives publicity to false information.

Mariner's alleged comments contain no factual information about either Plaintiff. They are merely crude statements commenting on prior comments by other posters. *See* Plaintiffs' Second Amended Compl., ¶ 42. These comments satisfy neither element of the claim. *See Grossman*, 131 F. Supp. 2d at 311. As to the first element, Mariner's comments did not attribute any sort of character or other flaw, fact or opinion as to Plaintiffs' reputation or actions. *See* Plaintiffs' Second Amended Compl., ¶ 42. As to the second, Mariner could not have recklessly

or intentionally placed Plaintiffs in a false light, as he made no factual statements about either. *See* Plaintiffs' Second Amended Compl., ¶ 42. Plaintiffs have failed to allege that Mariner placed Plaintiffs in a false light and this claim should be dismissed as to Mariner.

### e. Intentional Infliction of Emotional Distress

Plaintiffs have also failed to allege any facts to prevail on a claim against Mariner for intentional infliction of emotional distress.

> [In order for a] plaintiff to prevail in a case for liability under . . . [intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; . . . (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe.

*Carrol v. Allstate Ins. Co.*, 815 A.2d 119, 262 Conn. 433, 442-43 (2003). The court further explained the allegations necessary to state a claim for intentional infliction of emotional distress:

> Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society… Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous! ... **Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress."**

*Id.,* 815 A.2d at 119, 262 Conn. at 443 (emphasis added). As the language suggests, the burden on Plaintiffs to prove liability for intentional infliction of emotional distress is high, especially where Plaintiffs have failed even to allege that Mariner has acted in an outrageous manner.

Plaintiffs' Second Amended Complaint merely alleges two statements, made within two minutes of each other, that were "crudely commenting" on Doe II. *See* Plaintiffs Second

9

Amended Complaint, ¶ 42. No allegations are made that Mariner had any intent to cause distress, that the conduct was extreme or outrageous, that these two isolated comments were the cause of Plaintiffs' distress or that any purported distress related to these specific comments was severe. *See id*. Even if the general allegations about "one or more defendants" somehow was construed to apply, Plaintiffs' claims would still fail because Mariner's conduct is expressly excluded from this tort under prior established Connecticut jurisprudence.

The alleged crude statements are precisely the conduct that is "merely insulting or displays bad manner or results in hurt feelings," and are "insufficient to form the basis for an action." *Carrol*, 262 Conn. at 443. In Connecticut, whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. *See Bell v. Bd. of Educ.*, 739 A.2d 321, 327, 55 Conn. App. 400, 410 (1999). Only where reasonable minds disagree does it become an issue for the jury. *Id.* In this matter, the bad manners doctrine and prior case law indicate that under no circumstances can the two statements alleged in the Second Amended Complaint rise to the level of extreme and outrageous conduct necessary to support a cause of action against Mariner.

The United States District Court in the District of Connecticut, in a far more egregious case of inappropriate sexual comments in the work place, found that even construing all facts in a light most favorable to Plaintiff, no claim for intentional infliction of emotional distress arose. *See Arnold v. United Int'l Video Stores,* No. 3:93CV1976 1995 U.S. Dist. Lexis 18309, (D. Conn, July 21, 1995). In that matter, plaintiff claimed the party, Durbin, repeatedly subjected the plaintiff to sexual harassment throughout her employment with Blockbuster and alleged three incidents:

> 1) Durbin's remark when he and the plaintiff first met at a movie screening that she hold his bucket of popcorn to give him an excuse to reach between her legs;

> 2) Durbin's proposition to the plaintiff to accompany him to his hotel room because he had helped her obtain a promotion; and
>
> 3) Durbin's remark, spoken outside of the plaintiff's presence and discovered by the plaintiff after she had resigned from Blockbuster, that the plaintiff would 'blow you to get ahead.'

*Id.* The court noted, that even viewed in a light most favorable to the plaintiff, the "conduct cannot be reasonably regarded as extreme and outrageous. Although the plaintiff found Durbin's conduct disruptive and upsetting, this case is not 'one in which the recitation of the facts to an average member of the community would arouse [the member's] resentment against the actor, and lead [the member] to exclaim, "Outrageous."'" *Id.*

Mariner's comments are much less egregious than the insufficient allegations pleaded in *Arnold*. Mariner simply wrote "get in line" and then commented that he would like to make a "sundae" as part of some intimate act with Doe II. Plaintiffs' Second Amended Compl., ¶ 42. Mariner did not make these allegations to Doe II's face. Indeed, he had no way of knowing or thinking that Doe II would ever be aware of these comments. If the Defendant in *Arnold*, who asked his female co-worker to accompany him to a hotel so that she could receive a promotion, and also stated that she would "blow you" to advance in a job is protected by the "crude language" doctrine, then it is clear that Mariner's comments do not rise to the level of extreme and outrageous and are protected as well.

Given prior decisions, the scope of the tort, and Plaintiffs' failure to allege basic facts to support such a claim, it should be dismissed as a matter of law.

### f. Negligent Infliction of Emotional Distress

Plaintiffs have also failed to show that Mariner's conduct gives rise to the necessary elements of a claim for negligent infliction of emotional distress. In Connecticut, the elements of negligent infliction of emotional distress include:

> (1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress.

*Carrol*, 819 A.2d at 127, 262 Conn at 444. Again, the totality of Mariner's alleged conduct in Plaintiffs' Second Amended Complaint is two statements, made with two minutes of each other, that were "crudely commenting" on Doe II. *See* Plaintiffs Second Amended Complaint, ¶ 42. No allegations are made that these two isolated comments created a foreseeable risk of severe emotional distress, that the distress from Mariner's comments was severe enough that it might result in bodily harm, or that any severe distress was related to these specific comments. Even if the general allegations about "one or more defendants" somehow were construed to apply, Plaintiffs' claims would still fail because Mariner's "crude" comments are expressly excluded from negligent infliction of emotional distress under prior Connecticut decisions.

In first recognizing negligent infliction, the Connecticut Supreme Court cautioned that the tort should "be limited so as not to open up a wide vista of litigation in the field of bad manners, where relatively minor annoyances had better be dealt with by instruments of social control other than the law." *Montinieri v. S. New England Tel. Co.*, 398 A.2d 1180, 1184, 175 Conn. 337, 345 (1978). Again, Plaintiffs' sole grievance pled against Mariner is that he was "crudely commenting on the individual women designated, including Doe II." Plaintiffs' Second Amended Compl., ¶ 42. In other words, Mariner was engaging in locker-room talk outside of the

presence of Plaintiffs. Connecticut has expressly declared, time and again, that such talk is not actionable. *Montinieri*, 398 A.2d at 1184, 175 Conn. at 345. The concept that a mild, possibly even complimentary, expression of sexual interest in another person is a "minor annoyance" that is dealt with on a daily basis by adults is so basic as to need no further explanation.

Any such crude behavior and comments "in the field of bad manners" simply do not rise to the level of conduct necessary to satisfy the first element. In fact, from the day the State of Connecticut recognized this tort, it has been abundantly clear that actions such as Mariner's do not subject one to lawsuits and liability. *Id.* This claim is meritless and should be dismissed.

### g. Libel

Finally, Plaintiffs have failed to state a claim for libel against Mariner. Plaintiffs' allegations regarding Mariner's statements indicating a desire to perform sexual acts with Doe II do not meet the Connecticut standard for defamation or libel. The Connecticut Supreme Court has defined defamatory statements as "a communication that tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Cweklinsky v. Mobil Chem. Co.*, 837 A.2d 759, 764, 267 Conn. 210, 217 (2004). To establish a prima facie case of defamation "the plaintiff must demonstrate the following: (1) the statement at issue was defamatory; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published; and (4) the plaintiff's reputation suffered injury as a result of the statement." *Id.* Furthermore, Conn. Gen. Stat. § 52-237 requires that in:

> any action for a libel, the defendant may give proof of intention; and unless the plaintiff proves either malice in fact or that the defendant, after having been requested by the plaintiff in writing to retract the libelous charge, in as public a manner as that in which it was made, failed to do so within a reasonable time, the plaintiff shall recover nothing but such actual damage as the plaintiff may have specially alleged and proved.

13

Plaintiffs only alleged that Mariner "crudely commented" on Doe II with two statements in which he indicated that more than one person likely held Doe II as an object of desire and that he would like to personally put ice cream on her. *See* Plaintiffs' Second Amended Compl., ¶ 42. Plaintiffs did not bother to:

(1) allege that Mariner's statements about ***his own desires and thoughts*** lowered Doe II "in the estimation of the community or [deterred] third persons from associating or dealing with" Doe II. *Cweklinsky*, 837 A.2d at 764, 267 Conn. at 217;

(2) allege that any such crude statements ***not relating any fact or information*** about Doe II could or did inflict injury on her reputation as a result of the statement;

(3) allege that Mariner's comments were at all factual and outside of his own pure, personal opinion; or

(4) allege that Mariner's statements were untrue. *Cwelinsky*, 819 A.2d at 764, 267 Conn. at 228-29. ("Furthermore, for a claim of defamation to be actionable, the statement must be false.").

*See* Plaintiffs' Second Amended Compl., ¶ 42. The failure to even allege the basic elements of the tort of defamation or libel are fatal to the Does' claims, and they should be dismissed.

In the absence of even bare facts of Mariner's alleged conduct to support any of the Plaintiffs' seven claims, their Complaint should be dismissed as to Mariner.

### B. Plaintiffs' Claims Against Mariner Should Be Dismissed Due to Their Intentional Failure to Prosecute.

Plaintiffs' Second Amended Complaint should also be dismissed because they have failed to serve the Complaint within the time allowed under Federal Rule of Civil Procedure 4(m). Rule 4(m) provides that the court may dismiss an action for plaintiffs' failure to serve process on the defendants within one hundred and twenty (120) days after filing of the complaint. The dismissal must be requested upon motion by defendants or upon the court's own initiative after notice to the plaintiff. Consequently, "it has long been understood that certain implied powers must necessarily result to our Courts of justice from the nature of their institution, powers which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). Those inherent powers to sanction parties for litigation abuses include the power to "act *sua sponte* to dismiss a suit for failure to prosecute." *Id.*, at 44.

"It is well known that the Court cannot sit idly waiting for plaintiff to litigate its case at its pleasure." *Robledo-Rivera v. Cartagena*, 233 F.R.D. 236, 237 (D.P.R. 2005). As such, Rule 41(b) of the Federal Rules of Civil Procedure provides, *inter alia,* that a defendant may move for dismissal of an action for "failure of the plaintiff to prosecute or to comply with these rules or any order of court." Plaintiffs have intentionally refused to prosecute this case for well over a year, even going so far as to refuse to serve counsel for Mariner when requested that they do so. *See* Ex. 1. Instead of accepting Mariner's counsel's offer, Plaintiffs told the Court they needed more time to serve defendants and proceeded to ask for a remarkable *seventh* extension of time. *See* [Doc. No. 49].

Despite Plaintiffs' several requests for additional time, they have willfully refused to prosecute their claims and their refusal to the offer to accept service on behalf of Mariner is inexplicable. Plaintiffs' actions are litigation abuses that are unfair to Mariner, who continues to accrue costs as this matter languishes. In light of Plaintiffs' willful conduct, this Court should either dismiss the Second Amended Complaint against Mariner for failure to prosecute or in the alternative deny any further motions by Plaintiff to extend service upon Mariner.

## III. CONCLUSION

The Second Amended Complaint, as to Mariner, fails to state a claim upon which relief can be granted. Plaintiffs seem to be aware of this, which is why they have intentionally avoided serving Mariner for well over one year. Therefore, the Complaint, as to Mariner, should be dismissed.

Respectfully submitted this 13th day of August, 2008.

                DEFENDANT,
                A HORSE WALKS INTO A BAR

By: _____
                Charles E. Vermette, Jr., Esq. [ct07434]
                LITCHFIELD CAVO LLP
                40 Tower Lane, Suite 200
                Avon, CT 06001
                (860) 255-5577
                (860) 255-5566 (Fax)
                vermette@litchfieldcavo.com

Daniel J. Hoppe Jr., Georgia Bar No. 366746
Admission Pro Hac Pending
W. Anthony Collins Jr., Georgia Bar No. 141712
Admission Pro Hac Pending
Attorneys for A horse walks into a bar, a.k.a. Ryan Mariner
HOPPE, COLLINS & OJEDA, LLC
1827 Powers Ferry Road, Suite 7-350, Atlanta, Georgia 30339
(678) 370-0071

**<u>CERTIFICATION</u>**

      I hereby certify that on August 13, 2008, I electronically filed a copy of the foregoing, using the CM/ECF system, which will automatically send e-mail notification of such filing to all counsel of record.

_____
Charles E. Vermette, Jr.