UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DOE I, and DOE II,

    Plaintiffs,

v.

Matthew C. Ryan, a.k.a. ":D"; and individuals using the following pseudonyms: pauliewalnuts; neoprag; STANFORDtroll; lkjhgf; yalelaw; Spanky; ylsdooder; HI; David Carr; Cheese Eating Surrender Monkey; A horse walks into a bar; The Ayatollah of Rock-n-Rollah; DRACULA; Sleazy Z; Ari Gold; Ugly Women; playboytroll; Dean_Harold_Koh; kr0nz; reminderdood; r@ygold; who is; Joel Sche11hammer; Prof. Brian Leiter; hitlerhitlerhitler; lonelyvirgin; Patrick Zeke <patrick8765@hotmail.com>; Patrick Bateman <batemanhls08@hotmail.com>; [DOE I] got a 157 LSAT; azn, azn, azn; Dirty Nigger; leaf; t14 gunner; kibitzer; yalels2009; AK47,

    Defendants.

Case No. 3:07CV00909 (CFD)

November 25, 2008

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF OPPOSITION TO MATTHEW RYAN'S MOTION TO DISMISS**

# TABLE OF CONTENTS

|     |     |     | Page |
| --- | --- | --- | ---: |
| I.  | INTRODUCTION | | 1 |
| II. | FACTUAL BACKGROUND | | 1 |
|     | A. | Several AutoAdmit users, including Defendant Ryan, used AutoAdmit to harass and defame DOE I. | 2 |
|     | B. | Ryan and other pseudonymous posters also used AutoAdmit to harass and defame DOE II. | 3 |
|     | C. | Ryan admitted during his deposition that he posted the messages about DOE I and DOE II that are described in the Second Amended Complaint and knew that those messages were viewable by Yale Law Students. | 4 |
| III. | ARGUMENT | | 5 |
|     | A. | The Court has subject-matter jurisdiction over this case. | 5 |
|     |     | 1. The Court has exclusive federal-question jurisdiction over DOE II's federal copyright claim and has supplemental jurisdiction over Plaintiffs' state-law claims because they are part of the same case and controversy. | 5 |
|     |     | 2. The presence of anonymous defendants does not defeat diversity jurisdiction. | 6 |
|     | B. | The Court has personal jurisdiction over Ryan. | 8 |
| IV. | CONCLUSION | | 11 |

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Ammerman v. Sween*
54 F.3d 423 (7th Cir. 1995) ..........................................................................................7

*Bryant v. Ford Motor Co.*
844 F.2d 602 (9th Cir. 1987) ("*Bryant II*") ....................................................................7

*Bryant v. Ford Motor Co.*
886 F.2d 1526 (9th Cir. 1989) ("*Bryant III*") ................................................................7

*Burger King Corp. v. Rudzewicz*
471 U.S. 462 (1985) .....................................................................................................11

*Choquette v. Sanfilippo*
No. 3:99CV562 (CFD), 2001 WL 1266305 (D. Conn. Sept. 28, 2001) .......................8

*City of New York v. Smokes-Spirits.com, Inc.*
541 F.3d 425 (2d Cir. 2008) .........................................................................................8

*DeNuzzo v. Yale New Haven Hosp.*
465 F. Supp. 2d 148 (D. Conn. 2006) ..........................................................................6

*Grupo Dataflux v. Atlas Global Group, L.P.*
541 U.S. 567 (2004) .....................................................................................................8

*In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litig.*
510 F. Supp. 2d 299 (S.D.N.Y. 2007) ..........................................................................7

*Inset Systems, Inc. v. Instruction Set, Inc.*
937 F. Supp. 161 (D. Conn. 1996) ...........................................................................9, 10

*Le Blanc v. Cleveland*
248 F.3d 95 (2d Cir. 2001) ...........................................................................................8

*Macheras v. Center Art Galleries-Hawaii, Inc.*
776 F. Supp. 1436 (D. Haw. 1991) ..............................................................................8

*Merrill Lynch Business Financial Services Inc. v. Heritage Packaging Corp*
No. CV-06-3951 (DGT), 2007 WL 2815741 (E.D.N.Y. Sept. 25, 2007) ....................8

*Promisel v. First Am. Artificial Flowers Inc.*
943 F.2d 251 (2d Cir. 1991) .........................................................................................6

*Weber Co. v. Kosack*
No. 96 CIV 9581 (LMM), 1997 WL 666246 (S.D.N.Y. Oct. 24, 1997) .....................8

*World-wide Volkswagen Corp. v. Woodson*
444 U.S. 286 (1980) .....................................................................................................9

**Federal Statutes**

28 U.S.C. § 1367(a) ..............................................................................................................7

**State Statutes**

Connecticut General Statutes § 52-59b(a)(2) .......................................................................9

# TABLE OF AUTHORITIES
## (cont'd)

### Federal Rules

Federal Rules of Civil Procedure 19 and 21 .................................................................9

# I. INTRODUCTION

This Court has both subject-matter and personal jurisdiction to adjudicate Plaintiffs' claims against Defendant Matthew Ryan ("Ryan"). As this Court previously decided in its June 13, 2008 Order, the Court possesses federal question jurisdiction over DOE II's copyright claim and supplemental jurisdiction over Plaintiffs' state-law claims, which arise from the same case and controversy. Additionally, Ryan's attack on Plaintiffs' assertion of diversity jurisdiction as an alternative basis of subject-matter jurisdiction relies on explicitly overruled case law. Case law within the Second Circuit demonstrates that Plaintiffs may assert diversity jurisdiction despite the presence of anonymous defendants. Finally, Ryan's tortious conduct, which specifically targeted victims he knew to be in Connecticut, subjects him to personal jurisdiction in Connecticut. For these and other reasons which are set forth below, the Court should deny Ryan's motion to dismiss.

# II. FACTUAL BACKGROUND

Plaintiffs summarize only the facts relevant to Ryan's motion to dismiss. In brief, AutoAdmit.com ("AutoAdmit") is an Internet discussion board on which participants post and review comments and information about undergraduate colleges, graduate schools, and law schools. The web site, which describes itself as "[t]he most prestigious law school discussion board in the world," draws between 800,000 and one million visitors per month. *See* Second Amended Complaint ("SAC") ¶ 10. Anyone who uses the Internet and visits the AutoAdmit site, either directly or via an Internet search engine such as Google, may view the messages posted to the discussion board. Individuals who register with the AutoAdmit site may, but are not required to, provide their real names. *Id.* ¶¶ 12-14. Registered AutoAdmit users may post new messages and respond to the messages of other registered users. *Id.* After a participant posts a new message, any further comments or responses to the subject area of that message are collected as a "thread." The threads on the AutoAdmit site can be found by searching on the site or through search engines such as Google. *Id.* ¶ 17. By entering a person's name as a search term, a search engine will list various threads in which that name appears in search results. *Id.*

## A. Several AutoAdmit users, including Defendant Ryan, used AutoAdmit to harass and defame DOE I.

The summer before she enrolled at Yale Law School, Plaintiff DOE I became the subject of a message thread on AutoAdmit titled "Stupid Bitch to Attend Yale Law." *Id.* ¶ 21. The author of that message thread, STANFORDtroll, wrote, "She will be a part of the class of '08, and her name is [DOE I]. If you're going to Yale this fall, watch out for her." *See id.* In response to that message, several AutoAdmit users, including Defendant Ryan, posted messages that contained sexual threats and false claims about DOE I. For example, an AutoAdmit user posting under the pseudonym "neoprag" posted a message about DOE I stating, "I think I will sodomize her. Repeatedly." *Id.* ¶ 22. In response, Ryan posted a message under the pseudonym ":D" falsely stating, "just don't FUCK her, she has herpes." *Id.* ¶ 22 (all caps in original). Later, Ryan falsely alleged that DOE I was a "dirty whore," an "ugly whore," and a "ho." *Id.* ¶ 29.

The harassment and defamation aimed at DOE I on AutoAdmit continued to proliferate while she was a student at Yale Law School. For example, one pseudonymous poster named "Spanky" said: "[c]learly she deserves to be raped so that her little fantasy world can be shattered by real life." *Id.* ¶ 24. In another thread titled "[DOE I] is a dumbass bitch …," "Dirty Nigger" wrote "I wish to rape [DOE I] … in the ass." *Id.* ¶ 26. In the spring semester of DOE I's second year, pseudonymous poster "Patrick Zeke" sent an email to the Yale Law School Faculty with the subject heading: "Yale Law Faculty concerning pending lawsuit." The author of the email made false and harmful comments about DOE I, including: "[DOE I] is barely capable of reading (159 LSAT)," and "it seems like the risk of contracting herpes from [DOE I] would convince any rational person to go to a prostitute first." This defamatory email was then posted as a thread on the AutoAdmit site by pseudonymous poster "lonelyvirgin" with the thread title "new lonelyvirgin e-mail to YLS faculty." *Id.* ¶ 30.

The harassing and defamatory statements posted about DOE I on AutoAdmit, including the messages posted by Ryan, caused her severe emotional distress, interfered with her educational progress, and damaged her reputation. *Id.* ¶ 34. As a result of these false statements

and threats, DOE I has suffered actual pecuniary losses and emotional injury. *Id.* ¶¶ 34, 83, 87, 93, 104.

### B. Ryan and other pseudonymous posters also used AutoAdmit to harass and defame DOE II.

DOE I wasn't the only Yale Law Student that was victimized by Ryan and other pseudonymous posters on AutoAdmit. In early 2007, Ryan and other AutoAdmit posters started using the website as a forum to harass, threaten and defame DOE II, who, like DOE I, also was a student at Yale Law School. The first message about DOE II that appeared on AutoAdmit was posted on January 31, 2007, by an anonymous poster using DOE II's initials as a pseudonym. *Id.* ¶ 36. In that message, the poster linked to a photo of DOE II and encouraged others to "Rate this HUGE breasted cheerful big tit girl from YLS." *Id.* Within a week, dozens of additional messages about DOE II appeared in this thread. *See id.* Many of the messages commented crudely on DOE II's breasts; others described in graphic detail the poster's desire to have sexual relations with her. *See id.* Even more disturbing, certain anonymous posters appeared to be among DOE II's classmates at Yale Law School. In particular, one poster wrote a message describing DOE II's attire while she exercised at the law school gym, which prompted another user to post a message suggesting that someone should follow DOE II to the gym, take her picture, and then post it on AutoAdmit. *Id.* ¶ 38.

In March 2007, Ryan gleefully joined in the attacks against DOE II on AutoAdmit. In particular, on March 4, 2007—after hundreds of threatening and offensive messages had been posted about DOE II on AutoAdmit—Ryan posted a message on the site under the pseudonym ":D" stating, "I'm doing cartwheels knowing this stupid Jew bitch is getting her self esteem raped." *Id.* ¶ 44. Thereafter, Ryan continued to harass and defame DOE II, calling her a "[s]tupid cunt," a "STUPID FUCKING CUNT," and a "silicon tit'd [sic] whore," and making repeated and vulgar references to DOE II's breasts. *Id.* ¶ 45 (all caps in original). In addition,

various posters, including Ryan, reveled in dredging up painful and embarrassing history about DOE II's father. In particular, Ryan started a thread entitled "Does [DOE II]'s dad give blowjobs at Sing Sing for the protein?" *Id.* ¶ 59. Continuing with this theme in another thread, apparently referring to prison rape, Ryan posted a message directly aimed at DOE II: "HERE'S A HINT YOU STUPID FUCKING CUNT: IT'S A DAILY ROUTINE FOR YOUR FELON FAGGOT FATHER." *Id.* (all caps in original).

The numerous harassing and defamatory messages posted about DOE II on AutoAdmit, including the statements posted by Ryan, have caused DOE II physical illness and severe emotional distress, interfered with her educational progress, damaged her reputation, and caused her pecuniary harm. *Id.* ¶ 71.

### C. Ryan admitted during his deposition that he posted the messages about DOE I and DOE II that are described in the SAC and knew that those messages were viewable by Yale Law Students.

On July 24, 2008, Plaintiffs deposed Ryan in accordance with this Court's order permitting them to engage in expedited discovery to uncover the identities of the defendants in this case. Declaration of Benjamin Berkowitz, filed herewith, ("Berkowitz Decl.") ¶ 2. During his deposition, Ryan admitted to posting the messages on AutoAdmit about DOE I and DOE II that are described in the SAC. *See id.* Ex. A at 27:9-16, 28:13-30:2, 41:23-42:4, 45:5-16, 56:13-21, 59:14-21. Ryan also admitted that he knew that the messages posted on AutoAdmit were viewable by Yale Law Students. *See id.* at 33:14-34:18, 43:8-11, 48:9-11. In addition, based on the content of the threads in which Ryan posted his messages, Ryan knew or should have known that DOE I and DOE II also were Yale Law Students. *See, e.g.,* SAC ¶¶ 21-22, 44. Indeed, Ryan himself made reference in his posts to DOE II's presence at Yale Law School, saying "Thanks for the cell phone pics suggestion [DOE II] (huge fucking titties at YLS)!" Berkowitz Decl. Ex. A at 54:25-55:9.

## III. ARGUMENT

A. **The Court has subject-matter jurisdiction over this case.**

1. **The Court has exclusive federal question jurisdiction over DOE II's federal copyright claim and has supplemental jurisdiction over Plaintiffs' state-law claims because they are part of the same case and controversy.**

This Court previously considered the question of its subject-matter jurisdiction in this case when it ruled on John Doe 21's (a.k.a., "AK47"'s) motion to quash. The Court stated:

> The basis for the plaintiffs' copyright claim, which is the only federal claim in the plaintiffs' complaint, is that one of the plaintiffs owns copyrights in her photographs, which are registered with the United States Copyright Office, and that these photographs were published without her permission on AutoAdmit.
>
> ... [T]his Court has original jurisdiction over "all civil actions arising under the ... laws ... of the United States;" 28 U.S.C. § 1331; and may exercise supplemental jurisdiction over state-law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Thus, since the Court properly has jurisdiction over the copyright claim, which arises from the same case or controversy as the various state law tort and statutory claims, the Court also has subject-matter jurisdiction as these state law claims, which arise from a "common nucleus of operative fact" namely, the alleged harassment of DOE I and DOE II on AutoAdmit.com and other web sites.

*DOE I and DOE II v. Individuals whose true names are unknown*, 561 F. Supp. 2d 249, 253 (D. Conn. 2008).

The Court's analysis of its subject-matter jurisdiction was correct. This case is about the campaign of harassment unleashed on the Plaintiffs by the community of users who frequent the AutoAdmit message board. That campaign of harassment included both the violation of federal copyright law and the commission of numerous state-law torts, but these violations are inextricably linked by their common purpose—the harassment of the Plaintiffs. The Court may—and should—continue to exercise supplemental jurisdiction over Plaintiffs' state-law claims for appropriation of another's name or likeness, unreasonable publicity, false light, intentional and negligent infliction of emotional distress, and libel. Each and every one of Plaintiffs' state-law claims, along with DOE II's copyright claim, arises from the same nucleus of operative facts—namely, defendants' threatening, harassing and defamatory conduct targeting

Plaintiffs on AutoAdmit. *See DeNuzzo v. Yale New Haven Hosp.*, 465 F. Supp. 2d 148, 152 (D. Conn. 2006) (exercising supplemental jurisdiction over state-law claims where plaintiff's federal and state claims were derived from a common nucleus of operative facts, concerned the "same conduct," and would require the "same evidence" or "the determination of the same facts") (citation omitted); *Promisel v. First Am. Artificial Flowers Inc.*, 943 F.2d 251, 254 (2d Cir. 1991) (disputes are part of the "same case or controversy" within § 1367 when they "derive from a common nucleus of operative fact") (internal citation omitted).

The fact that DOE II's copyright claim is subject to exclusive federal jurisdiction is a significant factor in favor of applying supplemental jurisdiction over the Plaintiffs' state-law claims. *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litig.*, 510 F. Supp. 2d 299 (S.D.N.Y. 2007) (where the court has exclusive jurisdiction over federal claims, judicial efficiency weighs heavily in favor of applying supplemental jurisdiction to state-law claims). If the Court chose to decline supplemental jurisdiction over the state-law claim, the result would be a multiplicity of actions and repetitive litigation regarding the same common questions of fact.

That the only federal claims in the case, DOE II's copyright claims, do not specifically identify Ryan does not undercut this Court's subject-matter jurisdiction. Supplemental jurisdiction in federal question cases extends to claims by or against *any* party that are sufficiently related to the federal claim to be part of the same "case or controversy." 28 U.S.C. § 1367(a). For example, in *Ammerman v. Sween*, 54 F.3d 423, 425 (7th Cir. 1995), a college lab instructor brought a Title VII claim and a claim for wage discrimination under the federal Equal Pay Act against the college for not protecting her from another instructor's sexual harassment. She also sued the alleged harasser for assault, battery and other state-law torts. The court found it had supplemental jurisdiction over the state-law claims against the harasser even though the only federal claims were directed against the college. 54 F.3d at 424-25.

### 2.     The presence of anonymous defendants does not defeat diversity jurisdiction.

Alternatively, even if this Court reversed its decision and decided that it did not have federal subject-matter jurisdiction, or were inclined to decline to exercise supplemental

jurisdiction, this Court has subject-matter jurisdiction over this case because of diversity between the parties.

The inclusion of anonymous defendants does not defeat diversity. The first case relied upon by Ryan in arguing that the inclusion of anonymous defendants defeats diversity is *Bryant v. Ford Motor Co.*, 844 F.2d 602, 605 (9th Cir. 1987) ("*Bryant II*"). However, *Bryant II* was legislatively overruled by Section 1016(a) of the Judicial Improvements and Access to Justice Act of 1988 and vacated by the Ninth Circuit, which stated: "Congress obviously reached the conclusion that doe defendants should not defeat diversity jurisdiction." *Bryant v. Ford Motor Co.*, 886 F.2d 1526, 1528 (9th Cir. 1989) ("*Bryant III*"). Following *Bryant III* and the Judicial Improvements and Access to Justice Act of 1988, courts within the Ninth Circuit have held that the presence of anonymous defendants does not destroy diversity, whether in cases removed to federal court or those brought originally in federal court. *See, e.g., Macheras v. Center Art Galleries-Hawaii, Inc.*, 776 F. Supp. 1436 (D. Haw. 1991).

While the Second Circuit has not explicitly addressed the question of whether anonymous defendants destroy diversity jurisdiction, it has answered this question in the negative by implication. For example, in *City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425 (2d Cir. 2008), the court applied diversity jurisdiction to hear state-law claims despite the inclusion of one hundred Doe defendants in the suit. *See id.* at 458; *see also id.* at 458-61 (Winter, J., dissenting) (refusing to join the majority opinion on federal law issues but agreeing with the majority that the Court had diversity jurisdiction). Moreover, numerous district courts within the Second Circuit have explicitly held that anonymous defendants do not destroy diversity. *See, e.g., Merrill Lynch Business Financial Services Inc. v. Heritage Packaging Corp*, No. CV-06-3951 (DGT), 2007 WL 2815741 (E.D.N.Y. Sept. 25, 2007) (inclusion of Doe defendants does not destroy diversity); W. *Weber Co. v. Kosack*, No. 96 CIV 9581 (LMM), 1997 WL 666246, *2-3 (S.D.N.Y. Oct. 24, 1997) (same). In particular, courts within the District of Connecticut have found diversity jurisdiction despite the presence of Doe defendants. *See Choquette v. Sanfilippo*, No. 3:99CV562 (CFD), 2001 WL 1266305, *1 (D. Conn. Sept. 28, 2001). Were the

rule otherwise, no diversity case could ever be brought that names Does as additional defendants. In fact, however, there are numerous such cases, and courts do not reject them for lack of subject-matter jurisdiction. *See, e.g., id.*

Ryan argues that permitting this case to move forward on diversity jurisdiction is "especially dangerous," because of the probability that an anonymous defendant may later be found to be a resident of Connecticut. Memorandum of Law in Support of Matthew Ryan's Motion to Dismiss at 8-9. But Ryan greatly exaggerates this "danger," as the Court may dismiss a non-diverse, dispensable party at any stage of the action in order to preserve diversity jurisdiction. *See Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 571 (2004); *Le Blanc v. Cleveland*, 248 F.3d 95, 99-101 (2d Cir. 2001). Should one of the anonymous defendants turn out to be non-diverse—and should the Court reject supplemental jurisdiction—then the Court may dismiss that defendant pursuant to Federal Rules of Civil Procedure 19 and 21.

## B. The Court has personal jurisdiction over Ryan.

A defendant's conduct is sufficient for the exercise of personal jurisdiction if (1) the conduct satisfies the requirements of the Connecticut Long Arm Statute and (2) the conduct satisfies the "minimum contacts" requirement of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See Inset Sys., Inc. v. Instruction Set, Inc.*, 937 F. Supp. 161, 163 (D. Conn. 1996); *World-wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Here, the requirements of Connecticut's long-arm statute, C.G.S. § 52-59b(a)(2), have been satisfied because Ryan has repeatedly transmitted tortious content to Connecticut through the AutoAdmit website. *See Inset Sys.*, 937 F. Supp. at 164; C.G.S. § 52-59b(a)(2) (providing that personal jurisdiction over a nonresident individual exists if the individual or his agent commits a tortious act within the state). A Connecticut district court previously considered personal jurisdiction over a foreign defendant that posted actionable information on the Web in *Inset Systems*. In that case, the court exercised personal jurisdiction over a foreign defendant

who used a website that was accessible to Internet users nationwide, including Connecticut residents, to advertise goods and services. The court noted that "unlike hard-copy advertisements . . . which are often quickly disposed of and reach a limited number of consumers, Internet advertisements are in electronic printed form so that they can be accessed again and again by many more potential consumers." *Inset Sys.* at 164. The court thus held that, although the defendant did not specifically direct its advertisements to Connecticut residents, its conduct was sufficiently repetitive in nature such that it amounted to soliciting business within the state under Connecticut's long-arm statute. *Id.*

The facts of this case present an even stronger argument for personal jurisdiction than *Inset Systems*. As with the information posted on the Internet by the defendant in *Inset Systems*, Ryan's messages about DOE I and DOE II were not in printed form readable by a limited number of users over a limited time period. Instead, they were in electronic form on the AutoAdmit website, easily readable by millions of Internet users, including Connecticut residents, and accessible for an indefinite period of time. Moreover, unlike the defendant that was subject to personal jurisdiction in *Inset Systems*, Ryan purposefully aimed his conduct at Connecticut by posting tortious content about DOE I and DOE II—who he knew were Yale Law Students—on a website that he knew was viewable by DOE I, DOE II, and their classmates. *See generally* Berkowitz Decl. Ex. A.[1] If advertising on the Internet—even the sort not specifically

---

[1] Ryan's sworn deposition testimony directly contradicts the statements he made in the Affidavit that he submitted to the Court (doc. # 77-2). Specifically, in his Affidavit, Ryan claims that he never directed his activities on Internet websites (including AutoAdmit) so that they would be particularly reviewed or read by persons in Connecticut nor made statements on Internet websites that he believed would be particularly reviewed by or affect persons in Connecticut. *See* Ryan Aff. (doc. # 77-2) ¶ 5. At his deposition, however, Ryan admitted that he knew that the offensive messages he posted about DOE I and DOE II on AutoAdmit were viewable by Yale Law Students. *See* Berkowitz Decl. Ex. A at 33:14-34:18, 43:8-11, 48:9-11. In addition, based on the content of the threads in which Ryan posted his messages, Ryan knew or should have known that DOE I and DOE II themselves were Yale Law Students. *See, e.g.*, SAC ¶¶ 21-22, 44. Indeed, in one post he specifically refers to DOE II as being "at YLS." Berkowitz Decl. Ex. A at 54:25-55:9. To the extent that Ryan seeks to submit evidence to support his argument against personal jurisdiction, this Court can—indeed must—consider contrary evidence in the record. Here, the contrary evidence includes Ryan's own sworn testimony and the evidence of his posts on AutoAdmit, as well as the inferences that can be drawn regarding the credibility of Ryan's Affidavit from the fact that he has contradicted it under oath.

aimed at Connecticut—is sufficient to subject a foreign corporate defendant to personal jurisdiction in this state, surely Ryan's purposeful and repetitive conduct on AutoAdmit—which *was* intentionally aimed at Connecticut—also is sufficient to subject him to personal jurisdiction here.

In addition, Ryan has sufficient minimum contacts within Connecticut to satisfy constitutional due process requirements. "[Due Process] limitations require that a nonresident corporate defendant have 'minimum contacts' with the forum state such that it would reasonably anticipate being haled into court there. [Further], maintenance of the suit in the forum state cannot offend traditional notions of fair play and substantial justice." *Inset Systems*, 937 F. Supp. at 164 (*citing World-wide Volkswagen,* 444 U.S. at 297 and *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). In this case, because Ryan purposefully and repeatedly posted tortious content about DOE I and DOE II, who he knew were Yale Law Students, on a message board he also knew was viewable by Plaintiffs and their classmates, he could reasonably anticipate the possibility of being haled into court in Connecticut. *See generally* Berkowitz Decl. Ex. A. Moreover, exercising personal jurisdiction over Ryan would not offend traditional notions of fair play and substantial justice. In determining if this constitutional requirement is satisfied, the Court should consider the relative burdens on Ryan and Plaintiffs of litigating the suit in this or another forum, Connecticut's interest in adjudicating the dispute, and the interstate judicial system's interest in efficient resolution of controversies. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476-77 (1985). Here, the burden on Ryan of trying this case in Connecticut would be minimal as he has already retained counsel in the state. In addition, the burdens associated with travel between Ryan's home state and Connecticut could be minimized by using electronic procedures for discovery and filing documents with the Court. Further, since this action involves harm to Connecticut residents and concerns issues of Connecticut common law, Connecticut has an interest in adjudicating the dispute. And because there are multiple defendants, adjudicating the case as a whole in Connecticut would prevent the filing of numerous lawsuits that would of necessity revisit many of the same facts. This being the case, adjudication

in Connecticut would dispose of this matter efficiently. Therefore, subjecting Ryan to personal jurisdiction in Connecticut comports with due process.

## IV. CONCLUSION

Because this Court has subject-matter and personal jurisdiction to adjudicate Plaintiffs' claims against Defendant Matthew Ryan, the Court should deny his motion to dismiss.

Dated: November 25, 2008

PLAINTIFFS DOE I AND
DOE II

By: /s/ Mark Lemley
Mark Lemley (*pro hac vice*)
Ashok Ramani (*pro hac vice*)
KEKER & VAN NEST, LLP
710 Sansome Street
San Francisco, CA 94111
Telephone: (415) 391-5400
Facsimile: (415) 397-7188
Email: MLemley@kvn.com
ARamani@kvn.com

David N. Rosen
David Rosen & Associates PC
400 Orange Street
New Haven, CT 06511
Telephone: (203) 787-3513
Facsimile: (203) 789-1605
Email: drosen@davidrosenlaw.com

# CERTIFICATION OF SERVICE

This is to certify that a copy of the foregoing was mailed, first class, postage prepaid, on November 25, 2008, to:

| | |
|---|---|
| James A. Newsom<br>MUNISTERI SPROTT RIGBY NEWSOM AND ROBBINS, P.C.<br>3323 Richmond Avenue<br>Houston, TX 77098<br><br>Susan O'Donnell, Esq.<br>Halloran & Sage LLP<br>One Goodwin Square<br>Hartford, CT 06103-4303 | *Attorneys for Defendant Matthew Ryan* |
| Charles E. Vermette, Jr.<br>LITCHFIELD CAVO LLP<br>40 Tower Lane, Suite 200<br>Avon, CT 06001<br><br>W. Anthony Collins Jr.<br>Hoppe, Collins & Ojeda, LLC<br>1827 Powers Ferry Road SE<br>Building 7, Suite 350<br>Atlanta, GA 30339 | *Attorneys for Defendant A Horse Walks Into a Bar* |

                                                                                                                         /s/ Benjamin Berkowitz