UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DOE I, and DOE II,<br>Plaintiffs | : | CIVIL ACTION NO.<br>307CV00909 CFD |
| V. | | |
| ANTHONY CIOLLI, ET AL.<br>Defendants | : | FEBRUARY 27, 2009 |

### DEFENDANT MATTHEW RYAN'S RESPONSE TO
### PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY

The Defendant Matthew Ryan hereby responds to the Plaintiffs' Notice of Supplemental Authority, dated February 18, 2009. In addition, the Defendant brings to the Court's attention certain additional information relating to the lack of subject matter jurisdiction.

#### The "Supplemental Authority" Submitted by Plaintiffs Does Not Support Their Claim of Personal Jurisdiction Over Matthew Ryan.

Plaintiffs' Notice of Supplemental Jurisdiction is based upon the decision of one Superior Court in *Rios v. Fergusan*, 2008 Conn. Super. LEXIS 3223 (J.D. New Haven, December 3, 2008). Plaintiffs' assertions notwithstanding, not only is the *Rios* case factually and contextually unlike the case at bar, but in reality the *Rios* court's logic and the cases cited by such court mandate dismissal for lack of personal jurisdiction.

In *Rios*, the defendant was a resident of North Carolina who had fathered the Connecticut resident plaintiff's child, and then created a video which he posted on YouTube "in which he brandished a firearm in a rap song in which he says that he wants to hurt the [plaintiff], to shoot her, and to 'put her face on the dirt until she can't

Doe 1 et al v. Ciolli et al — Doc. 98 — Dockets.Justia.com

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No 26105

breathe no more.'" 2008 Conn. Super. LEXIS 3223, *6. As the court noted, the defendant in that case had taken the "purposeful action of creating and posting a YouTube video that threaten[ed] the [plaintiff's] life and safety. He posted the video on an Internet medium that can be disseminated worldwide, *but the content of the video established that he was purposefully directing it to the applicant in Connecticut."* (emphasis added) *Id.,* *26. Because of its conclusion that "the evidence shows . . . that [the defendant] specifically targeted his message at [the plaintiff] by threatening her life and safety," *id.,* * 21, the trial court relied upon cases in which courts had found long-arm jurisdiction where a non-resident sent tortious communications directly into Connecticut, *id.* at *12; and where there was a showing of a manifest intent to direct website content at the forum state, *id.* at *18. It concluded that "by specifically targeting a Connecticut resident with threats to the [plaintiff's] life and safety and thereby creating in her a fear for her well-being, the YouTube video created by the [defendant] can be deemed a tortious act committed in this state." *Id.* at *21.

In sharp contrast to the *Rios* case, there is neither an allegation nor evidence in the case at bar that movant Matthew Ryan threatened either of the plaintiffs. There is, moreover, nothing to reflect that he directed the contents of his alleged postings on the public bulletin board AutoAdmit to or at Connecticut residents; indeed, his uncontroverted Affidavit reflects quite the opposite. Affidavit of Matthew Ryan, dated November 4, 2008, ¶ 5. Instead, assuming *arguendo* the truth of Plaintiffs' allegations, what movant did was post statements on an Internet bulletin board available worldwide, which could be viewed by persons throughout the United States and globally. This is a

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No 26105

far cry from specific threats of violence directed by video at a specific Connecticut resident, especially since, as previously noted, the postings antedated Plaintiffs' tenure in this state.

As noted in cases cited favorably by the *Rios* court, where, as here, messages are posted upon "a listserv or news group, . . . the mere posting of messages upon such an open forum by a resident of one state that could be read in a second state [is] not sufficient to confer jurisdiction upon the latter." *Id.* at *17-18 (citing *Goldhaber v. Kohlenberg*, 395 N.J. Super. 380 (N.J. Super. Ct. App. Div. 2007). Further, as the *Rios* court recognized, the exercise of personnel jurisdiction based merely upon placing of information on the Internet is an *impermissible* exercise of jurisdiction, *id.* at *18 (citing *Young v. New Haven Advocate*, 315 F.3d 256 (4th Cir. 2002), *cert denied*. 538 U.S. 1035 (2003)), as a contrary holding would mean that, "'a person placing information on the Internet would be subject to personal jurisdiction in every state, . . . '." *Id.* Given that what Plaintiffs allege Ryan did – post messages on a bulletin board -- is *exactly* what the *Rios* court (and others) have held to be insufficient to confer jurisdiction,[1] the decision submitted by Plaintiffs further mandates dismissal for lack of personal jurisdiction.

In light of the foregoing and the *Rios* court's acknowledgement that other Connecticut trial courts have concluded that personal jurisdiction under Conn. Gen. Stat. § 52-592(b)(a)(2) cannot be asserted absent defendants' physical presence within

---

[1] While Plaintiffs argue that what Ryan allegedly did is "no different" from the defendant's actions in *Rios*, *see* Plaintiff's Notice at p. 2, one would hope that even they must admit the distinction between online offensive commentary posted anonymously on AutoAdmit, and actual threats of physical violence made on YouTube that are targeted at a person intimately known to the nonresident.

- 3 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No 26105

the state, see 2008 Conn. Super. LEXIS 3223 *13, footnote 6, Plaintiffs' reliance upon this Superior Court ruling as authority to claim personal jurisdiction over Ryan is unavailing.

## Post-Submission Events Further Bar the Assertion of Subject Matter Jurisdiction

Defendant has argued, and Plaintiffs have not rebutted, that this Court is without subject matter jurisdiction over Ryan. Federal Question jurisdiction is not present, as no Federal claim has been asserted against anyone by Doe I[2], and no Federal claim has been asserted against the movant by Doe II. In the case of Doe II, whatever arguable Federal Question jurisdiction might have existed has disappeared, as her claims against the defendant – "Pauliewalnuts" – whom she alleged had copied her allegedly copyrighted photographs have been withdrawn. See Notice of Settlement and Request for Dismissal, dated January 21, 2009 (Docket No. 90). Thus, leaving aside that there is no connection between the claims against "Pauliewalnuts" and those asserted against Matthew Ryan, even assuming that such claims somehow gave rise to a Federal Question claim, that count is now gone.

Plaintiffs' other basis for trying to maintain a Federal lawsuit -- Diversity jurisdiction – is equally unavailing. While Plaintiffs may argue that the actual residence of some defendants remains unknown, Plaintiffs have been afforded an extraordinary amount of time by this Court to identify the various defendants, and should not be allowed to hide behind their purported inability to identify them as a means to continue

---

[2] While Defendant is presently using the terms "Doe I" and "Doe II," the continued use of pseudonyms for the Plaintiffs makes little sense given their recent prominence – including the use of their actual names and background information about them -- in a recent article published in Conde Nast's *Portfolio*. See Margolic, David, "Slimed Online," *Conde Naste Portfolio*, March 2009.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No 26105

to claim Diversity jurisdiction. This is especially so given the likelihood that some defendants are from Connecticut.[3] Defendants have repeatedly inquired of Plaintiffs regarding the status of settlements and parties, and Plaintiffs have, to date, declined to provide such information.[4] One must assume, therefore, that plaintiffs are aware that the anonymous defendants include Connecticut residents. While they may wish to remain in Federal Court because "the case's visibility and potential impact [will] be much greater than if it had been brought in a state tribunal," see Margolic, p. 8, this is no basis to run roughshod over well settled jurisdictional law.

## Conclusion

Based upon the foregoing, it is clear that personal jurisdiction does not exist over Matthew Ryan. Further, subject matter jurisdiction does not exist in the Federal courts. Thus, the claims brought by these Plaintiffs against Matthew Ryan should be dismissed.

THE DEFENDANT:
MATTHEW C. RYAN

By_____
JOSEPH G. FORTNER, JR.
Fed. Bar #ct 04602
SUSAN O'DONNELL
Fed. Bar # ct07539
HALLORAN & SAGE LLP
One Goodwin Square
225 Asylum Street
Hartford, CT 06103
(860) 522-6103

---

[3] See Margolic at p. 6.
[4] Defendant will, at the appropriate time, seek an order compelling production of all settlement information and documents.

- 5 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No 26105

## CERTIFICATION

This is to certify that on this ___27th___ day of February 2009, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

_____
Joseph G. Fortner, Jr.

- 6 -

One Goodwin Square
1402031v.1
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No 26105



LEXSEE 2008 CONN. SUPER. LEXIS 3223

Stacy Elena Rios v. Christopher Fergusan

FA084039853S

SUPERIOR COURT OF CONNECTICUT, JUDICIAL DISTRICT OF NEW HAVEN AT NEW HAVEN

2008 Conn. Super. LEXIS 3223

December 2, 2008, Decided
December 3, 2008, Filed

**NOTICE:** THIS DECISION IS UNREPORTED AND MAY BE SUBJECT TO FURTHER APPELLATE REVIEW. COUNSEL IS CAUTIONED TO MAKE AN INDEPENDENT DETERMINATION OF THE STATUS OF THIS CASE.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** After the trial court granted a restraining order on a temporary and provisional basis, petitioner applicant filed an application for a restraining order under *Conn. Gen. Stat. § 46b-15* against respondent North Carolina resident after the North Carolina resident allegedly threatened the applicant via a internet posting on a social networking website. The North Carolina resident was served with the application but made no appearance.

**OVERVIEW:** The North Carolina resident was the father of the applicant's four-year-old child. The applicant filed an application for a restraining order under *Conn. Gen. Stat. § 46b-15* against him. The trial court granted an ex parte restraining order against him. The applicant appeared at a subsequent hearing, but the North Carolina resident did not because he had not been served with process. The trial court continued the ex parte order until the next hearing. The applicant was then able to serve him in North Carolina. At the relevant hearing, the applicant presented evidence that the North Carolina resident had posted a video on a social networking site in which he stated explicitly that he wanted to hurt her. The trial court was then confronted with the issue of whether it had personal jurisdiction over the North Carolina resident to grant a restraining order pursuant to *Conn. Gen. Stat. § 46b-15* since he was not in Connecticut. The trial court found that pursuant to *Conn. Gen. Stat. § 52-59b(a)(2)* it did have personal jurisdiction over him because he had committed a tortious act by threatening a Connecticut resident with violence despite not having set foot in Connecticut.

**OUTCOME:** The trial court granted the application for a restraining order for six months, subject to further extension as might be allowed by law.

**LexisNexis(R) Headnotes**

*Criminal Law & Procedure > Criminal Offenses > Crimes Against Persons > Violation of Protective Orders > Application & Issuance*
[HN1] See *Conn. Gen. Stat. § 46b-15(a)*.

*Criminal Law & Procedure > Criminal Offenses > Crimes Against Persons > Violation of Protective Orders > Application & Issuance*
[HN2] See *Conn. Gen. Stat. § 46b-15(b)*.

*Criminal Law & Procedure > Criminal Offenses > Crimes Against Persons > Violation of Protective Orders > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Crimes Against Persons > Violation of Protective Orders > Application & Issuance*
[HN3] See *Conn. Gen. Stat. § 46b-15(c),(d)*.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > General Overview*
*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Crimes Against Persons > Violation of Protective Orders > General Overview*
[HN4] An application for relief from abuse pursuant to *Conn. Gen. Stat. § 46b-15* is a civil action. The Connecticut restraining order statute explicitly requires a finding of personal jurisdiction for a restraining order.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Crimes Against Persons > Violation of Protective Orders > Application & Issuance*
[HN5] See *Conn. Gen. Stat. § 46b-15(e)*.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits*
*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Long-Arm Jurisdiction*
[HN6] In determining whether personal jurisdiction can be exercised over a nonresident defendant, a court must first decide whether the applicable state long-arm statute authorizes the assertion of jurisdiction over the defendant. If the statutory requirements are met, its second obligation is then to decide whether the exercise of jurisdiction over the defendant would violate constitutional principles of due process.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Long-Arm Jurisdiction*
*Torts > Intentional Torts > General Overview*
[HN7] See *Conn. Gen. Stat. § 52-59b*.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Long-Arm Jurisdiction*
*Torts > Intentional Torts > General Overview*
[HN8] Under *Conn. Gen. Stat. § 52-59b(a)(2)*, a court can exercise personal jurisdiction over a nonresident individual who "commits a tortious act" within Connecticut. Several Connecticut courts have held that a nonresident "commits a tortious act" within Connecticut for purposes of *Conn. Gen. Stat. § 52-59b(a)(2)* by sending a communication whose content may be considered tortious directly into Connecticut.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Long-Arm Jurisdiction*
*Torts > Intentional Torts > General Overview*
[HN9] A nonresident defendant does not need to be physically present in Connecticut at the time of the commission of the alleged tortious act for him to have committed a tortious act within Connecticut for purposes of *Conn. Gen. Stat. § 52-59b(a)(2)*.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > General Overview*
*Communications Law > Related Legal Issues > Electronic Publishing*
[HN10] An internet posting is not "sent" anywhere in particular, but rather can be accessed from anywhere in the world. There is no Connecticut authority addressing the exercise of personal jurisdiction over nonresident individuals premised upon internet postings. Courts in other jurisdictions, however, when confronted with jurisdictional questions in the context of posting messages upon a listserve or newsgroup, have concluded that the mere posting of messages upon such an open forum by a resident of one state that could be read in a second state is not sufficient to confer jurisdiction upon the latter.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > General Overview*
*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits*
*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Long-Arm Jurisdiction*
*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Minimum Contacts*
[HN11] Where *Conn. Gen. Stat. § 52-59b(a)(2)* permits the exercise personal jurisdiction over a defendant, a court must next determine whether the exercise of jurisdiction over the defendant would violate constitutional principles of due process. The constitutional due process standard requires that, in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > General Overview*
*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits*
*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Long-Arm Jurisdiction*
*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Minimum Contacts*

[HN12] The due process test for personal jurisdiction has two related components: the "minimum contacts" inquiry and the "reasonableness" inquiry. The court must first determine whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction. The twin touchstones of due process analysis under the minimum contacts doctrine are foreseeability and fairness. The foreseeability that is critical to due process analysis is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there. Whether sufficient minimum contacts exist for a court to have jurisdiction is clearly dependent on the facts of each particular case. Once minimum contacts have been established, the second stage of the due process inquiry asks whether the assertion of personal jurisdiction comports with traditional notions of fair play and substantial justice, that is, whether it is reasonable under the circumstances of the particular case.

**JUDGES:** [*1] STEPHEN F. FRAZZINI, JUDGE OF THE SUPERIOR COURT.

**OPINION BY:** STEPHEN F. FRAZZINI

**OPINION**

*Memorandum of Decision Re Application for Restraining Order*

The internet has transformed our ways of communicating and sharing information, but content on the internet that some find offensive or harmful has also created new and challenging issues. Everyday the news brings reports about users posting controversial or disturbing content on social networking web sites such as MySpace, Facebook, and YouTube that are accessible worldwide. This case asks whether a person who is threatened with physical harm by an internet posting can obtain judicial relief in the form of a restraining order to protect her from the threatened harm. More precisely, it presents the issue of whether a Connecticut court has jurisdiction to enter a restraining order under *General Statutes §46b-15* [1] against a North Carolina resident who created and disseminated a recording on the internet on YouTube threatening a resident of this state with physical harm. Although courts in this state and beyond have repeatedly wrestled in recent years with jurisdictional issues in cases involving the internet, [2] the extension of jurisdiction to threatening behavior [*2] communicated over the internet on YouTube is apparently an issue of first impression. For the reasons stated below, the court finds that it has personal jurisdiction for purposes of entering such an order. The restraining order previously granted on a temporary and provisional basis is granted for six months, subject to further extension as available at law. [3]

> 1 *Section 46b-15 of the General Statutes* provides, in relevant part, as follows: [HN1] "Any family or household member . . . who has been subjected to a continuous threat of present physical pain or physical injury by another family or household member or person in, or has recently been in, a dating relationship who has been subjected to a continuous threat of present physical pain or physical injury by the other person in such relationship may make an application to the Superior Court for relief . . ." *General Statutes §46b-15(a)*. Pursuant to *§46b-15(b)*, [HN2] "[u]pon receipt of the application the court shall order that a hearing on the application be held . . . The court, in its discretion, may make such orders as it deems appropriate for the protection of the applicant and such dependent children or other persons as the court sees [*3] fit . . . If an applicant alleges an immediate and present physical danger to the applicant, the court may issue an ex parte order granting such relief as it deems appropriate."
>
> 2 Most of these cases have involved commercial disputes in the federal courts. See, e.g., *Zippo Manufacturing Co v. Zippo Dot Com, Inc., 952 F.Sup 1119 (W.D.Pa. 1997)*, where the court described the various means through which a person or corporation might use a website for commercial purposes and how that use might be construed by a court when considering the issue of personal jurisdiction. "[T]he likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet . . . At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper . . . At the opposite end are situations where a defendant has

simply posted information on an Internet Web site which is accessible [*4] to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction . . . The middle ground is occupied by interactive sites where a user can exchange information with the host computer. In those cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." *Id., 1124.* Although acknowledging *Zippo* to be the "seminal authority regarding personal jurisdiction based upon the operation of an Internet web site," the Second Circuit Court of Appeals has cautioned that "[w]hile analyzing a defendant's conduct under the *Zippo* sliding scale of interactivity may help frame the jurisdictional inquiry in some cases, . . . it does not amount to a separate framework for analyzing internet-based jurisdiction. Instead, traditional statutory and constitutional principles remain the touchstone of the inquiry. As the *Zippo* court itself noted, personal jurisdiction analysis applies traditional principles to new situations." (Citations omitted; quotations omitted.) *Best Van Lines, Inc. v. Walker, 490 F.3d 239, 252 (2d Cir. 2007).*

3 Section 46b-15 of the General Statutes [*5] allows extensions of the initial restraining order for additional periods, as set forth below: [HN3] "(c) Every order of the court made in accordance with this section shall contain the following language: 'This order may be extended by the court beyond six months . . .' (d) No order of the court shall exceed six months, except that an order may be extended by the court upon motion of the applicant for such additional time as the court deems necessary. If the respondent has not appeared upon the initial application, service of a motion to extend an order may be made by first-class mail directed to the respondent at his or her last known address."

On September 16, 2008, the applicant, Stacy Rios, filed an application for a restraining order under *General Statutes §46b-15* against Christopher Fergusan, a resident of North Carolina who is the father of her four-year-old child. An ex parte restraining was granted by the court, which scheduled a hearing for two weeks hence. On September 30, the applicant appeared for the hearing, but, no service having been made on respondent, the court heard brief testimony and then continued the ex parte order for three weeks to give Rios additional time to serve [*6] Fergusan. She appeared again on October 21, when she presented satisfactory proof of personal service on Fergusan in North Carolina by a process server authorized to serve him there although he was not in court that day. The court then heard additional evidence and found that Fergusan had subjected Rios to a continuing threat of present physical harm to her. The evidence established that Fergusan has threatened her with physical violence in the past and that she resided for a while in North Carolina but left there and returned to Connecticut earlier this year, after which he posted a video on YouTube in which he brandished a firearm in a rap song in which he says that he wants to hurt the applicant, to shoot her, and to "put her face on the dirt until she can't breathe no more." He temporarily took the video off YouTube but then placed another video there that again threatened her. Concerned about the court's jurisdiction over Fergusan, however, the court granted the restraining order application for an additional unspecified temporary interval while the court considered the issue.

[HN4] An application for relief from abuse pursuant to *§46b-15* is a civil action. Although the courts of several [*7] states have held that restraining orders may be issued without personal jurisdiction over a respondent, [4] the Connecticut restraining order statute explicitly requires a finding of personal jurisdiction for such an order. *Section 46b-15(e)* provides that [HN5] "[e]very order of the court made in accordance with this section after notice and hearing shall contain the following language: 'This court had *jurisdiction over the parties* and the subject matter when it issued this protection order.'" (Emphasis added.) The court, therefore, must have personal jurisdiction over the respondent in order to issue a restraining order after notice and hearing. [HN6] In determining whether personal jurisdiction can be exercised over a nonresident defendant, "[the court] must first decide whether the applicable state long-arm statute authorizes the assertion of jurisdiction over the [defendant]. If the statutory requirements [are] met, its second obligation [is] then to decide whether the exercise of jurisdiction over the [defendant] would violate constitutional principles of due process." (Internal quotation marks omitted.) *Cogswell v. American Transit Ins. Co., 282 Conn. 505, 514-15, 923 A.2d 638 (2007).*

4 See *Bartsch v. Bartsch, 636 N.W.2d 3 (Iowa 2001);* [*8] *Spencer v. Spencer, 191 S.W.3d 14 (Ky.Ct.App. 2006); Caplan v. Donovan, 450 Mass. 463, 879 N.E.2d 117,* cert. denied *128 S.Ct. 2088, 170 L.Ed.2d 817 (2008); Shah v. Shah, 184 N.J. 125, 875 A.2d 931 (2005).* The Iowa Supreme Court and the Massachusetts Supreme Court have applied a "status exception," which allows a court to adjudicate "matters involving the status of the relationship between multiple parties even where personal jurisdiction over all the par-

ties is not established"; *Caplan v. Donovan, supra, 450 Mass. 468*; as in the case of marriage dissolutions, tote entry of a protective order. See *Bartsch v. Bartsch, supra, 636 N.W.2d 3*; *Caplan v. Donovan, supra, 463*. In *Bartsch v. Bartsch, supra, 10*, the court held that a protective order preserves the protected status afforded plaintiffs under the state's domestic abuse statute and that "[i]f a court may constitutionally make orders affecting marriage, custody, and parental rights without personal jurisdiction of a defendant, it certainly should be able to do what the court did here--enter an order protecting a resident . . . from abuse." Similarly in *Caplan v. Donovan, supra, 469*, the court held that "[a] court order that prohibits [*9] the defendant from abusing the plaintiff and orders him to have no contact with and to stay away from her . . . serves a role analogous to custody or marital determinations, except that the order focuses on the plaintiffs protected status rather than her marital or parental status."

In *Shah v. Shah, supra, 184 N.J. 125*, the New Jersey Supreme Court reached a similar conclusion but on different grounds. It held that a court does not need personal jurisdiction to issue a temporary restraining order against a nonresident defendant as long as the order does not require the defendant to take any action "[b]ecause the issuance of a prohibitory order does not implicate any of defendant's substantive rights . . ." *Id, 138*. A prohibitory order, the court explained, "is addressed not to the defendant but to the victim: it provides the victim the very protection the law specifically allows, and it prohibits the defendant from engaging in behavior already specifically outlawed." *Id.* The court further held that since a final restraining order by New Jersey statute includes such affirmative relief as the surrendering of firearms it cannot be entered in the absence of personal jurisdiction over the [*10] defendant. *Id, 140*. Finding "the distinction made by New Jersey's highest court between prohibitory and affirmative orders [to represent] the fairest balance between protecting the due process rights of the nonresident defendant and the state's clearly-articulated interest in protecting the plaintiff . . . against domestic violence," the Kentucky Appellate Court likewise held that a protective order can enter against a nonresident defendant over whom the court does not have personal jurisdiction provided the order does not compel any action by the defendant. *Spencer v. Spencer, supra, 191 S.W.3d 19*.

Although the Iowa and Massachusetts Supreme Courts did not base their holdings on the distinction between prohibitory and affirmative orders as the New Jersey Supreme Court and Kentucky Appellate Court did, they both acknowledged that due process prohibits an abuse prevention order issued without personal jurisdiction from imposing any personal obligations on the defendant. *Bartsch v. Bartsch, supra, 636 N.W.2d 10* ("[t]he order here does not attempt to impose a personal judgment against the defendant"); *Caplan v. Donovan, supra, 450 Mass. 470* ("[d]ue process considerations do impose limits [*11] . . . '[i]t has long been the rule that a valid judgment imposing a personal obligation . . . may be entered only by a court having jurisdiction over the person of the defendant'"). Both the *Bartsch* and *Caplan* courts also held that due process requires that the defendant receive notice and an opportunity to be heard. *Bartsch v. Bartsch, supra, 9; Caplan v. Donovan, supra, 470*.

The Connecticut long arm statute that is applicable to §46b-15 is codified in §52-59b, which provides in relevant part:[HN7]

> (a) As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual . . ., who in person or through an agent: (1) Transacts any business within the state; (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; (3) commits a tortious act outside the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if such person or agent (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue [*12] from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; (4) owns, uses or possesses any real property situated within the state; or (5) uses a computer . . ., or a computer network . . . located within the state.

The portions of §52-59b most likely to be applicable in the present case are *subsections (a)(2)* - committing a tortious act within the state, and *(a)(3)* - engaging in a persistent course of conduct. [5] [HN8] Under *§52-59b(a)(2)* the court can exercise personal jurisdiction over a nonresident individual who "commits a tortious act within the state." Several Connecticut courts have held that a nonresident "commits a tortious act within the state" for purposes of *§52-59b(a)(2)* by sending a communication whose content may be considered tortious directly into Connecticut. See, e.g., *Oppenheim v. Erwin, Superior Court, judicial district of New Haven, Docket No. CV 00 0441611 (April 9, 2001, Licari, J.) (29 Conn. L. Rptr. 562, 2001 Conn Super LEXIS 1014)* (allegation that the defendant sent threatening letter to plaintiff in Connecticut satisfies *§52-59b(a)(2)*); [*13] *Horniatko v. Riverfront Ass'n., Superior Court, judicial district of Hartford, Docket No. CV 044000332 (June 21, 2005, Shapiro, J.) (39 Conn. L. Rptr. 566, 2005 Conn Super. LEXIS 1534)* (allegation that defendant made solicitation phone calls to plaintiffs in Connecticut satisfies *§52-59b(a)(2)*); *Doe v Oliver, Superior Court, judicial district of Waterbury, Docket No. CV 990151679 (May 19, 2003, Dubay, J.) (34 Conn. L. Rptr. 634, 2003 Conn Super LEXIS 1498)* (allegation that defendant sent e-mail containing offensive statements to recipients in Connecticut satisfies *§52-59b(a)(2)*). [6]

> 5 *Subsection (a)(1)* is inapplicable because there is no allegation that Fergusan has transacted business in Connecticut. *Subsection (a)(3)* is also probably inapplicable, even though Fergusan arguably committed a tortious act outside the state causing injury to a person in the state, because there is no allegation that he regularly does or solicits business, derives substantial revenue from goods used or consumed or services rendered in Connecticut, or either expects or should reasonably expect that his tortious acts would have consequences in Connecticut and derives substantial revenue from interstate or international commerce. The one portion of *subsection (a)(3)* [*14] that is possibly applicable is the provision that he "engages in any other persistent course of conduct." *Subsections (a)(4)* and *(a)(5)* are likewise inapplicable because there is no allegation that Fergusan owns, possesses, or uses any real property in Connecticut or that either has used a computer or a computer network in Connecticut.
>
> 6 Some trial courts have held, however, that for the court to exercise personal jurisdiction pursuant to *§52-59b(a)(2)*, "[r]egardless of where the harm is suffered . . . the defendant must be physically present within the state at the time of commission [of the alleged tortious act]." See, e.g., *N.E. Contract Packers v. Beverage Services, Superior Court, judicial district of Waterbury, Docket No. CV 100039 (June 17, 1992, Gaffney, J.) (6 Conn. L. Rptr. 582, 584, 1992 Conn. Super. LEXIS 1811)* (finding *§52-59b(a)(2)* inapplicable because co-defendant made phone call from Florida); see also *Abrams v. Riding High Dude Ranch, Superior Court, judicial district of Fairfield, Docket No. CV 97 0345046, 1997 Conn. Super. LEXIS 3345 (November 21, 1997, Skolnick, J.)* (declining to exercise personal jurisdiction under *§52-59b(a)(2)* because "the plaintiffs offered no proof that [the defendant] was physically present in Connecticut [*15] when the alleged misrepresentation was committed"); *Whitney v. Taplin, Superior Court, judicial district of Fairfield, Docket No. CV 97339190 (November 6, 1997, Stodolink, J.) (20 Conn. L. Rptr. 610, 1997 Conn. Super LEXIS 2987)* (exercising personal jurisdiction pursuant to *§52-59b(a)(2)* because the defendant was physically present in Connecticut when he made the alleged misrepresentations). These cases have based their interpretation of *§52-59b(a)(2)* on the judicial interpretation given to New York's similar long arm statute. "Since *Feathers v. McLucas, 15 N.Y.2d 443, 446-64, [209 N.E.2d 68, 261 N.YS.2d 8] (1965)*, the New York provision has been interpreted to mean that a nonresident does not 'commit a tortious act within the state' unless he is physically present in the state while the tort is committed." *Cody v Ward, 954 F.Sup 43, 46 (D Conn 1997)*. The court in *N.E. Contract Packers v. Beverage Services, supra, 6 Conn. L. Rptr. 583*, adopted this interpretation of *§52-59b(a)(2)* in reasoning that "[s]ince [Connecticut's] statute was enacted by the legislature using the New York statute as a model, judicial interpretation given to the New York statute has some significance." In view of *Knipple v. Viking Communications Ltd., 236 Conn 602, 674 A.2d 426 (1996)*, [*16] discussed in the text above, however, this court concludes that the Connecticut Supreme Court would not adopt the view of these cases.

In *Knipple v. Viking Communications Ltd., 236 Conn. 602, 674 A.2d 426 (1996)*, the Supreme Court held that "[f]alse representations entering Connecticut by wire or mail constitute tortious conduct in Connecticut under §33-411(c)(4)." [7] "Although in that case the court was addressing the issue of personal jurisdiction under . . . [General Statutes] §33-411(c)(4), it cited with approval *David v. Weitzman, 677 F.Sup 95, 98 (D.Conn. 1987)*, in which the District Court held that the transmission of fraudulent misrepresentations into Connecticut by mail or telephone was 'tortious conduct in Connecticut suffi-

cient to establish personal jurisdiction under Connecticut's long arm statute[s], §§33-411(c)(4) and *52-59b(a)(2).*" (Emphasis in original.) *Oppenheim v Erwin, supra,* 29 Conn. L. Rptr. 564, 2001 Conn. Super LEXIS 1014. The Supreme Court's citation of *David v Weitzman, supra,* 677 F Sup 95, indicates that it would probably construe *§52-59b(a)(2)* the same way that it has construed §33-411(c)(4). See *Oppenheim v Erwin, supra,* 29 Conn. L. Rptr. 564, 2001 Conn. Super LEXIS 1014; *Cody v Ward, supra,* 954 F Sup 46. [*17] This court concludes, therefore, that [HN9] a nonresident defendant does not need to be physically present in Connecticut at the time of the commission of the alleged tortious act for him to have "commit[ted] a tortious act within the state" for purposes of *§52-59b(a)(2).*

> 7 Section 33-411 (now *§33-929*) is Connecticut's long arm statute governing jurisdiction over foreign corporations. See *General Statutes §33-929.* Subsection (c)(4) (now *(f)(4)*) contains nearly identical language to *§52-59b(a)(2);* it provides in relevant part: "Every foreign corporation shall be subject to suit in this state . . . on any cause of action arising as follows . . . out of tortious conduct in this state

Unlike the letter or email cases, however, [HN10] "an internet *posting* . . . is not 'sent' anywhere in particular, but rather can be accessed from anywhere in the world." (Emphasis added.) *Dailey v Popma,* 662 S.E.2d 12, 19 (N.C.Ct.App. 2008). There is no Connecticut authority addressing the exercise of personal jurisdiction over nonresident individuals premised upon internet postings. "Courts in other jurisdictions, [however], when confronted with jurisdictional questions in the context of posting messages upon . . ., a [*18] listserve or newsgroup, have concluded that the mere posting of messages upon such an open forum by a resident of one state that could be read in a second state was not sufficient to confer jurisdiction upon the latter." *Goldhaber v Kohlenberg,* 395 N.J. Super. 380, 928 A.2d 948, 956 (N.J Super Ct App Div 2007).

In *Young v New Haven Advocate,* 315 F.3d 256 (4th Cir. 2002), cert. denied, 538 U.S. 1035, 155 L. Ed. 2d 1065, 123 S. Ct. 2092 (2003), the court considered this issue in an action by the warden of a Virgina prison that by contract housed Connecticut prisoners to alleviate overcrowding in this state. The warden claimed that certain Connecticut newspapers had posted libelous articles on their websites. The court examined "whether the newspapers manifested an intent to direct their website content--which included certain articles discussing conditions in a Virginia prison--to a Virginia audience." *Id,* 263. It held that merely placing information on the internet "is not sufficient by itself to subject that person to personal jurisdiction in each State in which the information is accessed."

> Otherwise, a person placing information on the Internet would be subject to personal jurisdiction in every State, [*19] and the traditional due process principles governing a State's jurisdiction over persons outside of its borders would be subverted. [T]he fact that the newspapers' websites could be accessed anywhere, including Virginia, does not by itself demonstrate that the newspapers were intentionally directing their website content to a Virginia audience. Something more than posting and accessibility is needed to indicate that the [newspapers] purposefully (albeit electronically) directed [their] activity in a substantial way to the forum state. The newspapers must, though the Internet postings, manifest an intent to target and focus on Virginia readers.

*Id.* (Quotations omitted; citations omitted.) This is the same standard adopted by our Supreme Court in *Thomason v Chemical Bank,* 234 Conn. 281, 297-98, 661 A.2d 595 (1995), to find personal jurisdiction under General Statutes §33-411(c) over a New York bank being sued by nine Connecticut residents who were the beneficiaries of a trust managed by the bank for alleged violation of its trust obligations:

> At the time the trustee bank placed the advertisements, therefore, it was foreseeable that one or more Connecticut residents would respond to the [*20] advertisements by opening a trust account with the trustee bank and thereafter would sue in Connecticut for the misadministration of that trust

*Id,* 299.

As the *Young* court noted, moreover, premising personal jurisdiction on "[i]nternet activity directed at [the forum state] and causing injury that gives rise to a potential claim cognizable in [that state] . . . is consistent with the [standard] used by the Supreme Court in *Calder v Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984)." *Young v New Haven Advocate, supra,* 315 F.3d 262. In *Calder* a California actress brought suit there against a reporter and an editor in Florida who wrote and edited in that state a National Enquirer article claiming that the actress had a drinking problem. The Supreme Court held that California could exercise personal juris-

diction over the Florida residents because "California [was] the focal point both of the story and of the harm suffered." *Calder, 465 U.S. at 789.* The writers' "actions were expressly aimed at California," the Court said, "[a]nd they knew that the brunt of [the potentially devastating] injury would be felt by [the actress] in the State in which she lives and works and in which [*21] the *National Enquirer* has its largest circulation." *Calder, 465 U.S. at 789-90.*

The evidence establishes in this case that Fergusan's YouTube video is more than the mere posting of a message upon an open internet forum by a resident of one state that could be seen by someone in a second state. The evidence shows here that he specifically targeted his message at Bios by threatening her life and safety. Several Connecticut trial courts, following the logic of *Thomason v. Chemical Bank,* have specifically decided the issue of personal jurisdiction against foreign corporations premised upon their internet postings based on whether the corporation had specifically targeted Connecticut residents. [8] The court concludes that the evidence here establishes a sufficient basis to find personal jurisdiction under *§52-59b(a)(2).* By specifically targeting a Connecticut resident with its threats to the applicant's life and safety and thereby creating in her a fear for her wellbeing, the YouTube video created by the respondent can be deemed a tortious act committed in this state.

   8 Several. See, e.g., *RJM Aviation Associates v London Aircraft Service Center, Inc., Superior Court, judicial district of New Britain, Docket No. CV 06 5000572 (June 17, 2008, Gilligan, J.) (45 Conn. L. Rptr. 759, 762, 2008 Conn. Super. LEXIS 1560)* [*22] ("the missing element in the present case is any evidence that the defendant's internet website specifically targeted Connecticut customers"); *Marcoccia v Post, Superior Court, judicial district of Fairfield, Docket No. CV 05 5000471 (May 20, 2008, Hiller, J.) (45 Conn L. Rptr. 572, 574, 2008 Conn Super LEXIS 1298)* ("due to a lack of evidence of interactivity, the web site offers no grounds for the grant of personal jurisdiction").

[HN11] Since *§52-59b(a)(2)* permits the exercise personal jurisdiction over Fergusan, the court must next determine "whether the exercise of jurisdiction over the [defendant] would violate constitutional principles of due process." (Internal quotation marks omitted.) *Cogswell v. American Transit Ins. Co., supra, 282 Conn. 515.* "As articulated in the seminal case of *International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945),* the constitutional due process standard requires that, 'in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of [*23] the suit does not offend traditional notions of fair play and substantial justice.'" ' *Cogswell v. American Transit Ins. Co., supra, 282 Conn. 523.*

   9 In *Zippo Manufacturing Co v. Zippo Dot Com, Inc., supra, 952 F.Sup. 1122-23,* the court aptly explained the logic underlying due process analysis: "A three-pronged test has emerged for determining whether the exercise of specific personal jurisdiction over a non-resident defendant is appropriate: (1) the defendant must have sufficient "minimum contacts" with the forum state, (2) the claim asserted against the defendant must arise out of those contacts, and (3) the exercise of jurisdiction must be reasonable. The "Constitutional touchstone" of the minimum contacts analysis is embodied in the first prong, "whether the defendant purposefully established" contacts with the forum state. *Burger King Corp. v Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183-84, 85 L.Ed.2d 528 (1985)* (citing *International Shoe Co v. Washington, 326 U.S. 310, 319, 66 S.Ct. 154, 159-60, 90 L.Ed. 95 (1945)).* Defendants who " 'reach out beyond one state' and create continuing relationships and obligations with the citizens of another state are subject to regulation [*24] and sanctions in the other State for consequences of their actions." *Id.* (citing *Travelers Health Ass'n v. Virginia, 339 U.S. 643, 647, 70 S.Ct. 927, 929, 94 L.Ed. 1154 (1950)).* "[T]he foreseeability that is critical to the due process analysis is . . . that the defendant's conduct and connection with the forum State are such that he should reasonably expect to be haled into court there." *World-Wide Volkswagen Corp v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).* This protects defendants from being forced to answer for theft actions in a foreign jurisdiction based on "random, fortuitous or attenuated" contacts. *Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984).* "Jurisdiction is proper, however, where contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State." *Burger King, 411 U.S. at 475, 105 S.Ct. at 2183-84* (citing *McGee v. International Life Insurance Co., 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957))."*

[HN12] "The due process test for personal jurisdiction has two related components: the 'minimum contacts' inquiry and the 'reasonableness' [*25] inquiry. The court must first determine whether the defendant has sufficient

contacts with the forum state to justify the court's exercise of personal jurisdiction." (Internal quotation marks omitted.) *Id., 524.* "The twin touchstones of due process analysis under the minimum contacts doctrine are foreseeability and fairness. '[T]he foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" *United States Trust Co. v. Bohart, 197 Conn. 34, 41, 495 A.2d 1034 (1985),* citing *World-Wide Volkswagen Corporation v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).* "Whether sufficient minimum contacts exist for a court to have jurisdiction is clearly dependent on the facts of each particular case." *Standard Tallow Corp. v. Jowdy, 190 Conn. 48, 52, 459 A.2d 503 (1983).* "Once minimum contacts have been established, [t]he second stage of the due process inquiry asks whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice'--that is, whether it is reasonable under the circumstances [*26] of the particular case." (Internal quotation marks omitted.) *Cogswell v. American Transit Ins. Co., supra, 282 Conn. 525.*

Even though there is no allegation that Fergusan ever stepped foot in Connecticut, the court can exercise personal jurisdiction over him without violating the principles of due process. Rios's application for a restraining order arises from Fergusan's purposeful action of creating and posting a YouTube video that threatens her life and safety. He posted the video on an internet medium that can be disseminated worldwide, but the content of the video establishes that he was purposefully directing it to the applicant in Connecticut. In this context, his posting of the video constitutes sufficient "minimum contacts" to justify the exercise of personal jurisdiction over him. See *Calder v. Jones, 465 U.S. 783, 789, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984)* ("[j]urisdiction over petitioners in California is proper because of their intentional conduct in Florida calculated to cause injury to respondent in California"). Moreover, the exercise of personal jurisdiction over him does not offend traditional notions of fairness. It should have been foreseeable to Fergusan that by [*27] placing a video on YouTube threatening Bios in Connecticut he could be haled into this state to answer an application seeking a restraining order against him.

Furthermore, Connecticut has a strong interest in protecting its citizens from domestic abuse, and the plaintiff has an obvious interest in obtaining convenient and effective relief in Connecticut. If the court cannot exercise personal jurisdiction in this case, "the unpalatable choices remaining are either to require the victim of abuse to return to the State in which the abuse occurred in order to obtain an effective abuse prevention order or, alternatively, to wait for the abuser to follow the victim to [Connecticut] and, in the event of a new incident of abuse, seek an order from a [Connecticut] court." *Caplan v. Donovan, supra, 450 Mass. 469-70.* Accordingly, the plaintiff's interest in obtaining and the state's interest in providing relief and protection from domestic abuse outweigh any burden Fergusan may face in defending this case in Connecticut. Exercising personal jurisdiction over him is neither unjust nor otherwise violates the constitutional principles of due process. The court therefore concludes that it has jurisdiction [*28] over the respondent to enter a restraining order protecting the applicant. The restraining order previously entered on a temporary basis is granted for six months, subject to further extension as may be allowed by law.

BY THE COURT

STEPHEN F. FRAZZINI

JUDGE OF THE SUPERIOR COURT