# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DOE I, and DOE II, | : | |
|     Plaintiffs, | : | |
| | : | |
| v. | : | 3:07-cv-909 (CFD) |
| | : | |
| ANTHONY CIOLLI et al. | : | |
|     Defendants. | : | |

### RULING ON MOTION TO DISMISS

    This action was brought by Doe I and Doe II, both female students at Yale Law School, against individuals using thirty-nine different pseudonymous names to post on a law school admissions website named AutoAdmit.com ("AutoAdmit"). The plaintiffs have identified Matthew Ryan ("Ryan") as the person who posted under the pseudonymous name ":D". Ryan has filed a motion to dismiss under Fed. R. Civ. P. 12(b)(1) & (2) asserting the Court lacks subject matter and personal jurisdiction.

**I.    Background**

    AutoAdmit is an internet discussion board on which participants post comments and information about colleges and graduate schools, including law schools. Individuals registering with AutoAdmit must provide a login name, password, and email address, but need not provide their real name. Registered users can post messages to the site's many discussion boards. Those messages may then be viewed by any person with access to the internet, whether or not they are registered with AutoAdmit.

    The plaintiffs allege that they were the targets of defamatory, threatening, and harassing statements posted on AutoAdmit from 2005 to 2007 that caused them substantial psychological

and economic injury. Ryan was registered with AutoAdmit under the username ":D" and posted some of these messages about Doe I and Doe II. The plaintiffs further allege that Ryan and others who posted messages about them on AutoAdmit were aware that they were students at Yale Law School or would soon enroll at Yale Law School.

In their Second Amended Complaint, the plaintiffs assert the following causes of action: (1) Copyright Infringement, 17 U.S.C. § 501; (2) appropriation of another's name or likeness; (3) unreasonable publicity given to another's life; (4) publicity that places another in a false light before the public; (5) intentional infliction of emotional distress; (6) negligent infliction of emotional distress; and (7) libel. The copyright claim in Count One is the only claim arising under federal law. That claim alleges that Doe II owns valid copyrights in her photographs, that she has registered these copyrights with the United States Copyright Office, and that one or more of the defendants have, without her authorization, copied or otherwise reproduced the copyrighted photographs in postings on the AutoAdmit website.

Doe I and Doe II were at all relevant times citizens of Connecticut. Ryan is a citizen of Texas. The identities and citizenship of numerous other pseudonymous defendants are unknown.

## II. Discussion

### A. Subject Matter Jurisdiction

Plaintiffs invoke the jurisdiction of this Court pursuant to 28 U.S.C. §§ 1331 and 1367, asserting the copyright claim as the federal question and supplemental jurisdiction over the state law claims. Plaintiffs also maintain diversity jurisdiction exists under 28 U.S.C. § 1332, as the plaintiffs are citizens of Connecticut and Ryan is a citizen of Texas.

#### 1. Federal Question and Supplemental Jurisdiction

Ryan argues that Doe II's copyright claim is insufficient to support the Court's exercise of subject matter jurisdiction because first, it is only raised by Doe II, not Doe I, and second, it is not directed at Ryan's own alleged conduct,[1] but at two other defendants, one of whom has already settled and been dismissed from the case.[2]

This Court has jurisdiction over Doe II's copyright claim arising under federal law. Moreover, as this Court previously found, all of the plaintiffs' claims arise from the same common nucleus of operative fact, and therefore the Court has jurisdiction over all of the claims. Doe I and Doe II v. Individuals, 561 F. Supp. 2d 249, 253 (D. Conn. 2008) (CFD) ("[T]his Court has original jurisdiction over 'all civil actions arising under the . . . laws . . . of the United States;' 28 U.S.C. § 1331; and may exercise supplemental jurisdiction over state law claims 'that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.' 28 U.S.C. § 1367(a). Thus, since the Court properly has jurisdiction over the copyright claim, which arises from the same case or controversy as the various state law tort and statutory claims, the Court also has subject matter jurisdiction as these state law claims, which arise from a 'common nucleus of operative fact' namely, the alleged harassment of Doe I and Doe II on AutoAdmit.com and other web sites."); see also Promisel v. First Am. Artificial Flowers, Inc., 943 F.2d 251, 254 (2d Cir.

---

[1] The Second Amended Complaint does not allege that Ryan copied or otherwise reproduced the photographs in which Doe II holds copyrights. Ryan testified at his deposition that he had seen on AutoAdmit a posted picture of Doe II at Yale Law School. Ryan Dep. at 55.

[2] The two defendants are identified pseudonymously in the Second Amended Complaint as "pauliewalnuts" and "kibitzer." On January 21, 2009, the plaintiffs reported a settlement with defendant "pauliewalnuts," and he was terminated as a party. Defendant "kibitzer" has yet to be identified but remains a pseudonymous defendant.

1991); Exxon Mobil Corp. v. Allapattah Services, Inc., 545 U.S. 546, 556 (2005) (discussing pendant-party jurisdiction).

2. Diversity Jurisdiction

The Court also has subject matter jurisdiction over the case based on diversity of citizenship, as the plaintiffs are citizens of Connecticut and Ryan is a citizen of Texas. See 28 U.S.C. § 1332. Ryan argues that the pseudonymous defendants defeat complete diversity because there is a risk that when any of those defendants is "unmasked," he or she could be a citizen of Connecticut.

Federal courts are divided on the question of whether the existence of unidentified or "Doe" defendants defeats diversity jurisdiction.[3] For example, the Seventh Circuit in Howell v. Tribune Entertainment Co. held that "because the existence of diversity jurisdiction cannot be determined without knowledge of every defendant's place of citizenship, 'John Doe' defendants are not permitted in federal diversity suits." 106 F.3d 215, 218 (7th Cir. 1997) (Posner, J.); see

---

[3]The disagreement stems in part from Congress' 1988 amendment to the removal statute to include the following: "For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441. Some courts have since reasoned that because Congress did not similarly amend the diversity statute, it intended that Doe defendants would preclude diversity jurisdiction under 28 U.S.C. § 1332. See, e.g., McMann v. Doe, 460 F. Supp. 2d 259, 265 (D. Mass. 2006) ("Congress's 1988 amendment simply allows cases to be removed to federal court where, because of the unknown party, there would possibly be only partial diversity. Reading amended language of § 1441 into § 1332 would accomplish the much broader result of allowing a case with only one party and only state claims to proceed initially in federal court."). Other courts, with which this Court agrees, have reasoned that Congress in amending the removal statute acted specifically to overturn Bryant v. Ford Motor Co., 844 F.2d 602, 605 (9th Cir. 1987) (holding that the presence of Doe defendants made the case unremovable by destroying diversity), and did not intend a different result as to whether Doe defendants destroy diversity depending on whether a case is brought to federal court originally under 28 U.S.C. § 1332 or by removal under 28 U.S.C. § 1441. See, e.g., Macheras v. Ctr. Art Galleries-Haw., 776 F. Supp. 1436, 1439-40 (D. Haw. 1991).

also McMann v. Doe, 460 F. Supp. 2d 259, 264-65 (D. Mass. 2006) (holding there was not diversity jurisdiction in a case in which the residency of sole defendant, "John Doe," was unknown). On the other hand, a federal district court in Hawaii held that the existence of Doe defendants does not destroy diversity jurisdiction. See Macheras v. Ctr. Art Galleries-Haw., 776 F. Supp. 1436, 1440 (D. Haw. 1991) ("The presence of fictitious defendants neither creates a presumption that diversity is destroyed, nor requires Doe defendants to be named, abandoned, or dismissed in order for a diversity-based claim to be brought in federal court under § 1332.") (internal quotation marks omitted).

Although the Second Circuit has not ruled on this question,[4] district courts in the Circuit have held that "the mere inclusion of John Doe defendants does not destroy complete diversity" until "it is later found that one or more of the unknown defendants is domiciled such that there is not complete diversity." Merrill Lynch Bus. Fin. Serv. Inc. v. Heritage Packaging Corp., No. 06-CV-3951, 2007 WL 2815741, at *3 (E.D.N.Y. Sept. 25, 2007); see also W. Weber Co., Inc. v. Kosack, No. 96-CV-9581, 1997 WL 666246, at *2 (S.D.N.Y. Oct. 24, 1997) (adopting Macheras, 776 F. Supp. at 1439). This Court agrees with the holdings of Macheras, Merrill Lynch, and Weber, and holds that the presence of pseudonymous defendants in this case does not destroy complete diversity. At this juncture, at least under the circumstances of this case, where the plaintiffs were allegedly harmed by anonymous defendants through no action of their own,

---

[4]The plaintiffs argue the Second Circuit approved of Doe defendants in diversity cases by negative implication in City of New York v. Smoke-Spirits.com, Inc., 541 F.3d 425, 458 (2d Cir. 2008), in which the court applied diversity jurisdiction to hear state-law claims in a case including one hundred Doe defendants. The Court declines to rely on Smoke-Spirits because the question of whether Doe defendants defeat diversity jurisdiction does not appear to have been squarely presented to the Court of Appeals.

they should not suffer from the defendants' "Doe" status. Should the Court discover at a future stage in the litigation that a pseudonymous defendant is not diverse from the plaintiffs, it may dismiss that non-diverse party to preserve diversity jurisdiction. See Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 571 (2004) (holding that courts may cure a jurisdictional defect by dismissing a dispensable nondiverse party); see also Howell, 106 F.3d at 218 ("Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, authorizes us, however, to restore complete diversity, even when the case is on appeal and diversity was incomplete in the district court, by dropping a party whose presence is unnecessary to the proper resolution of the controversy.").

### B. Personal Jurisdiction

"When a defendant challenges personal jurisdiction in a motion to dismiss, the plaintiff bears the burden of proving that the court has jurisdiction over the defendant." Amerbelle Corp. v. Hommel, 272 F. Supp. 2d 189, 192 (D. Conn. 2003) (citing Metro. Life Ins. v. Robertson-Ceco Corp., 84 F.3d 560, 566-67 (2d Cir. 1996)); Ensign-Bickford Co. v. ICI Explosives USA, Inc., 817 F. Supp. 1018, 1026 (D. Conn. 1993). "A plaintiff facing a Fed. R. Civ. P. 12(b)(2) motion to dismiss made before any discovery need only allege facts constituting a prima facie showing of personal jurisdiction. Moreover, we construe the pleadings and affidavits in plaintiff's favor at this early stage." PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1109 (2d Cir. 1997) (internal citations omitted); see also Jarrow Formulas, Inc. v. International Nutrition Co., 175 F. Supp. 2d 296, 300 (D. Conn. 2001). In a diversity or federal question case, personal jurisdiction is determined by the law of the state in which the district court sits. See Bensusan Restaurant Corp. v. King, 126 F.3d 25, 27 (2d Cir. 1997); Arrowsmith v. United Press

Int'l, 320 F.2d 219, 231 (2d Cir. 1963). A defendant's conduct is sufficient for the exercise of personal jurisdiction if (1) the conduct satisfies the requirements of the Connecticut long-arm statute, and (2) the conduct satisfies the "minimum contacts" requirement of the Due Process Clause of the Fourteenth Amendment. Inset Sys., Inc. v. Instruction Set, Inc., 937 F.Supp. 161, 163 (D. Conn. 1996); see also World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980); International Shoe Co. v. Washington, 326 U.S. 310, 316, (1945).

Ryan asserts that he has never been to Connecticut; does not do business in Connecticut; has never sold goods or services into Connecticut; does not own any property in Connecticut; does not operate any websites in Connecticut; has never knowingly posted any information on websites located in Connecticut; has not directed his internet activity to persons in Connecticut; and has never made statements on websites which he anticipated would be particularly reviewed by or affect persons in Connecticut. Ryan Aff. at 1-2.

### 1. Connecticut Long-Arm Statute

Connecticut General Statutes § 52-59b(a) governs the exercise of jurisdiction over nonresidents of the state. Under that statute, personal jurisdiction over a nonresident individual exists if the individual or his agent

> (1) Transacts any business within the state;
> (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act;
> (3) commits a tortious act outside the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if such person or agent (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce;
> (4) owns, uses or possesses any real property situated within the state; or

(5) uses a computer . . . or a computer network . . . located within the state.

Conn. Gen. Stat. § 52-59b(a). The plaintiffs argue that the Court has personal jurisdiction over Ryan under § 52-59b(a) because Ryan has committed a tortious act within Connecticut, as his tortious conduct was specifically targeted at victims he knew to be in Connecticut.

Connecticut courts have held that § 52-59b(a)(2) is satisfied when a nonresident commits a tortious act within the state by sending a tortious communication into the state. For example, the Connecticut Superior Court in Oppenheim v. Erwin, 29 Conn. L. Rptr. 562 (Conn. Super. Ct. 2001), held that § 52-59b(a)(2) was satisfied when the plaintiff alleged that the defendant sent a letter to the plaintiff in Connecticut to intentionally inflict emotional distress on her. In Doe v. Oliver, the Connecticut Superior Court held that § 52-59b(a)(2) was satisfied when the plaintiff alleged that the defendant sent email containing offensive statements to recipients in Connecticut. 34 Conn. L. Rptr. 634 (Conn. Super. Ct. 2003). See also David v. Weitzman, 677 F. Supp. 95, 98 (D. Conn. 1987) (holding that the transmission of fraudulent misrepresentations into Connecticut by mail or telephone was tortious conduct in Connecticut sufficient to establish personal jurisdiction under Connecticut's long-arm statute, §§ 33-411(c)(4) and 52-59b(a)(2)); Knipple v. Viking Commmc'ns, 236 Conn. 606, 611 (1996) ("False representations entering Connecticut by wire or mail constitute tortious conduct in Connecticut under § 33-411(c)(4) . . . because the alleged misrepresentations . . . would have been made by way of communications sent to and received by [the plaintiff] from the [out-of-state] defendants in Connecticut.") (internal quotation marks omitted).

Federal courts in the Second Circuit have addressed the issue of personal jurisdiction in the context of internet communications, but have not done so specifically as it relates to Conn.

Gen. Stat. § 52-59b(a)(2). In Best Van Lines Inc. v. Walker, the Second Circuit held that general internet postings did not constitute "transacting business" under the New York long-arm statute because the postings were not "purposefully directed to New Yorkers rather than a nationwide audience." 490 F.3d 239, 253 (2d Cir. 2007). And in Inset System v. Instruction Set, Inc., the Connecticut federal district court held that a foreign corporation's advertising via the internet was solicitation of a sufficient repetitive nature to satisfy Conn. Gen. Stat. § 33-411(c)(2). 937 F. Supp. 161 (D. Conn. 1996). See also Zippo Manufacturing Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D.Pa. 1997) (outlining a spectrum of internet interactivity to be referenced in answering personal jurisdiction questions).

The Connecticut Superior Court recently confronted, as an issue of first impression, the issue facing this Court: whether under § 52-59b(a)(2) an internet posting that is generally accessible from anywhere in the world could provide the basis for personal jurisdiction over a non-resident defendant who created the posting. Rios v. Fergusan, No. FA084039853S, 2008 WL 5511215 (Conn. Super. Ct. Dec. 3, 2008). Rios was a cause of action for a restraining order prohibiting the defendant, a resident of North Carolina, from threatening the plaintiff, a resident of Connecticut. Id. at *1. The defendant in Rios had made and posted a video on YouTube that threatened the plaintiff with physical harm. Id. The Rios court held that it had jurisdiction over the defendant under Conn. Gen. Stat. § 52-59b(a)(2) where

> [t]he evidence establishes in this case that Fergusan's YouTube video is more than the mere posting of a message upon an open internet forum by a resident of one state that could be seen by someone in a second state. The evidence shows here that he specifically targeted his message at Rios by threatening her life and safety. . . . By specifically targeting a Connecticut resident with its threats to the applicant's life and safety and thereby creating in her a fear for her well-being, the YouTube video created by the respondent can be deemed a tortious act committed

in this state.

Id. at *4. The Rios court's holding was dependent upon the fact that the non-resident defendant "specifically targeted" a Connecticut resident, not, as Ryan argues, that the YouTube video contained a threat. Id. (analogizing to cases in which foreign corporations are subject to personal jurisdiction "premised upon their internet postings based on whether the corporation had specifically targeted Connecticut residents").

The Court agrees with the Rios rationale, and holds that Ryan's postings on AutoAdmit, which were specifically targeted at the plaintiffs in Connecticut, are sufficient to exercise jurisdiction under § 52-59b(a)(2). Although in the affidavit he submitted in support of his motion to dismiss Ryan affirmed that "I have not directed my activities on Internet websites (including AutoAdmit) so that they would be particularly reviewed or read by persons in Connecticut, nor have I made statements on Internet websites that I believed would be particularly reviewed by or affect persons in Connecticut," Ryan Aff. at 1-2, in his prior deposition testimony Ryan admitted that at the time he wrote the messages he had "a pretty good idea that some of [the people who posted messages on AutoAdmit] actually were Yale law students." Ryan Dep. at 33. When he was asked if he had an "understanding that other Yale law students would have read these messages at this time?," he responded, "That's possible." Ryan Dep. at 54. One of Ryan's messages on AutoAdmit in response to a posted picture of Doe II –"Thanks for the cell phone pics suggestion [Doe II] (huge f--king titties at YLS)!"– also reveals his belief at the time that Doe II was at Yale Law School. At this stage of the proceeding, where the Court must construe the record in the plaintiffs' favor, they have claimed that Ryan intentionally targeted tortious postings at the plaintiffs in Connecticut. Cf. Best Van Lines, 490

F.3d at 253 (holding that general internet postings did not constitute "transacting business" under the New York long-arm statute because the postings were not "purposefully directed to New Yorkers rather than a nationwide audience").[5]

  2. Due Process

The Court must now address whether exercising jurisdiction over Ryan would comport with due process. First, the Court must determine whether the defendant has sufficient contacts with the forum state such that he would reasonably anticipate being haled into court there. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). "The essence of the minimum contacts test is 'that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Inset Sys., Inc. v. Instruction Set, Inc., 937 F. Supp. 161, 164-65 (D. Conn. 1996) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). Ryan has sufficient minimum contacts with Connecticut to satisfy constitutional due process because he purposefully and repeatedly posted messages about the plaintiffs, whom he knew were Yale Law School students, on a message board he also knew was viewable by the plaintiffs and their classmates. The plaintiffs' lives were centered in Connecticut and the brunt of the harm was felt by them in

---

[5] Although the parties have not briefed this particular issue, § 52-59b(a)(2) has a specific exception for "causes of action for defamation." It is arguable that the long-arm statute may not permit the Court's exercise of personal jurisdiction over the plaintiffs' claim for libel in Count Seven. See Best Van Lines, 490 F.3d at 245 n.7 (2d Cir. 2007) ("'Defamation' includes the torts of libel (usually written) and slander (usually oral)."); Delcath Systems, Inc. v. Enney, 2006 WL 1525986, *3 (D. Conn. May 26, 2006) ("However, as the language of section 52-59(a) indicates, a plaintiff must establish an independent basis for personal jurisdiction for each separate cause of action. By its language, Section 52-59(a)(2) does not provide jurisdiction for defamation claims.") (internal citations omitted). However, as this issue has not yet been addressed by the parties, the Court will not dismiss this Count at this time.

Connecticut. Given these contacts, Ryan could reasonably have anticipated the possibility of being subject to jurisdiction in Connecticut. See Calder v. Jones, 465 U.S. 783, 788-90 (1984) ("[The defendants'] intentional, and allegedly tortious, actions were expressly aimed at California. [The defendants] wrote and [] edited an article that they knew would have a potentially devastating impact upon respondent. And they knew that the brunt of that injury would be felt by respondent in the State in which she lives and works. . . . Under the circumstances, petitioners must 'reasonably anticipate being haled into court there' to answer for the truth of the statements made in their article."); Rios v. Fergusan, No. FA084039853S, 2008 WL 5511215, at *5 (Conn. Super. Ct. Dec. 3, 2008) ("He posted the video on an internet medium that can be disseminated worldwide, but the content of the video establishes that he was purposefully directing it to the applicant in Connecticut. In this context, his posting of the video constitutes sufficient 'minimum contacts' to justify the exercise of personal jurisdiction over him.").

Once it is established that a defendant has purposefully established minimum contacts with the forum state, the court must examine other factors to determine whether the assertion of jurisdiction comports with "fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 320 (1945). Such factors include the relative burdens on plaintiffs and defendant of litigating the suit in this or another forum, the forum state's interest in adjudicating the dispute, and the interstate judicial system's interest in efficient resolution of controversies. Burger King v. Rudzewicz, 471 U.S. 462, 476-77 (1985). The burden is on the defendant to prove a compelling case that personal jurisdiction is unreasonable under the circumstances. Broad. Mktg. Int'l., Ltd. v. Prosource Sales & Mktg., Inc., 345 F. Supp. 2d 1053,

1063 (D. Conn. 2004).

In this case, Ryan, a resident of Texas, may be somewhat "burdened" by litigating in Connecticut. He has, however, already retained counsel in Connecticut. Moreover, this case presents issues of Connecticut law, Connecticut has an interest in adjudicating the dispute, and adjudication in Connecticut would dispose of this matter efficiently. Ryan has not satisfied his burden to prove that personal jurisdiction is unreasonable under the circumstances.

## IV. Conclusion

For the reasons set forth above, Ryan's motion to dismiss [Dkt. # 77] is denied.

SO ORDERED this   30th   day of April 2009, at Hartford, Connecticut.

  /s/Christopher F. Droney  
**CHRISTOPHER F. DRONEY**  
**UNITED STATES DISTRICT JUDGE**